UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
Official Committee of Unsecured Creditors                    Case No. 13-cv-05475-JS-ASK
of Exeter Holding, Ltd.

                Plaintiff,

    -against-                                              **Affidavit**

Linda Haltman, *et al*,

                Defendants.
----------------------------------------------------------X

STATE OF NEW YORK  )
                            )ss:
COUNTY OF NASSAU  )

        Leonard Weinstein, being duly sworn, deposes and says:

        1.    I am the owner and principal of Guzinta Technology Group, which performs data recovery services, software development and enterprise security. I have worked in the computer industry for the past twenty seven (27) years and have performed investigations and prepared expert reports in lawsuits involving disaster recovery services, email recovery, registry recovery and file decryption.

        2.    I was retained by Linda and Michael Haltman and her counsel to render an opinion with respect to the analysis and affidavit of Plaintiff's forensic computer expert, Brian T. Fox, dated February 2, 2015 ("Fox Aff."), who was tasked with conducting a forensic analysis of a hard drive that was used by Linda Haltman to conduct the business of Exeter Holding, Ltd. ("Exeter").

        3.    In connection with this affidavit, I have been advised that: (i) Plaintiff has filed a motion claiming that Linda Haltman deleted files from the hard drive, including QuickBooks files, that are critically important to Plaintiff's claims; (ii) the motion is based on Mr.

Fox's affidavit, which I have reviewed in its entirety; (iii) in October 2012, Exeter retained KLG Computer Forensics, LLC, to make a forensic copy of the hard drive for Plaintiff ("KLG hard drive"); and (iv) in July 2013, Linda Haltman turned over Exeter's computer and original hard drive ("Original Hard Drive") to the Plaintiff.

4. In February 2015, I was provided with an external hard drive that, as represented to me, was turned over by Plaintiff to the Defendants' counsel in November 2014 ("External Hard Drive"). I was advised that Plaintiff's counsel represented that the External Hard Drive was an exact replica of the KLG Hard Drive. I was further advised that when the Defendants and their counsel plugged the external hard drive into their computer systems, they discovered that the contents of the External Hard Drive could not be read.

5. Based on my preliminary review of the External Hard Drive, it appears that the External Hard Drive is not, in fact, an exact image of the KLG Hard Drive. Rather, it appears that someone reviewed an image of the KLG Hard Drive and performed a file deletion analysis on the KLG Hard Drive, which analysis was burned to the External Hard Drive. Thus, the External Hard Drive appears to be the work product of a forensic computer examiner.

6. I have not completed my review of the External Hard Drive and before I offer my final opinion regarding the deletions in question, I would like the opportunity to review the Original Hard Drive to seek to verify Mr. Fox's findings regarding the number and timing of the deletions at issue. However, I have formed certain preliminary opinions, which are discussed in detail below.

7. Mr. Fox states that he performed two analyses of the Exeter hard drive, an electronic file deletion analysis, which explored the history of file deletion activity on the hard drive, and a QuickBooks analysis, which identified the files associated with the Intuit QuickBooks

application that were deleted from the hard drive. I profess to be somewhat confused by Mr. Fox's approach given that an electronic file deletion analysis typically encompasses the QuickBooks files.

8. Mr. Fox states that between January 27, 2010 and October 10, 2012, 64,084 files and folders were deleted and that these deleted files and folders were collectively 17.03 GB in size.

9. In my experience, the deletion of 64,084 files and folders by a business over the course of a ten (10) year period is a very small amount, and 17.03 GB of size is comparably nothing.

10. I have been advised that the hard drive size of Exeter's computer was 80 GB. This is typical of desktop computers of the time. Since 80 GB of size is not that large, it is likely that applications and programs took up quite a bit of room on the hard drive. Also, in Windows, a file known as a "swap file" takes up a portion of the hard drive. A swap file is used to hold information about the programs, user settings and stored information and generally increases in size and can become quite large over time. In addition, every time a program is loaded, or a web search is conducted or files and applications are opened, temporary files get stored on the hard drive, which also take up significant space.

11. With multiple applications, programs and files taking up substantial hard drive space, Exeter computer's operating system would slow down unless unwanted temporary files, cache and dead hard drive space were removed from the hard drive. As an IT professional, I've always implemented and suggested to clients that they perform a cleanup on their system to avoid the clutter and unwanted or unnecessary files, folders and programs, especially in older operating systems. This cleanup can be a disk defragmentation or deletion of temporary local and

temporary internet files. The deletion of these files can be numerous as well as quite large in size. The defragmentation process moves and shifts blocks of data on the hard drive and condenses them so the hard drive is more compacted and finding and running files are faster since the operating system doesn't have to look over the entire hard drive for those files. During this process, it is very likely that files can be partially or completely overwritten in the block that they previously occupied.

12. Based on my preliminary analysis of the External Hard Drive, I believe that the deleted files were most likely due to hard drive cleanup of temporary files and folders, system cached files and logs[1] and, in addition, the removal of files due to instances of viruses, trojans and malware.

13. Mr. Fox states that between January 1, 2011 and October 10, 2012, 46,623 files were deleted. However, Mr. Fox doesn't state the size of the deleted files or the type of the deleted files. This omission is disturbing because there are various types of files, including program files, which store the software programs installed on a computer, and system files, which allow for the proper functioning of an operating system, and data files. Mr. Fox provides no details regarding the types of files that were deleted. Without this type of information, it is impossible to determine whether anything of relevance to Exeter's business or the claims in this lawsuit was deleted from the hard drive.

14. Mr. Fox states that of the 46,623 files deleted between January 1, 2011 and October 10, 2012, 21,302 were partially or fully overwritten, rendering them unrecoverable through ordinary forensic means. Mr. Fox does not provide any details regarding the type and

---

[1] When a program is launched on a computer, it creates a log, or information file, containing set-up, installation and other program-related information.

number of files that were recovered or the contents of those files, which would prove useful in confirming my belief that the deletions were innocuous and did not result in the loss of any relevant information.

15. As stated above, the deletion of files during a cleanup can vary in size and number. Mr. Fox's statement that deletions increased during two months can be explained through cleanup or if there were files that were discovered by a antivirus program or malware program. Again, Mr. Fox does not identify the type of files allegedly deleted.

16. Mr. Fox's analysis of QuickBooks is, in my opinion, similarly lacking. Mr. Fox notes that according to Intuit, the publisher of the QuickBooks software, there are twelve (12) file extensions associated with QuickBooks. Mr. Fox states that Exeter's "D" drive contained an additional four QuickBooks-related file extensions.

17. As with the other deleted files, Mr. Fox does not state whether the deleted QuickBooks-related files were data files, which generally end with the file extensions QBW or QBB. Mr. Fox merely states that 92 QuickBooks-related files were deleted and that of those 92 files, 27 were deleted on November 21, 2011. This provides no insight into whether Linda Haltman deleted any relevant data from QuickBooks. The deletion of non-data files would have been innocuous.

18. In sum, I do not believe that Mr. Fox sufficiently detailed the nature of the deleted and/or recovered files and folders. Given the lack of detail, Mr. Fox's findings cannot be used as a basis to conclude that Linda Haltman destroyed critical or relevant evidence. To the contrary, my preliminary analysis leads me to believe that the deletions uncovered by Mr. Fox were of program and system files, not data files containing information that might be relevant to the claims in this action.

5

19. As stated above, I would welcome the opportunity to review the recovered files and/or the Original Hard Drive. I believe that this would enable me to render a more complete opinion regarding the lack of potential relevance of the deleted files to the claims in this action.

_____
Leonard Weinstein

Sworn to before me this
9th day of March, 2015.

_____
NOTARY PUBLIC

MARC J. WEINGARD
Notary Public, State of New York
No. 02WE1056430
Qualified in Suffolk County
Commission Expires January 24, 20 _15_

6