# EXHIBIT L

John D. Roesser
Louis A. Russo
**ALSTON & BIRD LLP**
90 Park Avenue
New York, New York 10016
212-210-9400

*Special Litigation Counsel for the Official
Committee of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

In re:

EXETER HOLDING, LTD.,

                Debtor.

Case No.: 11-77954-AST
Chapter 11

---------------------------------------------------------------X

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS,

                Plaintiff,

Adv. Pro. No.: 12-8401-AST

   -against-

LINDA HALTMAN, *et al*,

                Defendants.

---------------------------------------------------------------X

## PLAINTIFF'S FIRST SET OF REQUESTS
## FOR PRODUCTION TO DEFENDANT LINDA HALTMAN

**PLEASE TAKE NOTICE** that, pursuant to Rule 34 of the Federal Rules of Civil

Procedure ("FRCP"), made applicable herein by Rule 7034 of the Federal Rules of Bankruptcy

Procedure ("FRBP"), Plaintiff the Official Committee of Unsecured Creditors of Exeter Holding

Ltd. ("Plaintiff" or the "Committee"), by its special litigation counsel, Alston & Bird LLP,

hereby requests that Defendant Linda Haltman ("Defendant") respond and/or object to the

following requests for production of Documents (the "Requests" and, each, a "Request") within

thirty (30) days following service hereof.

-1-

## DEFINITIONS

For the purposes of this First Set of Requests for Production, each undefined word shall have its usual and generally accepted meaning. Each defined word, and all variations thereof, shall have the meanings set forth below:

1.     The term "Action" shall mean and refer to the above-captioned adversary proceeding entitled *Official Committee of Unsecured Creditors of Exeter Holding Ltd. v. Linda Haltman et al.*, Index No. 8–12–08401–AST, filed in the United States Bankruptcy Court for the Eastern District of New York.

2.     The terms "and" and "or" mean "and/or" and shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive.

3.     The terms "any" and "all" mean "any and/or all" and shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive.

4.     The term "Astoria" shall mean and refer to the property or properties located at 81-07 Astoria Boulevard, East Elmhurst, New York 11370.

5.     The term "Barfield" shall mean and refer to the property or properties located at 620 S. Barfield Drive, Marco Island, Florida 34145.

6.     The term "Bayville" shall mean and refer to the property or properties located at 22 Bayville Avenue, Bayville, New York 11709.

7.     The term "Begonia" shall mean and refer to the property or properties located at 1670 Begonia Court, Marco Island, Florida 34145.

8.     The term "Birch" shall mean and refer to the property or properties located at 8 Birch Bark Lane, Glen Cove, New York 11542.

9.     The term "Carica" shall mean and refer to the property or properties located at 171 Carica Road, Naples, Florida 34108–2616.

10.     The term "Cascade" shall mean and refer to the property or properties located at 1881 Cascade Court, Marco Island, Florida 34145–5155.

11.     The term "Caxambas" shall mean and refer to the property or properties located at 1351 Caxambas Court, Marco Island, Florida 34145.

12.     The term "Collier" shall mean and refer to the property or properties located at 1393 Collier Boulevard, Marco Island, Florida 34145–5155.

13.     The term "Communication" or "Communications" shall mean and refer to any oral or written expression, statement, or utterance of any nature whatsoever, including, without limitation, correspondence, conversations, memoranda, notes, computer or electronic expressions, statements, and telecommunications.

14.     The term "Compensation" shall mean and refer to any form of monetary or non-monetary benefits, gains, profits, raises or other changes in salary, or other advantages You received or otherwise obtained or gained from Exeter and/or the Property Corporations in exchange for work, duties, or other services that You performed for or on behalf of Exeter and/or any of the Property Corporations during the Relevant Time Period, including, without limitation, the payment by Exeter and/or the Property Corporations of Personal Expenses.

15.     The term "Complaint" shall mean and refer to the Adversary Complaint filed by Plaintiff in this Action on October 23, 2012 [Docket No. 1].

16.     The term "Cove" shall mean and refer to the property or properties located at 190 Cove Road, Laurel Hollow, New York 11771, or, alternatively, at 196 Cove Road, Laurel Hollow, New York 11771.

17.     The term "Document" or "Documents" is used in its broadest sense and shall mean and refer to any written, printed, typed, recorded, filmed, or graphic matter of any kind or

-3-

nature whatsoever, including, without limitation, the original or any copies of handwriting, typewriting, printing, photostating, photographing, photocopying, text messages, electronically stored information, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored or otherwise preserved. It includes originals, copies, and reproductions in the possession, custody, or control of the Defendant. It also includes any summary of a Document. For the avoidance of doubt, "Document" includes any Communication that occurred in writing or that has been reduced to writing.

18.     The term "Eden Roc" shall mean and refer to the property or properties located at 11 Eden Roc Drive, Lattingtown, New York 11560-1110 or, alternatively, at 11 Eden Rock Drive, Lattingtown, New York 11560-1110.

19.     "Exeter" or the "Debtor" shall mean and refer to Exeter Holding, Ltd., the debtor in the chapter 11 bankruptcy proceeding entitled *In re Exeter Holding Ltd.*, Index No. 11–77954–AST, filed in the United States Bankruptcy Court for the Eastern District of New York.

20.     The term "Exeter Office" shall mean and refer to the office space located at 131 Jericho Turnpike, Suite 250, Jericho, New York 11753–1060.

21.     The term "Fox Lane" shall mean and refer to the property or properties located on a Fox Lane in either New York or Florida with respect to which Exeter and/or the Property Corporations loaned funds to the Mohrings and/or the Mohring Related Entities to fund its purchase.

-4-

22.     The term "Frank Children's Trusts" shall mean and refer to any and all trusts established for the benefit of the minor child(ren) of Bruce and Kathleen Frank.

23.     The term "Hallmark" shall mean and refer to Hallmark Abstract Services LLC, located at 131 Jericho Turnpike, Suite 250, Jericho, New York 11753–1060, and its subsidiaries, divisions, affiliates, predecessors, and successors, as well as all former and present officers, directors, partners, controlling persons, employees, agents, members, and representatives thereof purporting to act on its behalf.

24.     The term "Haltman Children's Trusts" shall mean and refer to any and all trusts established for the benefit of Ryann Haltman, Samantha Haltman and/or Linda Haltman's and Michael Haltman's minor child(ren).

25.     The term "Hideaway" shall mean and refer to the property or properties located at 855 Hideaway Circle W., Marco Island, Florida 34145.

26.     The term "Idylwood" shall mean and refer to the property or properties located at 4657 & 4653 Idylwood Lane, Naples, Florida 34119.

27.     The term "Involuntary Filing" shall mean and refer to the involuntary bankruptcy petition filed in the chapter 11 bankruptcy proceeding entitled *In re Exeter Holding Ltd.*, Index No. 11–77954–AST, in the United States Bankruptcy Court for the Eastern District of New York on November 9, 2011 by Kenneth Haltman, Adam Markel, and Robert Penkert.

28.     The term "Lewis Lane" shall mean and refer to the property or properties located at 3 Lewis Lane, Lattingtown, New York 11560-1012.

29.     The term "Lincoln" shall mean and refer to the property or properties located at 2 Lincoln Avenue, Glen Head, New York 11545.

-5-

30. The term "Mill Neck" shall mean and refer to the property or properties located at 54 Connecticut View Drive, Mill Neck, New York 11765.

31. The term "Mohring Bay" shall mean and refer to the property or properties located at 26 or 32 Mohring Bay Court, Bayville, New York 11709.

32. The term "Mohrings" shall mean and collectively refer to Richard Mohring, Jr. and Deborah Mohring.

33. The term "Mohring Entities" shall mean and collectively refer to Rhino Excavating, R&R Mohring Enterprises, Inc., 323 Glen Cove Avenue Corp. a.k.a. Mohring & Sons Enterprises, R4M Corp., 44 Sea Cliff Avenue Corp, and any of their subsidiaries, divisions, affiliates, predecessors, and successors, as well as all former and present officers, directors, partners, controlling persons, employees, agents, members, and representatives thereof purporting to act on their behalf.

34. The term "Mohring Related Properties" shall mean and collectively refer to Barfield, Bayville, Begonia, Birch, Carica, Cascade, Caxambas, Collier, Cove, Fox Lane, Hideaway, Idylwood, Lincoln, Mill Neck, Mohring Bay, Titus, Via Trenta, and Willoughby.

35. The term "Other Property Corporations" shall mean and collectively refer to 13 Mill Farm Lane Corp., 17 Fox Lane Corp., 585 Lexington Ave. Development Corp., Carica Road Corp., Laurel Hill Path Corp., Osgood Place Corp., Connecticut View Drive Corp., and 11 Whispering Field Associates, and all of their subsidiaries, divisions, affiliates, predecessors, and successors, as well as all officers, directors, partners, controlling persons, employees, agents, members, and representatives thereof.

36. The term "Parrish Pond" shall mean and refer to the property or properties located at 207 Parrish Pond Court West, Southampton, New York 11968-3248.

-6-

37.    The term "Personal Expense" or "Personal Expenses" shall mean and refer to any personal, non-business expense, profit, gain, compensation, advantage gained, or other benefit that Exeter and/or the Property Corporations paid for or undertook on Your behalf during the Relevant Time Period, whether directly or indirectly to You or an entity that You own, in whole or in part, including, without limitation, a trust that You hold, are a trustee of, or are a beneficiary of.

38.    The term "Plaintiff" or the "Committee" shall mean and refer Plaintiff the Official Committee of Unsecured Creditors of Exeter Holding, Ltd.

39.    The term "Property Corporations" shall mean and refer to any of the companies that Exeter in any way used, worked through, worked with, or funded in its construction finance, development, construction, mortgage brokerage, and/or otherwise property-related business, including, for example, and without limitation, the Property Corporation Defendants and the Other Property Corporations.

40.    The term "Property Corporation Defendants" shall mean and collectively refer to 124 New York Avenue Corp., 140 Maggie Drive Corp., 22 Bridge Lane Corp., 22 West Hills Court Corp., 29 Mill Farm Lane Corp., 207 Parrish Pond Court West Corp., 3 Lewis Lane Corp., Begonia Court Corp., Bittersweet Partners Inc., Eden Roc Corp., Eden Rock Corp., Maplewood Associates, Inc., Short Path House Corp., Sound Side Ventures, Ltd., and Via Trenta Corp., and any of their subsidiaries, divisions, affiliates, predecessors, and successors, as well as all former and present officers, directors, partners, controlling persons, employees, agents, members, and representatives thereof purporting to act on their behalf.

41.    The term "Raynor" shall mean and refer to the property or properties located at 96C Raynor Road, Ridge, New York 11961.

42.   The term "Reimbursement," "Reimbursements," or the verb "Reimburse," in any of its forms and conjugations, shall mean and refer to any expense, debt, loan, cost, or fee that You incurred on behalf of Exeter and/or the Property Corporations and for which Exeter and/or the Property Corporations repaid or promised to repay to You. The term "Reimbursement" or "Reimbursements" also means or refers to any such expense, debt, loan, cost, or fee that Exeter and/or the Property Corporations paid on Your behalf and that You either repaid or promised to repay Exeter and/or the Property Corporations, regardless of whether such repayment was actually made.

43.   A Document or Communication is one "relating to" a subject if it constitutes, comprises, describes, sets forth, shows, reflects, analyzes, refers to, evidences, comments upon, mentions, depicts, records, memorializes, is connected to, discusses, contains quantitative data relating to, or in any other way pertains to the given subject.

44.   The term "Relevant Time Period" shall mean and refer to the time period between January 1, 2006 and the present.

45.   The term "Repay Service" shall mean and refer to Repay Service Co., Inc. with a place of business at 2900 Hempstead Turnpike, Levittown, New York, 11756 or, alternatively, at 131 Jericho Turnpike, Suite 250, Jericho, New York 11753–1060, and its subsidiaries, divisions, affiliates, predecessors, and successors, as well as all former and present officers, directors, partners, controlling persons, employees, agents, members, and representatives thereof purporting to act on its behalf.

-8-

46.     The terms "Request" or "Requests" shall mean and refer to Plaintiff's First Set of Requests for Production and/or any of the Requests for Production made herein.

47.     The term "Securities Act" shall mean and refer to 15 U.S.C §77a *et seq.* and the rules and regulations promulgated pursuant thereto.

48.     The term "Schoolhouse" shall mean and refer to the property or properties located at 57 Schoolhouse Road, Port Jervis, New York 12771-3544.

49.     The term "Short Path" shall mean and refer to the property or properties located at 2 Short Path, Nissequogue, New York 11780-3922.

50.     The term "State Bank of Long Island" shall mean and refer to the State Bank of Long Island and its subsidiaries, divisions, affiliates, predecessors, and successors, as well as all former and present officers, directors, partners, controlling persons, employees, agents, members, and representatives thereof purporting to act on its behalf.

51.     The term "Tax Documentation" shall mean and refer to any and all tax related forms You received during the Relevant Time Period, including, for example, and without limitation, a Form W2, Form 1099, and/or Schedule K1.

52.     The term "Titus" shall mean and refer to the property or properties located at 14 Titus Road, Glen Cove, New York 11542.

53.     The term "Via Trenta" shall mean and refer to the property or properties located at 18 Via Trenta Court, Yonkers, New York 10710.

54.     The term "Willoughby" shall mean and refer to the property or properties located at Willoughby Acres in Naples, Florida for which Exeter and/or its Property Corporations loaned funds to the Mohrings and/or the Mohring Related Properties to fund its purchase.

55.     The terms "You" and "Your" shall mean and refer to Defendant Linda Haltman, and her current or former officers, directors, managers, members, employees, associates, consultants, attorneys, representatives, agents, and/or any other person working on her behalf, including any predecessors or successors in interest and their respective current or former officers, directors, managers, members, employees, associates, consultants, attorneys representatives, agents, and/or any trust established for Your benefit.

56.     . Any capitalized term not defined herein shall have the same definition ascribed to it in the Complaint.

INSTRUCTIONS

1.      Restate each Request in full prior to setting forth Your answer, response, or objection thereto. If the answer, response, or objection to any Request incorporates or refers to an answer, response, or objection to any other Request, the referenced information should be clearly specified.

2.      These Requests extend to any Documents in Your possession, custody, or control, any of Your affiliates, Your present or former employees, officers, directors, agents, contractors, successors, assigns, or persons acting at Your direction or on Your behalf.

3.      The tense of a verb shall include the present, past, and future tense of that verb.

4.      The singular form of a word shall include the plural and vice versa.

5.      All Documents should be produced in the same order as they are kept or maintained in the ordinary course of business or organized and labeled to correspond with the categories in these Requests.

-10-

6.　　Selection of Documents from the files and other sources and the numbering of such Documents shall be performed in such a manner as to ensure that the source of each Document may be determined.

7.　　File folders with tabs or labels or directories of files identifying Documents must be produced intact with such Documents.

8.　　Documents attached to each other shall not be separated.

9.　　In producing Documents, You are requested to furnish all Documents (including all duplicates, copies, or drafts thereof) in Your possession, custody, or control, or known or available to You.

10.　　If You withhold from production any Document, or any portion of any Document, within the scope of these Requests based on a claim of privilege or for any other reason, please provide the following information as to each such Document:

　　　　a.　　A statement of the basis for withholding the Document;

　　　　b.　　A description of the Document including:

　　　　　　　i.　　The type of Document (e.g., letter, email, memorandum, etc.);
　　　　　　　ii.　　The date of the Document;
　　　　　　　iii.　　The number of pages, attachments, and appendices;
　　　　　　　iv.　　The identity of the author(s), preparer(s), writer(s), sender(s), or initiator(s), if any, of the Document and their relationship to You;
　　　　　　　v.　　The identity of each recipient, addressee, person, or party to whom the Document, or a copy thereof, was sent, shown, or made accessible, or to whom it was explained, if any, and his/her/its relationship to You;
　　　　　　　vi.　　The general subject matter of the Document; and
　　　　　　　vii.　　The specific Request to which the Document is responsive.

11.　　If any Documents and/or Communications within the scope of the Requests have been lost, destroyed, transferred (voluntarily or involuntarily) to others not subject to Your control, or otherwise disposed of, or if any Documents and/or Communications responsive to the Requests exist but are not available, furnish a list identifying each such Document and/or

-11-

Communications and setting forth the following information with respect to each: its date, author(s), sender(s), addressee(s), and recipient(s), and the subject matter of the Document. In each instance, explain the circumstances surrounding each disposition or why such Document and/or Communication is unavailable, including the person(s) responsible for authorizing the disposition, and the date thereof.

12.     Any comment, notation, or marking appearing on any Document, and not a part of the original, is to be considered a separate Document, and any draft, preliminary form, or superseded version of any Document is also to be considered a separate Document.

13.     Where any copy of any document whose identification and/or production is sought is not identical to any other copy thereof by reason of any alterations, notes, comments or other material contained therein or attached thereto, or otherwise, all such non-identical copies should be identified and/or produced.

14.     If any requested Document cannot be produced in full, You are requested to produce it to the extent possible, and to indicate what is being withheld and the reason it is being withheld.

15.     Special Instructions Against Spoliation of Evidence: If You have not already done so, demand is hereby made that You take all steps as may be necessary to preserve all Documents, records, data, and files that may be relevant to this Action, including, without limitation, Documents, records, data, and files kept by electronic, electromagnetic, photographic, digital, or mechanical means, whether or not contained in current, backup, or archival files of personal computers and networks, or on hard drives, diskettes, CD-ROM disks, magnetic tapes, back-up tapes, or Zip and Jaz cartridges. You must cease and desist from overwriting existing data, reusing backup tapes, or running data compression or defragmentation routines or

-12-

"shredder programs" on any such Documents, records, data, or files before ensuring full compliance with the Requests made herein so as to prevent the inadvertent alteration or deletion of such Documents, records, data, and files.

16.    Special Instructions for Data Kept By Electronic, Electromagnetic, Photographic, Digital, or Mechanical Means:

      a.   These Requests cover all Documents, including electronically stored information, in or subject to, Your possession, custody, or control, including all Documents or electronically stored information that You have the ability to obtain, that are responsive, in whole or in part, to these Requests. All Documents including electronically stored information should be produced in the manner in which they are kept in the usual course of business, or organized and labeled to correspond to the categories specified herein to which they are responsive. To the extent that the Documents are in any computerized, electronic, or digital format or any other medium of communication or storage, the Documents shall be downloaded to diskette, CD-ROM disk, or DVD without further processing by You, containing all significant material contained in the electronic records including, without limitation, the creation date for the file and the date it was last modified. All electronic records produced shall be certified by use of certification software.

      b.   With respect to electronic mail and instant messages, all responsive electronic mail and instant messages should be produced in a format that includes the originating address, all copies and blind copies, the date and time of transmission, each attachment, the mailbox or other post office storage location of every copy, and all replies and/or forwards of the electronic mail and instant messages.

      c.   Each responsive Document consisting of electronically stored information shall be produced in the format in which it was stored, with all of its metadata intact, including, without limitation, information sufficient to identify the creation, last modification, and last accessed date, the storage location (*e.g.*, fully qualified path and folder) of the file and the system (*e.g.*, server, computer, or device) on which it was stored.

17.    Your obligation to respond to these Requests is continuing, and the responses are to be supplemented to include subsequently acquired Documents.

## DOCUMENT REQUESTS

1.      All Documents and/or Communications relating to Exeter.

2.      All Documents and/or Communications relating to the Property Corporations.

3.      All Documents and/or Communications between or among You and the

Defendants named in the Complaint relating to Exeter and/or the Property Corporations.

4.      All Documents and/or Communications relating to any and all Personal Expenses.

5.      All Documents and/or Communications relating to all instances in which You

have: (i) ever received, whether directly or indirectly, Reimbursements from Exeter and/or its

Property Corporations; or (ii) Reimbursed Exeter and/or its Property Corporations.

6.      All Documents and/or Communications relating to any and all Compensation that

You have received from Exeter and/or its Property Corporations, whether directly or indirectly,

including, without limitation, Documents and/or Communications detailing the accounts in

which You deposited such Compensation, including, without limitation, the name of the bank

and the identity of the holder of the account.

7.      All Documents and/or Communications relating to any and all Tax

Documentation.

8.      All Documents and/or Communications relating to each and every payment of

any value that You have ever contributed, made, added, given, invested, or otherwise provided to

Exeter and/or the Property Corporations, whether directly or indirectly, whether before or during

the Relevant Time Period, including, without limitation, all bank statements, notes, promissory

notes, wire transfer records, and/or cashed or cancelled checks related to such payments.

9.      All Documents and/or Communications relating to any and all investment

disclosures that You have ever received from Exeter and/or the Property Corporations, or took

-14-

part in drafting for Exeter and/or the Property Corporations, including, without limitation, any prospectus or any disclosure required by the Securities Act.

10.    All Documents and/or Communications relating to any and all loans You made to Exeter and/or the Property Corporations, or Exeter and/or the Property Corporations made to You, whether directly or indirectly, whether before or during the Relevant Time Period, including, without limitation, all bank statements, notes, promissory notes, wire transfer records, and/or cashed or cancelled checks related to such loans.

11.    All Documents and/or Communications relating to any ownership interest in Exeter and/or the Property Corporations You acquired, possess or ever possessed, or sold, transferred or otherwise hypothecated.

12.    All Documents and/or Communications relating to any and all personal guaranties You provided to Exeter and/or the Property Corporations during the Relevant Time Period.

13.    All Documents and/or Communications relating to Exeter's and/or the Property Corporations' purported practice of paying medical expenses on behalf of their respective officers, directors, employees, consultants, or independent contractors.

14.    All Documents and/or Communications relating to the financial state of Exeter and/or the Property Corporations, including, without limitation, whether or not those entities were solvent or on the verge of insolvency, during the Relevant Time Period.

15.    All Documents and/or Communications relating to the filing, potential filing, or the possibility of filing by Exeter and/or the Property Corporations for bankruptcy protection.

16.    All Documents and/or Communications relating to the Involuntary Filing, including, without limitation, all Communications between You, on the one hand, and Adam Markel, Kenneth Haltman and/or Robert Penkert, on the other hand.

17.     All Documents and/or Communications relating to any and all business You conducted outside of the United States on behalf of Exeter and/or the Property Corporations.

18.     All Documents and/or Communications relating to any money that You invested, transferred, and/or placed outside of the United States, during the Relevant Time Period, including, but not limited to, money invested, money deposited into bank accounts, money used to purchase any type of asset, money used to purchase any type of financial instrument, or money used to purchase any precious metal or other commodity.

19.     All Documents and/or Communications provided to, or received from accountants, relating to Exeter, the Property Corporations, the Haltman Children's Trusts, and/or the Frank Children's Trusts.

20.     All Documents and/or Communications with any and all banks, lenders or investors, including, without limitation, the State Bank of Long Island and the Non-Bank Lenders, as that term is defined in paragraph 80 of the Complaint, relating to Exeter and/or the Property Corporations.

21.     All Documents and/or Communications relating to the allegations in the Complaint.

22.     All Documents and/or Communications relating to Astoria.

23.     All Documents and/or Communications relating to Eden Roc.

24.     All Documents and/or Communications relating to Lewis Lane.

25.     All Documents and/or Communications relating to Parrish Pond.

26.     All Documents and/or Communications relating to Raynor.

27.     All Documents and/or Communications relating to Schoolhouse.

28.     All Documents and/or Communications relating to Short Path.

-16-

29.  All Documents and/or Communications relating to any and all outstanding loans and debts that Exeter and/or the Property Corporations either wrote off or for which they booked a loss during the Relevant Time Period.

30.  All Documents and/or Communications relating to the management and/or administration of the Property Corporations.

31.  All Documents and/or Communications relating to the formation and capitalization of the Property Corporations.

32.  All Documents and/or Communications relating to transactions between Exeter and the Property Corporations.

33.  All Documents and/or Communications relating to any and/or all transactions between Exeter and/or the Property Corporations, one the one hand, and the Mohrings, the Mohring Entities, and/or the Mohring Related Properties, on the other hand.

34.  All Documents and Communications relating to the $600,000 Withdrawal, as that term is defined in paragraph 174 of the Complaint.

35.  All Documents and/or Communications relating to any oversight of Exeter and/or the Property Corporations by any governmental, quasi-governmental, or self-regulating entity, including, without limitation, the New York State Department of Financial Services (formerly known as the New York State Banking Department).

36.  All Documents and/or Communications relating to any and all due diligence You conducted on behalf of Exeter and/or the Property Corporations, including, without limitation, appraisals of properties, adequately securing loans with collateral, or title searches in connection with any Property Transaction referenced in the Complaint.

-17-

37.    All Documents and/or Communications relating to Your actions or efforts to ensure that Exeter and/or the Property Corporations recovered any funds or losses that arose out of construction loans in connection with the Property Transactions, including, without limitation, the $10 Million Write-Off, as that term is defined in paragraphs 176 through 179 of the Complaint.

38.    All Documents and/or Communications relating to all properties owned by Exeter, in whole or in part, and/or the Property Corporations for which Exeter and/or the Property Corporations were late in paying or failed to pay mortgages, taxes, carrying charges, liens, or other obligations during the Relevant Time Period.

39.    All Documents and/or Communications relating to any and all agreements or other arrangements that You personally had with any builders, contractors, or other entities in connection with the Property Transactions.

40.    All Documents and/or Communications relating to loans made to Exeter and/or the Property Corporations by third parties, or any other type of transfer of funds from third parties to Exeter and/or the Property Corporations.

41.    All Documents and/or Communications between You and creditors and/or lenders of Exeter and/or the Property Corporations.

42.    All Documents and/or Communications relating to information provided to third parties in an effort to get those third parties to loan funds to Exeter and/or the Property Corporations.

43.    All Documents and/or Communications relating to each and every contribution or payment You have ever made, or was made on behalf of Your children or the Haltman Children's Trusts to Exeter and/or any and all of the Property Corporations.

-18-

44. All Documents and/or Communications relating to each and every contribution or payment You have ever made, or was made on behalf of Your children, to any college savings plan or any other account.

45. All Documents and/or Communications relating to each and every contribution or payment You have ever made, or was made on behalf of Your children, to any applicable uniform gift or transfer to minor act account.

46. All Documents and/or Communications relating to all vehicles that: (i) You use or used and that are owned, or were owned, by Exeter and/or the Property Corporations, or (ii) for which Exeter and/or the Property Corporations paid.

47. All Documents and/or Communications relating to work done on your personal residence, including, without limitation, work performed by Robert Truskiewicz and/or the Mohring Entities.

Date: May 30, 2013           ALSTON & BIRD LLP

By: _____
      John D. Roesser
      Louis A. Russo
      90 Park Avenue
      New York, New York 10016
      (212) 210-9400

*Special Litigation Counsel for the Official Committee of Unsecured Creditors*