# EXHIBIT M

## WINSTON & STRAWN LLP

200 Park Avenue
New York, NY 10166-4193
T: +1 (212) 294-6700
F: +1 (212) 294-4700
www.winston.com

BEIJING

CHARLOTTE

CHICAGO

GENEVA

HONG KONG

HOUSTON

LONDON

LOS ANGELES

MOSCOW

NEW YORK

NEWARK

PARIS

SAN FRANCISCO

SHANGHAI

WASHINGTON, D.C.

September 28, 2012

**Via Electronic Mail and US Mail**

Marc A. Pergament, Esq.
Weinberg, Gross & Pergament LLP
400 Garden City Plaza, Suite 403
Garden City, New York 11530

Re: *Exeter Holding Ltd. Ch. 11 Case No. 11-77954-ast*

Dear Mr. Pergament,

I write in response to your letter dated September 27, 2012 (the "Letter") and address each of your points in the order you raised them.

*First,* we will, of course, refrain from contacting Ms. Haltman directly. However, it should be noted that Debtor's counsel, not my office, was responsible for including Ms. Haltman on our electronic communications relating to the Committee's outstanding informational requests.

*Second,* I am dismayed that Ms. Haltman asserts that she owns the computer that we have been trying so desperately to have preserved over the past month (the "Computer"). In December 2010, Ms. Haltman was deposed in an action brought by several investors to collect upon promissory notes issued by Exeter (the "Deposition"). In the Deposition, Ms. Haltman testified that there were four computers in Exeter's office that "*belong* to Exeter or that belong to the other corporations" that share office space with Exeter. Transcript 56:21-23 (emphasis added). Of the four computers, Ms. Haltman testified that one computer "*belongs* to Exeter." *Id.* 56:25-57:3; 58:14-16 (emphasis added). Moreover, she testified that the computer that belongs to Exeter is the only computer that contains information relating to Exeter. *Id.* 58:2-6. So, in December 2010, there was one computer that contained information relating to Exeter and it was owned by Exeter. It could have been possible that, in the intervening 21 months, Ms. Haltman replaced that computer with one that she had purchased in 2003. However, Debtor's counsel represented (1) that Ms. Haltman has been using the same computer at Exeter for ten years, and (2) that no computers have been exchanged, removed, or destroyed for the past five or six years. So, it is apparent that nothing changed between December 2010

-1-

and now, and that she testified under oath that the Computer belonged to Exeter. Now that it suits her, however, she contradicts her sworn testimony and states that she owns the Computer.

Your statement, that your "research has indicated that that computer was purchased in or about 2003 by Ms. Haltman and paid for by her on her personal credit card," is also troubling. If by "research" you mean what Ms. Haltman has told you, then that is fine. However, if by research, you mean that you have seen or been told that a credit card statement indicates that she purchased the Computer with her personal credit card, then this is another cause for concern. Ms. Haltman, through Debtor's counsel, has made clear to us that she *has no prior credit card statements in her possession* and thus has been unable to produce them to us in the months since we first requested them from the Debtor. Despite repeated attempts to obtain these records and explanations as to how she could obtain them from the credit card companies, we have received *none* of Ms. Haltman's personal credit card records.

Moreover, a credit card statement showing that the Computer was purchased with Ms. Haltman's personal credit card does not end the analysis. There are several instances where credit card bills were paid using Exeter accounts and where insiders were reimbursed by Exeter. So, if Ms. Haltman purchased the Computer using her personal credit card, but that bill was paid for by Exeter or she was reimbursed by Exeter, the Computer would be Exeter's property. If you provide us with the credit card statement today, we will gladly have the Committee's accountant determine whether or not Ms. Haltman was reimbursed for this Computer, which would be the only result consistent with her sworn testimony.

You state that you would be happy to turn over information from the Computer "that relates to the Debtor but not Ms. Haltman's personal information nor information related to any entity other than the Debtor." You may not know, but the Committee's inquiry and stipulation with the Debtor to provide information related to such inquiry includes tens of Exeter related entities, not just the Debtor, and your client transferred Exeter funds to a whole host of related entities and individuals. Further, transfers from Exeter to any such related entity or other entities or individuals are within the scope of any typical investigation into potential avoidance actions. To say that you are going to limit the information produced to "just the Debtor" is completely unsatisfactory.

*Third,* you state that there has been no order or notice requiring preservation of material. Contrary to your statement, Mr. Rosen has stated to us that he, as per his usual instructions to chapter 11 debtors, advised Ms. Haltman not to destroy anything. But more importantly, the Debtor's and Ms. Haltman's obligation to preserve arose despite the alleged absence of any order or notice to preserve. As you know, Exeter, with Ms. Haltman at the helm, is subject to numerous requirements to preserve documents: (1) Exeter has been the subject of numerous litigations brought by creditors over the past 18 to 24 months, all of which would require Ms. Haltman to preserve, and cease destruction of, any potentially related documents and information; (2) the commencement of the bankruptcy and the threat of related litigation would require, to the extent not already

required, Ms. Haltman to preserve, and cease destruction of, any potentially related documents and information; (3) as a chapter 11 debtor, Exeter has a duty to preserve its records in the normal course and Ms. Haltman, being paid through the bankruptcy, is responsible for doing so; and (4) the New York Department of Financial Services has its own retention requirements that were applicable to Exeter. Exeter and Ms. Haltman had an obligation to preserve the moment they had notice that evidence was relevant to litigation or should have known that the evidence may be relevant to future litigation; no notice by anyone was required. Both the prior litigations and the filing of the bankruptcy put Ms. Haltman on notice that the information contained on the Computer—the only computer that contained all of the financial records for Exeter and its related entities—was relevant to then pending or future litigation. And much of that information was already subject to the preservation requirements of the New York Department of Financial Services.

It is now apparent that the only way we will get to the bottom of this is to take a 30(b)(6) deposition of the person at Exeter most knowledgeable about the preservation and destruction of documents at Exeter, and all related issues. We made a request of the Debtor for such a deposition and were informed that Ms. Haltman is that person. We are waiting for Mr. Rosen to provide us with dates for Ms. Haltman's deposition.

Finally, in light of all the foregoing, the failure to preserve documents and information, including the hard drive, the inconsistent statements, some of which were under oath, and the fact that we have not made a secret of our intent to name Ms. Haltman as a defendant in adversary proceedings brought by the Committee, we insist that the Computer's hard drive be forensically imaged immediately. This will ensure that as much information as possible is preserved, which is our paramount concern. In light of the numerous delays related to the preservation of the Computer, we expect a response from you no later than October 2, 2012.

Very truly yours,

John D. Roesser

Encl.

cc:     Alfred M. Dimino (by email)
        Avrum Rosen (by email)

-3-