# EXHIBIT U

John D. Roesser
Louis A. Russo
**ALSTON & BIRD LLP**
90 Park Avenue
New York, New York 10016
212-210-9400

*Special Litigation Counsel for Plaintiff
Gary Herbst, as Plan Administrator for
the confirmed plan of Exeter Holding, Ltd.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

In re:

EXETER HOLDING, LTD.,

           Debtor.

---------------------------------------------------------------X

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

           Plaintiff,

   -against-

LINDA HALTMAN, *et al*,

           Defendants.

---------------------------------------------------------------X

Case No.: 13-cv-05475-JS-AKT

### THIRD AMENDED INITIAL DISCLOSURES OF PLAINTIFF GARY HERBST, AS PLAN ADMINISTRATOR FOR THE CONFIRMED PLAN OF EXETER HOLDING, LTD.

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Plaintiff Gary Herbst, as plan administrator for the confirmed plan of Exeter Holding, Ltd., (the "Plan Administrator" or "Plaintiff") by and through his undersigned special litigation counsel, Alston & Bird LLP, provides the second amended initial disclosures below. Plaintiff makes these disclosures without any waiver of any claim of privilege, work product protection, or other basis for non-disclosure. These disclosures are based on the information reasonably available at this time. Plaintiff reserves the right to supplement, amend, or alter these disclosures based on information obtained

Moreover, the addition of accrued interest on each of the loans, ranging from 12 to 24 percent per loan, will result in **millions of dollars in additional damages**. However, as a result of Defendants' failure to properly preserve and maintain Exeter's books and records, the precise amount of accrued interest that is uncollectable will need to be determined through an expert report.

C. <u>Category Three: Failure to Repay Loans to Property Corporations.</u>

Despite their willingness to take the profits earned by Property Corporations for their own personal gain, Defendants choose to write-off loans on Exeter's books made to failed Property Corporations and related entities rather than repay the funds owed to Exeter.[6] Discovery has revealed that, at minimum, Defendants wrote-off the following loans:

- **Eden Rock:** Exeter loaned approximately $1.625 million to Eden Rock Corp. ("Eden Rock"), but SBLI held a $1.6 million first mortgage on the property, which it sold to a third party when Exeter stopped paying interest on the loan. Exeter received only $28,300 after payment of taxes in a deed in lieu of foreclosure deal primarily entered into to relieve Defendants of their personal guarantees on the first mortgage. Accordingly, Exeter suffered damages totaling approximately **$1.6 million** as a result of Defendants mismanagement and failure to collect outstanding amounts owed on the Eden Rock debt.

- **Lewis Lane:** Exeter loaned approximately $1.617 million to Lewis Lane Corp. ("Lewis Lane"), but SBLI held a $1.6 million first mortgage on the property, which it sold to a third party when Exeter stopped paying interest on the loan. Exeter received only $43,800 after payment of taxes in a deed in lieu of foreclosure deal primarily entered into to relieve Defendants of their personal guarantees on the first mortgage. As a result of Defendants mismanagement of Exeter and failure to repay Exeter the funds borrowed on behalf of Lewis Lane, Exeter suffered approximately **$1.57 million** in damages.

- **Short Path:** Exeter loaned Short Path House Corp. ("Short Path") approximately $2.047 million, but IndyMac held a $1.38 million first mortgage on the property, that it foreclosed upon when Exeter stopped making interest payments on the debt. Accordingly, Exeter suffered damages in the amount of approximately **$2.047 million** as a result of the failed Short Path transaction.

---

[6] There is some overlap between Category One Damages for fraudulent transfers made to Property Corporations and these Category Three Damages relating to write-offs for failed Property Corporation transactions. Acknowledging this overlap, Plaintiff has adjusted the total amount of damages he is entitled to by the $4.39 million overlap.

-23-

- **Mill Farm**: Exeter loaned approximately $1.86 million to 29 Mill Farm Lane Corp. ("Mill Farm"). However, Ulster Savings Bank held a first mortgage on the property in the amount of $1 million. Therefore, when the property eventually sold for $2.3 million, Defendants wrote-off approximately $560,000 on Exeter's books rather than paying Exeter for the funds it had loaned. In addition, as a result of the Defendants failure to properly oversee the construction of the property owned by Mill Farm, the Haltmans, Mill Farm and Exeter faced a lawsuit brought by the buyers of the property seeking $100,000 in damages. The case was stayed pending Exeter's bankruptcy. Accordingly, the damages suffered by Exeter relating to Mill Farm total approximately **$650,000.00**.

- **Parrish Pond**: Exeter loaned approximately $1.576 million to Parrish Pond Court West Corp. ("Parrish Pond"), but IndyMac held a $1.7 million first mortgage on the property. When the house later sold for only $2.15 million, Exeter suffered **$1.47 million** in damages as a result of writing-off the balance of the loan owed to Exeter by Parrish Pond.

- **Begonia**: Exeter loaned approximately $900,000 to Begonia Court Corp. ("Begonia") so that Arnold Frank could purchase vacant land in Florida and build a house on the property. However, Fifth Third Mortgage Company held a first mortgage on the property, which it foreclosed upon resulting in approximately **$900,000** in damages to Exeter.

- **Other Related Transactions**: Exeter also loaned money for various other intended Property Corporation transactions that resulted in a significant write-down in debt, which further discovery may reveal totaled approximately **$2.17 million** in additional losses to Exeter.

Accordingly, Exeter suffered a minimum of approximately **$10.5 million** in damages as a result of failed Property Corporation transactions.

### D. Category Four: Expert Report Showing Additional Harm.

Exeter suffered damages resulting from Defendants' fraud and their breaches of fiduciary duties, among other shortcomings. While some of these damages may overlap with the other categories of damages set forth herein, Plaintiff's expert report may raise other types and categories of damages not yet specifically identified. Accordingly, Exeter suffered a minimum of $44.3 million in damages at Defendants' hands and, as discovery proceeds, it is likely that this number will increase.

**Rule 26(a)(1)(a)(iv)** – **for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment:**

The Plaintiff is not aware of any applicable insurance agreement that would be disclosable under this rule.

Date: August 15, 2014

ALSTON & BIRD LLP

By: _____
John D. Roesser
Louis A. Russo
90 Park Avenue
New York, New York 10016
(212) 210-9400

*Special Litigation Counsel for Plaintiff
Gary Herbst, as Plan Administrator for
the confirmed plan of Exeter Holding, Ltd.*

-26-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of this document are being served on the parties named on the attached Service List on August 15, 2014.

Leslie Salcedo

# Service List

| | |
|---|---|
| Marc A. Pergament<br>Marc J. Weingard<br>Weinberg Gross & Pergament LLP<br>400 Garden City Plaza<br>Garden City, NY 11530 | Norma E. Ortiz<br>Ortiz & Ortiz LLP<br>127 Livingston Street<br>Brooklyn, NY 11201 |
| Mark J. Friedman<br>The Law Offices Of Mark J. Friedman P.C.<br>66 Split Rock Road<br>Syosset, NY 11791 | Bonnie Pollack<br>Elizabeth Usinger<br>Jean-Pierre Van Lent<br>Cullen & Dykman LLP<br>100 Quentin Roosevelt Boulevard<br>Garden City, NY 11530 |