```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF EXETER HOLDINGS LTD.,

                Plaintiff,

        -against-                        MEMORANDUM & ORDER
                                         13-CV-5475(JS)(ARL)
LINDA HALTMAN et al.,

                Defendants.
----------------------------------------X
```

SEYBERT, District Judge:

Pending before the Court is Magistrate Judge A. Kathleen Tomlinson's Report and Recommendation ("R&R"), recommending that the Court grant Plaintiff's motion for sanctions (Docket Entry 92) in part and impose an adverse inference against Defendants at trial. (R&R, Docket Entry 151.) The Plaintiff and several Defendants filed objections to the R&R. (Docket Entries 156, 158, 159, 165) For the following reasons, the Court OVERRULES all of the parties' objections ADOPTS Judge Tomlinson's R&R in its entirety.

BACKGROUND

The Court assumes familiarity with the facts of this case, which are discussed within Judge Tomlinson's R&R. Briefly, this case was brought by an Official Committee of Unsecured Creditors ("Plaintiff") following the bankruptcy proceeding of Exeter Holdings, Ltd. ("Exeter" or "the Company"). (Compl., Docket

Entry 3-9, at 1-2.) Plaintiffs sued numerous defendants, including Bruce Frank, Kathleen Frank, Larry Frank, Arnold Frank, Sondra Frank, Linda Haltman, and Michael Haltman ("Defendants"). (Compl. at 1-2.) Plaintiff claims that Defendants defrauded Exeter's creditors by transferring funds from Exeter to themselves, certain trusts, and other entities. (Compl. at 1-2.)

On February 2, 2015, Plaintiff filed a motion seeking sanctions for spoliation of evidence. (Docket Entry 92.) On April 7, 2015, the undersigned referred Plaintiff's motion to Judge Tomlinson for an R&R on whether the motion should be granted. (Docket Entry 125.)

Judge Tomlinson issued her R&R on August 25, 2015. (Docket Entry 151.) The R&R recommends that the Court grant Plaintiff's motion in part, and issue an adverse inference instructing the jury at trial that "it may infer that the spoliated evidence was largely damaging to defendants." (R&R at 43.) The R&R further recommends that the Court deny Plaintiff's request for a default judgment and defer ruling on Plaintiff's request for attorney fees. (R&R at 47-48.)

The Plaintiff and several Defendants filed objections to Judge Tomlinson's R&R. Linda and Michael Haltman filed objections on September 16, 2015 (Docket Entry 156), Plaintiff filed objections on September 17, 2015 (Docket Entry 157), Arnold Frank filed objections the same day (Docket Entry 159), and Bruce Frank

2

filed objections on September 30, 2015 (Docket Entry 165). Each party's objections will be addressed in turn below.

DISCUSSION

I. Standard of Review

"When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erroneous." Walker v. Vaughan, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002) (citation omitted). A party may serve and file specific, written objections to a magistrate judge's report and recommendation within fourteen days of receiving the recommended disposition. See FED. R. CIV. P. 72(b)(2). Upon receiving any timely objections to the magistrate judge's recommendation, the district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3). A party that objects to a report and recommendation must point out the specific portions of the report and recommendation to which they object. See Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (citations omitted).

When a party raises an objection to a magistrate judge's report, the Court must conduct a de novo review of any contested sections of the report. See Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). But if a party "makes only conclusory

3

or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (internal quotation marks and citation omitted). Furthermore, even in a de novo review of a party's specific objections, the Court ordinarily will not consider "arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance." Kennedy v. Adamo, No. 02-CV-1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (internal quotation marks and citation omitted).

II. The Haltman Defendants' Objections

Linda and Michael Haltman ("the Haltman Defendants") object to Judge Tomlinson's R&R on a number of grounds. Principally they argue that Judge Tomlinson erred by: (1) not conducting an evidentiary hearing, (2) failing to determine that the evidence deleted by the Defendants was relevant, and (3) recommending that an adverse inference be issued as a sanction against Michael Haltman.[1]  (See generally Haltman Objec.)

---

[1] Although the Haltman Defendants listed fifteen separate objections in their motion, they do not provide support for the vast majority of their positions.  (See Haltman Objec., Docket Entry 156, at 1-4.)  Therefore, the Court need not consider all fifteen of the listed grounds.

4

A. The Decisions to Hold an Evidentiary Hearing is Discretionary and it was not Necessary to Hold One in this Case

In her R&R, Judge Tomlinson found that Exeter and its officers had a duty to preserve relevant information concerning the Company's financial state beginning in December 2009, when Exeter was first sued by one of its creditor. (R&R at 32, 36.) However a forensic analysis of Exeter's sole computer undertaken by Plaintiff's forensic expert, Brian T. Fox ("Fox") of PricewaterhouseCoopers LLP ("PwC"), revealed that between January 7, 2004 and October 10, 2012, a total of 64,084 files and folders were deleted. (R&R at 25.) Of those files, 46,623 were deleted between January 1, 2011 and October 10, 2012. (R&R at 25.) Judge Tomlinson also found that Exeter's insiders failed to preserve the Company's backup files at Iron Mountain, a records-storage company, and failed to take steps to preserve relevant incoming email messages with the Company's email service provider, GoDaddy.com. (R&R at 35.)

In their brief in response to Plaintiff's sanction motion, the Haltman Defendants' forensic expert raised the argument that PwC failed to identify whether any relevant content was deleted. (See Haltman Br. to Sanctions Mot., Docket Entry 147, at 6.) Fox submitted a supplemental affidavit in response attaching a list of 155 data files that were deleted by Defendants. (R&R at 26; Haltman Objec. Ex. B, Docket Entry 156-2 ("Fox Aff.").)

5

Fox wrote in his affidavit that "PwC, and counsel, each assessed the deleted content of the Forensic Hard Drive and identified the files most likely to contain business related data files." (Fox Aff. ¶ 7.) Fox also noted, however, that "PwC did not restore every potentially relevant deleted file, only those that were most likely data files." (Fox Aff. ¶ 7.)

The Haltman Defendants now argue that Fox's affidavit set forth the "new" theory that Defendants only deleted 155 data files--not 64,084 files--and therefore Judge Tomlinson should have held an evidentiary hearing to more closely examine this issue. (Haltman Objec. at 11.) However, the Haltman Defendants' argument misconstrues the facts. Fox conducted an analysis of the files Defendants deleted to respond to the Haltman Defendants' argument that no data files had been deleted. Fox did not analyze all of the 64,084 files that were deleted--rather he only examined a sample of the files available on Exeter's hard drive. Fox then listed 155 data files in his affidavit that had been deleted by Defendants, thus confirming that Defendants had in fact deleted data files. It is thus disingenuous to say that Fox's affidavit puts forth any new theory.

Although Fox's affidavit did present new information relevant to the disposition of the sanctions motion, the decision to hold an evidentiary hearing is discretionary. See In re Dynex Capital, Inc. Sec. Litig., No. 05-CV-1897, 2011 WL 2581755, at *3

(S.D.N.Y. Apr. 29, 2011) report and recommendation adopted, No. 05-CV-1897, 2011 WL 2471267 (S.D.N.Y. June 21, 2011) ("In this regard, it is within the Court's discretion to hold an evidentiary hearing on a sanctions motion, although no such hearing is required.") Judge Tomlinson's R&R extensively details the factual record relevant to Plaintiff's sanctions motion and contains meticulous references to evidence submitted by the parties, including citations to experts' affidavits and deposition testimony. Therefore, it was not necessary to hold an evidentiary hearing.

B. The Haltmans Defendants' Argument that No Relevant Evidence was Destroyed Lacks Support and Misconstrues Judge Tomlinson's Findings

The Haltman Defendants next argue that Judge Tomlinson's R&R is flawed because Plaintiff never definitively established that any relevant evidence was destroyed. (Haltman Objec. at 13.) But this argument ignores the factual record and misconstrues Judge Tomlinson's R&R.

First, the Haltman Defendants fail to acknowledge the proof that Defendants likely destroyed evidence relevant to this case. Specifically, (1) PwC identified 27 QuickBooks files that were deleted on November 21, 2011, shortly after Exeter filed for Bankruptcy; (2) there was a spike in the number of deleted files in September 2011 and November 2011--also coinciding with Exeter's bankruptcy; and (3) Defendants' forensic expert, Leonard

7

Weinstein, could not come forward with a credible reason for the loss of tens of thousands of files from Exeter's sole computer. (R&R at 25-31.) Therefore, the Court will not entertain Haltman Defendants' attempt to twist the facts.

In addition, the Haltman Defendants misconstrue the findings within Judge Tomlinson's R&R. A party seeking sanctions for spoliation of evidence must establish the following three elements: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (quoting Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107-12 (2d Cir. 2001). However, "[w]hen evidence is destroyed in bad faith[ ] that alone is sufficient to support an inference that the missing evidence would have been favorable to the party seeking sanctions, and thus relevant." Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 439 (S.D.N.Y. 2009) (citations omitted). Judge Tomlinson did not decide definitively that the deleted evidence was relevant. Rather, she determined that Defendants destroyed potentially relevant evidence in bad faith and therefore the evidence can be presumed to be relevant. (See R&R at 40 ("having

determined that the level of culpability was predominantly intentional or otherwise done in bad faith, this Court finds that the presumption of relevance is warranted.").) It would not be logical to require Plaintiff to prove that evidence, which no longer exists, was definitely relevant to Plaintiff's claims. It is enough for Plaintiff to show that evidence was destroyed in bad faith, and that it is more likely than not that the evidence was relevant. See Byrnie, 243 F.3d at 108. Therefore, the Haltman Defendants' objections concerning relevance are therefore OVERRULED.

C. An Adverse Inference Instruction Can Be Issued Against Michael Haltman

In her R&R, Judge Tomlinson recommends imposing an adverse inference upon the former officers Exeter and several de-facto officers because they had a duty to preserve relevant documents on behalf of the Company. (See R&R at 36 n.22, 45.) The Haltman Defendants argue that Michael Haltman, who is described in the R&R as a de-facto officer of Exeter, cannot be sanctioned for spoliation absent evidence that he "was in a position to direct the manner in which Exeter instituted a litigation hold." (Haltman Objec. at 19.)

Sanctions for spoliation are intended to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk;

9

and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." Aniero Concrete Co. v. N.Y. City Const. Auth., 308 F. Supp. 2d 164, 184-85 (S.D.N.Y. 2003) (citations omitted) (emphasis in original). In order to obtain an adverse inference for the destruction of evidence, the party seeking the sanction must first demonstrate that "the party having control over the evidence had an obligation to preserve it at the time it was destroyed." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted). "The preservation obligation runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, at 437-38 (S.D.N.Y. 210) (internal quotation marks and citations omitted). But, "[w]here the client is a business, its managers, in turn, are responsible for conveying to their employees the requirements for preserving evidence." Id. at 438. Here, Linda Haltman testified that counsel never advised her to preserve relevant documents on Exeter's sole computer. However, she also testified that she was aware of her obligation to preserve relevant evidence. (See Linda Haltman Dep., Docket Entry 142-1, 426:12-25.) It is unclear whether the other officers of Exeter were informed of their obligation to preserve relevant documents.

10

It would certainly be unfair to impose an adverse inference instruction "where some third-party, rather than the defendants at trial, caused the erasure." Stern v. Shammas, No. 12-CV-5210, 2015 WL 4530473, at *14 (E.D.N.Y. July 27, 2015). Here, however, it must be presumed that accounting information, which was deleted, would have shed light on whether the defendant officers of Exeter are liable for making fraudulent monetary transfers from the Company. Given the determination that relevant evidence concerning Exeter's financial state was knowingly destroyed, the Court cannot in good conscience impose an adverse inference against one executive within the closely-held organization who may have engaged in fraud, and not the others. Thus, when there has been intentional destruction of evidence by an officer of a closely held corporation, other officers of the closely held entity may be subject to sanctions, even if they did not have direct control of the evidence at issue. To hold otherwise would reward officers who turn a blind eye to malfeasance within their organization. See Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72-74 (S.D.N.Y. 1991) (explaining that "an agency, corporate officer, or legal department [cannot be permitted] to shield itself from discovery obligations by keeping its employees ignorant") (citation omitted). Therefore, all of the officers of Exeter may be subject to an adverse inference instruction for the spoliation that took place.

However, whether Michael Haltman was in fact an officer of Exeter is a separate question. Michael Haltman claims in an affidavit that he was merely an employee of Exeter, not an officer, who happened to the wife of Linda Haltman, the President of Exeter. (Michael Haltman Aff., Docket Entry 156-11, ¶¶ 6-7.) Although Michael Haltman affirms that he had "no control over any aspect of Exeter's decision-making," there is significant evidence to the contrary. (Michael Haltman Aff. ¶ 9.) Linda Haltman testified during a hearing that her husband was in fact an officer of Exeter. (Mar. 23, 2012 Hr'g Tr. 114:9-12[2].) Arnold Frank also described Michael Haltman as an "executive at large" and vice-president of Exeter during his deposition. (Arnold Frank Dep., Docket Entry 142-7 74:12-20.) In addition, email correspondence attached to Plaintiff's moving papers indicates that Michael Haltman's activities at Exeter touched varied aspects of the Company's business at a high level, including decisions related to its mounting legal problems. Pl.'s Reply Br., Docket Entry 141, at 18-19.) Thus, there is sufficient evidence to support Judge Tomlinson's decision that Michael Haltman was an officer of Exeter.

The Haltman Defendants' objections are therefore OVERRULED. The Objections filed by Arnold Frank and Bruce Frank (Docket Entries 159, 165) are similarly OVERRULED. Both sets of

---

[2] An excerpt of the March 23, 2012 Hearing Transcript can be found at Docket Entry 95-2 (Ex. 19) at E.C.F. pages 80-157.

Objections merely reiterate the argument that none of the files on Exeter's computer were ever deleted, and this argument has been addressed and rejected by the Court.

III. Plaintiff's Objections

Plaintiff objects to Judge Tomlinson's R&R on the ground that a default judgment is the only adequate remedy for Defendants misconduct. (Pl.'s Objec. at 9.) Plaintiff argues that a default, rather than an adverse inference, is called for here because Plaintiff cannot reconstruct Exeter's financial picture. However, Plaintiff made the exact same argument in their original motion papers, and their argument was considered and rejected by Judge Tomlinson. (See Pl.'s Sanction Br., Docket Entry 94, at 21-24.) Therefore, the Court need only review that portion of Judge Tomlinson's R&R for clear error. Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (if a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (internal quotation marks and citations omitted)).

After examining cases in which sanctions have been levied for discovery violations, Judge Tomlinson found that a default judgment was not called for in this case because, "this is [ ] not a case where Defendants have failed to comply with multiple discovery orders of this Court, have failed to heed prior lesser

13

sanctions that have been levied or have disregarded prior warnings that continued noncompliance would result in a default judgment." (R&R at 44-45.) Having reviewed the cases relied upon by Judge Tomlinson, the Court agrees. Therefore, Plaintiff's Objections are OVERRULED.

CONCLUSION

For the foregoing reasons, all of the parties' Objections (Docket Entries 156, 158, 159, 165) are OVERRULED and Judge Tomlinson's R&R (Docket Entry 151) is ADOPTED IN ITS ENTIRETY. Therefore, Plaintiff's motion for sanctions for spoliation of evidence (Docket Entry 92) is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART. Specifically, (1) Plaintiff's request for the imposition of an adverse inference instruction at trial is GRANTED; (2) Plaintiff's request for a default judgment is DENIED; and (3) the Court DEFERS ruling on Plaintiff's request for attorney fees. Should Plaintiff wish to pursue an award of attorney fees, it shall file a motion pursuant to Federal Rule of Civil Procedure 37 within forty-five (45) days from the date of

this Memorandum & Order.  The motion must be accompanied by an attorney declaration with appropriate supporting documentation and a memorandum of law.

Plaintiff's counsel is directed to serve a copy of this Memorandum & Order the pro se Defendants in this case.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    January __12__, 2016
          Central Islip, New York