```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
OFFICIAL COMMITTEE OF UNSECURED
CREDITORS,

                        Plaintiff,

        -against-                          MEMORANDUM & ORDER
                                           13-CV-5475(JS)(ARL)
LINDA HALTMAN et al.,

                        Defendants.
----------------------------------------X
```
SEYBERT, District Judge:

        Pending before the Court the Linda and Michael Haltman's ("the Haltman Defendants") motion seeking reconsideration of the Court's January 12, 2016 Memorandum & Order (the "January 2016 Decision"), in which the Court adopted Magistrate Judge A. Kathleen Tomlinson's Report & Recommendation ("R&R", Docket Entry 151) and granted Plaintiff's motion for sanctions for spoliation of evidence. (Recons. Mot., Docket Entry 175.) In addition, Plaintiff filed a motion seeking attorney fees and costs (the "Fee Application," Docket Entry 183) to recoup expenses incurred prosecuting his sanctions motion. For the reasons that follow, the Haltman Defendants' motion for reconsideration is denied and Plaintiff's Fee Application is denied without prejudice.

BACKGROUND

This case was brought by an Official Committee of Unsecured Creditors[1] ("Plaintiff") following the bankruptcy proceeding of Exeter Holdings, Ltd. ("Exeter" or "the Company") against officers, directors, and insiders of Exeter, including Bruce Frank, Kathleen Frank, Larry Frank, Arnold Frank, Sandra Frank, and the Haltman Defendants (together, "Defendants").[2] (Compl., Docket Entry 3-9, at 1-2.) Plaintiff claims that, prior to filing for bankruptcy, Defendants defrauded Exeter's creditors by transferring funds from Exeter to themselves, certain trusts, and other entities. (Compl. at 1-3.)

On February 2, 2015, Plaintiff filed a motion seeking sanctions for spoliation of evidence. (Docket Entry 92.) In the motion, Plaintiff claimed Defendants were aware of their obligation to preserve relevant documents about Exeter's finances

---

[1] This action was commenced, on October 23, 2012, by the Official Committee of Unsecured Creditors of Exeter Holding Ltd. (the "Committee") in the context of a bankruptcy proceeding in the Eastern District of New York. On May 20, 2013, the Committee filed an amended liquidation plan and a Plan Administration Agreement was filed on June 21, 2013 and was entered by Bankruptcy Judge Alan S. Trust on July 8, 2013. As part of its terms, the Committee was dissolved and all causes of action, including those alleged in the adversarial proceeding (see Complaint), were transferred to the Plan Administrator. Thus, the Plan Administrator--Gary Herbst--became the Plaintiff in the instant adversarial proceeding and is the current party in interest. (R&R at 2 n.1.)

[2] A number of trusts and minor children are also named in the Complaint. (See Compl. at 1-2.)

2

beginning on December 7, 2009, when Exeter was sued by a group of non-bank lenders to recover on promissory notes issued by Exeter. (Pl.'s Sanctions Br., Docket Entry 94, at 4.) Notwithstanding Defendants' obligation to preserve relevant documents, Plaintiff argued that Defendants failed to ensure that: (1) emails were properly preserved by GoDaddy.com, Exeter's email services provider (Pl.'s Sanctions Br. at 7); (2) backups of Exeter's computer hard drive were properly stored and retained by Iron Mountain, Exeter's backup services provider (Pl's Sanctions Br. at 8); and (3) that files on Exeter's sole computer were properly maintained, allowing Linda Haltman to delete relevant documents (Pl.'s Sanctions Br. at 6).

On April 7, 2015, the undersigned referred Plaintiff's motion to Judge Tomlinson for an R&R on whether the motion should be granted, (Docket Entry 125), and on August 25, 2015, Judge Tomlinson issued an R&R recommending that the Court grant Plaintiff's motion in part and impose an adverse inference at trial on the officers and directors of Exeter for spoliation of evidence (R&R at 47). Judge Tomlinson specifically found that Defendants failed to timely preserve the Company's backup files at Iron Mountain, failed to take steps to preserve relevant incoming email messages on GoDaddy.com, and willfully deleted relevant files from Exeter's computer. (R&R at 35.)

Judge Tomlinson's determination that Defendants

willfully deleted emails from Exeter's computer was based in part on the work of Plaintiff's forensic expert, Brian T. Fox ("Fox") of PricewaterhouseCoopers LLP ("PwC"), who analyzed a copy of the computer hard drive from Exeter's sole computer and opined that thousands of files had been deleted. (Fox Aff., Docket Entry 93, ¶¶ 1, 5, 7.) Fox submitted two sworn affidavits in connection with Plaintiff's spoliation motion. (Docket Entries 93, 143.)

In his first affidavit, Fox explained that he used software to search Exeter's hard drive and determined that a total of 64,084 files and folders had been deleted from Exeter's computer between January 7, 2004 and October 10, 2012. (Fox Aff. ¶¶ 6-7.) Of these 64,084 files and folders, 46,623 were deleted between January 1, 2011 and October 10, 2012. Moreover, 21,302 files were either partially or completely overwritten, rendering them unrecoverable. (Fox Aff. ¶ 7.) From January 1, 2011 to October 10, 2012, the average number of files deleted per month was 2,119, however, Fox noted that in September 2011 and November 2011, there was a significant increase in the number of files deleted--20,680 in September 2011 and 10,703 in November 2011. (Fox Aff. ¶ 8.) Notably, the deletion of these files coincided with the filing of Exeter's Bankruptcy on November 9, 2011. (R&R at 31.) Further, of these 10,703 files, 8,961 files were deleted on a single day, November 21, 2011. (Fox Aff. ¶ 8.) In addition, Fox found that 92 "QuickBooks-related" files were deleted, and

4

that of these 92 files, 27 were deleted on November 21, 2011. (Fox Aff. ¶ 9.)

In response to Fox's Affidavit, the Haltman Defendants submitted the expert affidavit of Leonard Weinstein ("Weinstein") of Guzinta Technology Group. (Weinstein Aff., Docket Entry 128-4, ¶ 1.) Weinstein opined that "the deletion of the 64,084 files and folders by a business over the course of a ten (10) year period is a very small amount" and "the deleted files were most likely due to hard drive cleanup of temporary files and folders, . . . and in addition, the removal of files due to instances of viruses, trojans and malware." (Weinstein Aff. ¶¶ 9, 12.) Weinstein further took issue with Fox's failure to identify whether the thousands of files that were deleted were actually data files, as opposed to program files or system files. (Weinstein Aff. ¶ 14.)

In response to Weinstein's assertion that Fox failed to identify relevant data files, Fox composed a Supplemental Affidavit in which he elaborated on the analysis he performed on Exeter's hard drive. (See Fox Supp. Aff., Docket Entry 143, ¶ 2.) Fox opined in his Supplemental Affidavit that, contrary to Weinstein's claim, Defendants did delete data files, and he attached a list of 155 files that he identified as the "files most likely to contain business relevant data." (Fox Supp. Aff. ¶ 7, Ex. A.)

In a letter from their attorney dated May 26, 2015 (the "May 26 Letter" Docket Entry 149), the Haltman Defendants responded directly to Fox's Supplemental Affidavit. (See May 26 Ltr.) In the May 26 Letter, the Haltman Defendants requested permission to file a sur-reply and took issue with the fact that Fox did not present his list of 155 files in support of Plaintiff's original moving papers. In addition, Haltman Defendants stated that "upon her recent review . . . of the Exeter hard drive . . . Linda Haltman discovered that she was able to access, open and print nearly every allegedly deleted data file, html file and email identified in [the list]." (May 26 Ltr.) Attached to the May 26 Letter are a total of 18 documents which purportedly depict data files identified by Fox that Linda Haltman was able to locate on her copy of Exeter's hard drive. (May 26 Ltr., Exs. 1-2.)

Judge Tomlinson did not address the Haltman Defendants' May 26 Letter, nor did she discuss it in her Report and Recommendation. However, Judge Tomlinson rejected Weinstein's explanation that a "virus or Trojan" was the primary cause of the data deleted from the hard drive. (R&R at 30-31.) Judge Tomlinson instead found that the contents of the recovered data files presented to the Court, which included "correspondence . . . regarding Exeter, tax, asset accounting statements, spreadsheets and documents relating to outstanding mortgages and/or pertaining to Exeter's liabilities" created a "strong inference that the

majority of the deletion activity was done with the purposeful intent to ensure that data would be destroyed." (R&R at 39, 41.) After reviewing Judge Tomlinson's R&R and numerous objections filed by Defendants, the Court issued its January 2016 Decision adopting Judge Tomlinson's recommendations. See Official Comm. of Unsecured Creditors of Exeter Holdings Ltd. v. Haltman, No. 13-CV-5475, 2016 WL 128154, at *5 (E.D.N.Y. Jan. 12, 2016). The Court also did not discuss the Haltman Defendants' May 26 Letter in its January 2016 Decision.

In their motion for reconsideration pending before the Court, the Haltman Defendants argue that the May 26 Letter contains material facts that the Court overlooked. (Defs.' Br., Docket Entry 176, at 3.) More specifically, the Haltman Defendants claim the attachments to their letter disprove Fox's conclusion that the 155 data files were actually deleted, and therefore the Court should not have issued sanctions against Defendants for spoliation. (Defs.' Br. at 3.) Further, the Haltman Defendants argue that Judge Tomlinson erred by not holding an evidentiary hearing and that no basis exists to issue an adverse inference against Michael Haltman. (Defs.' Br. at 11, 13.)

DISCUSSION

I. Motion for Reconsideration

Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and

7

Local Rule 6.3. See Wilson v. Pessah, No. 05-CV-3143, 2007 WL 812999, at *2 (E.D.N.Y. Mar. 14, 2007). A motion for reconsideration is appropriate when the moving party believes the Court overlooked important "matters or controlling decisions" that would have influenced the prior decision. Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999). However, Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion. See United States v. Gross, No. 98-CR-0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) ("A party may not use a motion to reconsider as an opportunity to reargue the same points raised previously."). Nor is it proper to raise new arguments and issues. See Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997). Reconsideration may only be granted when the Court did not evaluate decisions or data that might reasonably be expected to alter the conclusion reached by the Court. Wechsler v. Hunt Health Sys., 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002).

 A. <u>Reconsideration of the Haltman Defendants' May 26 Letter</u>

  The attachments to the Haltman Defendants' May 26 Letter consist of screen shots and documents that are presented as evidence that the data files identified in Fox's Supplemental Affidavit still exist on Exeter's hard drive. (See May 26 Ltr.,

Exs. 1, 2.) The Haltman Defendants argue that this evidence establishes that no data files were ever deleted, and that both the Court and Judge Tomlinson failed to consider this evidence before issuing sanctions against Defendants. (Defs.' Br. at 4-11.)

The Court finds that, upon reviewing this evidence, there is no basis to modify its decision to issue sanctions. Contrary to the Haltman Defendants' claim, the documents attached to the May 26 Letter do not show that all the data files identified by Fox still reside on Exeter's hard drive. Exhibit 1 to the May 26 Letter purports to show, by attaching pictures of screen shots and copies of documents, that 13 out of 17 documents identified by Plaintiff's expert as "recovered" but "unable to be opened after restoration" still exist on Exeter's hard drive. (May 26 Ltr., Ex. 1.) In addition, Exhibit 2 depicts five "invoice" files listed by Plaintiff's expert, which the Haltman Defendants claim to be unrelated to Exeter's business. (May 26 Ltr., Ex. 2.) Even if the Court were to deem these screen shots and documents to be credible evidence establishing that 18 out of 155 data files flagged by Plaintiff still reside on Exeter's hard drive, that still leaves 137 data files unaccounted for. Moreover, the Haltman Defendants do not address the whereabouts of the 56 data files that, according to Fox's analysis, were deleted and subsequently recovered by Plaintiff's expert. As Judge Tomlinson concluded,

9

these recovered files--which include tax records, accounting statements, and documents detailing Exeter's liabilities--are relevant to Plaintiffs claims because they provide insight into Exeter's financial state prior to its bankruptcy. (See R&R at 41; Roesser Aff., Docket Entry 142 ¶ 6, Ex. 4.) Thus, even if the evidence attached to the May 26 Letter is deemed credible, the Court still must conclude that relevant data files were deleted from Exeter's computer. Moreover, there is no dispute that documents were lost because of Defendants' failure to safeguard emails from GoDaddy.com and backup data from Iron Mountain.

Moreover, it is far from certain whether the screen shots and documents attached to the May 26 Letter are reliable. The evidence is attached to a letter from the Haltman Defendants' lawyer, rather than an affidavit from Linda Haltman or her expert. Yet, Plaintiff's counsel credits Linda Haltman as the source of the evidence. Moreover, the screen shots and documents that the Haltman Defendants point to have not been subjected to any expert analysis.

In sum, the evidence attached to the Haltman Defendants' May 26 Letter does not call into question the conclusion reached by both Judge Tomlinson and this Court--that Defendants deleted relevant evidence in bad faith. The Court is thus not persuaded that its decision to issue an adverse inference should be revisited.

B. <u>Adverse Inference Against Michael Haltman</u>

The Court previously held that all of the former officers of Exeter, including Michael Haltman, could be sanctioned for Linda Haltman's destruction of records in this case. <u>See</u> <u>Official Committee</u>, 2016 WL 128154, at *3-5. The Court reasoned that, even if the other officers did not actively destroy evidence, they nevertheless bore responsibility for preserving the documents as managers Exeter. <u>Id.</u> The Court further found that given the unique facts of this case, in which Defendants are accused of fraudulently looting assets from their closely held corporation, it would be inequitable to limit the adverse inference to only Linda Haltman, the one officer accused of physically destroying evidence, because there is no way to know what the lost documents would have shown.

The Haltman Defendants argue--as they did in their Objections to the Court's January 2016 Decision--that any adverse inference instruction to the jury should not apply to Michael Haltman because: (1) he purportedly had no knowledge of the deletion of evidence from Exeter's computer and (2) he was not an officer of Exeter. However, these same argument were already addressed by the Court in its January 2016 Decision. While the Haltman Defendants may disagree with the Court's analysis and conclusions, the Court need not reexamine issues that were already

11

ruled upon.³  See Gross, 2002 WL 32096592, at *4 ("A party may not use a motion to reconsider as an opportunity to reargue the same points raised previously.").

Finally, the Haltman Defendants argue that the Court did not fully adopt Judge Tomlinson's R&R, given Judge Tomlinson's recommendation that any sanctions issued against Defendants should be imposed solely in their capacity as officers and directors of Exeter, rather than in their individual capacities.  (See R&R at 9-11).  Despite Judge Tomlinson's discussion of piercing the corporate veil in her R&R, the R&R recommends that "Plaintiff's request for the imposition of an adverse inference at trial should be GRANTED."  (R&R at 47.)  Even if the Court could issue an adverse inference against Defendants solely in their capacity as officers and directors of Exeter, the instruction would have little practical effect because Exeter is not a Defendant in this case.  Thus, any adverse inference at trial would necessarily be levied against the officers and directors of Exeter in their individual capacities, with the Court instructing the jury to infer that the destroyed evidence would have been helpful to Plaintiff.  Nevertheless, the Court will defer ruling on the final language of

---

³ For the same reason, the Court need not address the Haltman Defendants' argument that Judge Tomlinson erred by not holding an evidentiary hearing.  This argument was already addressed and rejected in the Court's January 2016 Decision. Official Comm., 2016 WL 128154, at *3.

12

any adverse inference until this case is ready for trial. If Defendants believe it is necessary to include language within the adverse inference clarifying the document retention obligations of officers and directors, they are invited to submit further briefing on the issue prior to trial.

II.  Plaintiff's Fee Application

Plaintiff seeks to recover $774,871.00 in attorney fees and costs incurred in connection with Plaintiff's sanctions motion for spoliation. (Pl.'s Fees Br., Docket Entry 184, at 15-17.) The Haltman Defendants oppose Plaintiff's application, arguing that Plaintiff's request is excessive given (1) the categories of costs Plaintiff's seek to recover from the Defendants, (2) the amount time expended by Plaintiff's counsel, and (3) the hourly rates billed. (Defs.' Opp. Br., Docket Entry 189, at 3-15.)

A.  Legal Standard

Federal Rule of Civil Procedure 37(b)(2)(A) allows a court to impose sanctions on a party that engaged in discovery abuses. In addition, Federal Rule of Civil Procedure 37(b)(2)(C) provides that instead of or in addition to imposing sanctions for a party's failure to comply with a court order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

13

FED. R. CIV. P. 37(b)(2)(C) (emphasis added). Although the Second Circuit has never explicitly held that the payment of expenses pursuant to Rule 37(b)(2)(C) is mandatory, the burden is on the violator to show that there was a substantial justification for the violation, or that circumstances would make it unjust to award reasonable expenses to the moving party. See Novak v. Wolpoff & Abramson LLP, 536 F.3d 175, 178 (2d Cir.2008) ("The use of the word 'shall' certainly suggests that an award of expenses is mandatory unless one of the two exceptions--substantial justification or other circumstances--applies."); Commodity Futures Trading Comm'n v. Royal Bank of Canada, No. 12-CV-2497, 2014 WL 1259773, at *1 (S.D.N.Y. Mar. 28, 2014) (explaining that the court is not required to consider "the willfulness of [the disobedient party's] conduct" when awarding expenses under Rule 37(b)(2)(C)).

    B.    Categories of Recoverable Costs

Plaintiff seeks to recover costs in various categories, which Plaintiff asserts are related to his effort to uncover Defendants' spoliation. (See Pl.'s Fees Br. at 14-17.) Plaintiff specifically seeks to recover expenses for the following categories of work:

- Negotiating the Confidentiality Agreement and Production of the Forensic Hard Drive: $29,781
- Reviewing the contents of the Forensic Hard Drive: $32,091
- Vendor Costs incurred Processing and Reviewing the Forensic Hard Drive: $22,527

14

- Analysis related to PwC's Initial Deletion Analysis: $38,036
- Preliminary Analysis regarding Preservation Obligations: $4,857
- Preparing the Sanctions Motion papers: $334,648
- Preparing the Cross Motion opposition papers: $41,463
- Depositions of Messrs. Weinstein and Lee (and related issues): $93,349
- PwC fees related to the Sanction Motion, Cross Motion and Expert Depositions: $54,145
- Preparing for the continued deposition of Mrs. Haltman: $3,601
- Preparing Objections to the Report and opposing Defendants' Objections to same: $36,592
- Preparing Opposition to Motion for Reconsideration: $43,261
- Preparing the instant Application for fees: $15,000
- Costs: $25,520

(Pl.'s Fees Br., at 15-17.) Having reviewed Plaintiff's Fee Application and billing records, the Court finds that, with the exception the first three categories, the costs listed above are reasonably related to Plaintiff's spoliation motion.[4]

Adding the first three categories of costs together, Plaintiffs seek to recoup $84,399 in expenses for negotiating a confidentiality agreement and reviewing and processing Exeter's hard drive. The Court finds that these costs are too removed from the business of prosecuting Plaintiff's spoliation motion to be compensable. Plaintiff argues that he should be able to shift these costs to Defendants because, as a precondition to receiving Exeter's hard drive, Plaintiff was required to enter into a

---

[4] The Court expresses no opinion in this Memorandum & Order as to whether the hours Plaintiff's counsel in prosecuting its Spoliation motion were reasonable.

15

confidentiality agreement obligating Plaintiff to "process the contents of the Forensic Hard Drive . . . [and] review approximately 100,000 documents it contained." (Pl.'s Fee Br. at 14.) Although Plaintiff no doubt expended considerable resources reviewing the contents of Exeter's hard drive, Plaintiff would have had to review the contents of the hard drive--in some form-- during discovery, regardless of whether Defendants engaged in spoliation. See S.E.C. v. Yorkville Advisors, LLC, No. 12-CV-7728, 2015 WL 855796, at *11 (S.D.N.Y. Feb. 27, 2015) (declining to award costs for reviewing privilege logs because "Defendants would have incurred these costs whether or not the Privilege Logs [at issue] were deficient"). Plaintiff argues that the covenants made in the confidentiality agreement forced Plaintiff to review "an un-culled set of documents--thousands of which were unrelated to the bankruptcy at all." (Pl.'s Fees Reply, Docket Entry 194, at 7-8.) However, the Court will only award attorney fees and costs to reasonably compensate Plaintiff for prosecuting the spoliation motion. The Court will not shift a large swath of e-discovery costs onto Defendants merely because Plaintiff agreed to undertake a document review pursuant to a freely-negotiated confidentiality agreement.

C. Attorney Fees

The lodestar approach is generally used to calculate reasonable attorney fees. "'Under this approach, the number of

16

hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals.'" Restivo v. Nassau Cty., No. 06-CV-6720, 2015 WL 7734100, at *2 (E.D.N.Y. Nov. 30, 2015) (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). The Second Circuit has counseled that the "lodestar," which the Circuit now refers to as the "reasonable hourly rate," is the rate a paying client would be willing to pay, keeping in mind that a "paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008). Further, the court must look to various case-specific variables in determining a reasonable hourly rate, including but not limited to:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal services properly; (3) the level of skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorney; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Gagasoules v. MBF Leasing LLC, No. 08-CV-2409, 2013 WL 1760134, at *2 (E.D.N.Y. Apr. 24, 2013) (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

Here, Plaintiff did not provide the Court with a list of the attorneys who worked on the spoliation motion, any biographical information, or a list of their billing rates. Rather, Plaintiff submitted an affidavit containing billing records and a brief affidavit describing work completed by numerous attorneys, charging a range of rates, during various time periods. The Court will not parse through Plaintiffs bills and search for biographical information that Plaintiff should have provided in its moving papers.

Plaintiff's Fee Application is therefore rejected. Plaintiff may file a supplemental fee request consistent with this Memorandum & Order within thirty (20) days of the date of this Order. Plaintiff my not recoup additional fees for any supplemental submissions.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For the foregoing reasons, the Haltman Defendants' motion for reconsideration (Docket Entry 175) is DENIED and Plaintiff's Fee Application (Docket Entry 183) is DENIED WITHOUT PREJUDICE.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September  21 , 2016
       Central Islip, New York