UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF EXETER HOLDING, LTD.,

                    Plaintiff,          MEMORANDUM & ORDER
                                        13-CV-5475 (JS)(AKT)
          -against-

LINDA HALTMAN, et al.,

                    Defendants.
------------------------------------X
SEYBERT, District Judge:

          The Official Committee of Unsecured Creditors of Exeter

Holding, Ltd. ("Plaintiff" or "the Committee") commenced this

adversary proceeding against officers, directors, and insiders of

Exeter Holdings, Ltd. ("Exeter" or the "Company") following the

commencement of bankruptcy proceedings by Exeter. (Compl., Docket

Entry 3-9, ¶¶ 1-2.)  On September 18, 2013, the reference to the

Bankruptcy Court was withdrawn, and proceedings began in this

Court. (Order Withdrawing Ref., Docket Entry 2.)  The Defendants

include Arnold Frank and Sondra Frank; their three children Linda

Haltman, Bruce Frank, and Larry Frank; and their grandchildren,

trusts and other entities (collectively "Defendants"). (Compl. ¶¶

16-70.)  Plaintiff alleges that Defendants defrauded Exeter's

creditors by transferring funds to themselves, trusts, and other

entities they control and seeks to recover approximately $29

million. (Compl. ¶¶ 3-7.)

Currently pending before the Court is a motion to dismiss pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6)[1] filed by a group of Defendants referred to herein as the "Moving Defendants."[2]  (Mot. to Dismiss, Docket Entry 240.)  The Moving Defendants consist of the following:

---

[1] Pursuant to Federal Rules of Bankruptcy Procedure 7008, 7009, and 7012, Federal Rules of Civil Procedure 8, 9 and 12(b) are applicable to this adversary proceeding.  FED. R. BANKR. P. 7008, 7009, 7012.

[2] The Moving Defendants represent that Addendum A, attached to their Notice of Motion, accurately identifies the Defendants who have moved to dismiss.  (Mot. to Dismiss, Addendum A, Docket Entry 240, at 4-7.)  However, Addendum A and the Moving Defendants' brief are inconsistent in this regard.  (Compare Addendum A with Defs.' Br., Docket Entry 241, at 2-3.)  Additionally, a number of the Defendants listed in Addendum A have answered the Complaint, which precludes them from simultaneously moving to dismiss under Rule 12(b)(6).  (See Arnold Frank and Sondra Frank Answer, Docket Entry 3-1; Property Corps. Answer, Docket Entry 3-3; Linda Haltman, Michael Haltman, Bruce Frank, and Kathleen Frank Answer, Docket Entry 3-4; Larry Frank Answer, Docket Entry 3-11.)  See FED. R. CIV. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").  Therefore, because the following Defendants have answered, the Court will not consider them members of the group of Moving Defendants: (1) Linda Haltman, (2) Linda Haltman as trustee for the Arnold and Sondra Frank Irrevocable Trust, (3) Michael Haltman, (4) Bruce Frank, (5) Kathleen Frank, (6) 124 New York Avenue Corp., (7) 140 Maggie Drive Corp., (8) 22 Bridge Lane Corp., (9) 22 West Hills Court Corp., (10) 29 Mill Farm Lane Corp., (11) 207 Parrish Pond Road Corp., (12) 3 Lewis Lane Corp., (13) Begonia Court Corp., (14) Bittersweet Partners Inc., (15) Eden Rock Corp., (16) Maplewood Associates, Inc., (17) Short Path House Corp., (18) Sound Side Ventures, Ltd., and (19) Via Trenta Corp.  The Court recognizes that a subset of the Moving Defendants filed an Answer on May 26, 2016.  (Haltman Defs.' Answer, Docket Entry 205.)  However, because the motion to dismiss was filed several years prior, the Court will still consider those defendants as having moved to dismiss.

(1) the C.H. Trust,[3] the Ryann Haltman Trust, the
Samantha Haltman Trust, the B.F. Trust, the E.F. Trust,
the J.F. Trust, the K.F. Trust, the Barbara Cohen – Linda
Haltman Trust, the Murray Cohen – Linda Haltman Trust,
the Barbara Cohen – Bruce Frank Trust, the Murray Cohen
– Bruce Frank Trust, the Barbara Cohen – Larry Frank
Trust, and the Murray Cohen – Larry Frank Trust
(collectively "the Moving Trusts");

(2) Linda Haltman and Michael Haltman as trustees for
the C.H. Trust, the Ryann Haltman Trust, and the Samantha
Haltman Trust; Bruce Frank and Kathleen Frank as
trustees for the B.F. Trust, E.F. Trust, the J.F. Trust,
and the K.F. Trust; and Sondra Frank as trustee for the
Barbara Cohen – Linda Haltman Trust, the Murray Cohen –
Linda Haltman Trust, the Barbara Cohen – Bruce Frank
Trust, the Murray Cohen – Bruce Frank Trust, the Barbara
Cohen – Larry Frank Trust, and the Murray Cohen – Larry
Frank Trust (collectively "the Moving Trustees");

(3) C.H., B.F., E.F., J.F., and K.F.[4] (collectively "the
Minor Grandchildren");

(4) Linda and Michael Haltman as guardians of C.H., and
Bruce and Kathleen Frank as guardians of B.F., E.F.,
J.F., and K.F. (collectively, "the Guardians of the
Minor Grandchildren"); and

(5) Ryann Haltman and Samantha Haltman, (together "the
Non-Minor Grandchildren"). (Defs.' Br. at 2-3.)

For the reasons that follow, the motion to dismiss is

GRANTED PART and DENIED IN PART.

---

[3] To protect the identities of the minors involved in this
matter, their names are abbreviated.

[4] The Court recognizes that two of the Minor Grandchildren, K.F.
and E.F., have reached the age of eighteen and are proceeding
pro se in this action. However, because E.F. and K.F. were
minors when the motion was filed, the Court will treat them as
minors for purposes of this Memorandum and Order.

I.  Factual Background[5]

On November 9, 2011, Exeter filed for bankruptcy in this District under Chapter 11 of the Bankruptcy Code.  (Compl. ¶¶ 2, 11.)  Plaintiff was subsequently appointed and authorized to commence this action against Defendants. (Compl. ¶¶ 13-14.)

A.  The Parties

The Committee consists of three unsecured creditors of Exeter: (1) the Larry Lawrence Family Trust, Larry Lawrence IRA; (2) Howard Berlin or Berlin Enterprises Employee Pension Fund; and (3) Leslie Whitney, an individual.  (Compl. ¶ 15.)

Exeter is a closely held, family-run S corporation founded in 1986 by Arnold Frank, the CEO.  (Compl. ¶¶ 75-76.)  At the time Plaintiff filed the Complaint, Exeter leased office space at 131 Jericho Turnpike, Suite 250, Jericho, New York.  (Compl. ¶ 77.)

Arnold Frank was a fifty-percent owner of Exeter.[6] (Compl. ¶ 16.)  He was married to Sondra Frank, an officer of

---

[5] The facts alleged in the Complaint are presumed to be true for the purposes of this Memorandum and Order.

[6] Arnold Frank died while this action was pending.  (See Suggestion of Death, Docket Entry 226.)  Plaintiff renewed their motion to substitute Sondra Frank and Bruce Frank for Arnold Frank on November 24, 2017.  (Mot. to Substitute, Docket Entry 270.)

Exeter, who owns ten percent of Exeter. (Compl. ¶¶ 16-17, 75.)
The remaining forty percent is owned by the Sondra Frank Grantor
Remainder Annuity Trust. (Compl. ¶ 75.) Arnold and Sondra have
three children: Linda Haltman, Bruce Frank, and Larry Frank (the
"Children"). (Compl. ¶ 17.)

Linda Haltman is the President of Exeter and married to
Michael Haltman. (Compl. ¶¶ 12, 18.) Michael is an employee of
Exeter. (Compl. ¶ 75.) Linda and Michael have three children:
Ryann Haltman, Samantha Haltman, and C.H. (Compl. ¶¶ 18-19.)
Bruce Frank is married to Kathleen Frank, and the couple has four
children: B.F., E.F., J.F., and K.F (along with Ryann, Samantha,
and C.H., "the Grandchildren"). (Compl. ¶¶ 20-21.) The Complaint
alleges that Arnold and Sondra Frank, their Children and
Grandchildren were insiders of Exeter as defined by the Bankruptcy
Code.[7] (Compl. ¶¶ 16-22.)

The Defendants also include fourteen corporations owned
by Arnold Frank, Linda Haltman, Bruce Frank, or Larry Frank, or a
combination thereof (the "Property Corporation Defendants").
(Compl. ¶¶ 36-49.) Although they are not Defendants, Plaintiff
alleges that eight corporations that were dissolved before the
filing of the Complaint are also relevant. (Compl. ¶ 50.) The
Complaint avers that these corporations were alter egos of Exeter

---

[7] See 11 U.S.C. § 101(31), (45).

and their owners.  (Compl. ¶ 50.)  These twenty-two corporations will be referred to as the "Property Corporations."

The Committee also brought suit against a number of trusts created for the benefit of either one of the Children or the Grandchildren.  (Compl. ¶¶ 52-69.)  Plaintiff alleges that each of the beneficiaries of these trusts was an insider as defined by the Bankruptcy Code.  (Compl. ¶¶ 52-68.)  The trusts will be referred as the "Trust Defendants."

B.  Exeter's Business

Exeter was in the business of making construction loans to builders and homeowners using a combination of bank loans, funds from family members, and funds loaned to the Company by various individuals and entities ("Non-Bank Lenders").  (Compl. ¶ 80.)  In exchange, the Non-Bank Lenders would receive notes in which Exeter agreed to repay the loan at a specified interest rate.  (Compl. ¶¶ 81-82.)  Generally, when Exeter provided a construction loan, it received collateral, often in the form of a mortgage.  (Compl. ¶ 83.)

Exeter frequently incorporated entities (previously referred to as the Property Corporations) "for the purpose of purchasing property or vacant lots" and used the address of the property as the name for the newly formed entity.  (Compl. ¶ 85.)  Exeter loaned money, without liens, to the Property Corporations to purchase the property, and Exeter would recover the amount of

the loan, plus interest, once the property was sold. (Compl. ¶ 87.) Many of the transactions involved 124 New York Avenue Corp., which according to Linda Haltman, is "one in the same" with Exeter.[8] (Compl. ¶ 88.) After the property was purchased by the Property Corporation, Exeter would provide a construction loan to a construction or building company to improve the property. (Compl. ¶ 89.) However, after these transactions were finalized, "Exeter rarely sought to collect on the notes or to recover the property because each and every one of the Property Corporations was its alter ego as well as the alter ego of the owners of the Property Corporation." (Compl. ¶ 91.) As of September 30, 2006, Exeter had construction loan receivables secured by first mortgages to twenty-seven Property Corporations in the amount of $13,085,919.00, and as of September 30, 2008, to twenty-four Property Corporations in the amount of $11,396,727.00. (Compl. ¶ 92.)

Occasionally, Exeter also engaged in mortgage transactions ("Mortgage Transactions") in which it loaned funds to individuals or companies in exchange for collateral, usually a mortgage on the property which had either first or second priority. (Compl. ¶ 93.) Because Exeter was a licensed mortgage banker, it was required to submit quarterly reports detailing certain

_____

[8] Linda Haltman testified at two hearings during the bankruptcy proceedings. (Compl. ¶ 12.)

financial information, including information for affiliated companies such as the Property Corporations. (Compl. ¶ 94.)

The Mohrings, one of Exeter's oldest clients, served as builders or contractors on a number of projects. (Compl. ¶ 96.) Arnold Frank and Mr. Mohring agreed to more than ten deals "with a 'handshake'" and without any written agreements, and on occasion, Exeter loaned money to the Mohrings on an unsecured basis. (Compl. ¶ 97.) Plaintiff alleges that "as a result of their close relationship," Defendants "frequently entered into transactions that were contrary to the Debtor's normal course of business." (Compl. ¶ 99.) Additionally, Exeter's unsecured loans to the Mohrings were never repaid and the security for the loans was "entirely inadequate collateral" and sometimes "conveyed to third parties . . . without [Exeter's] knowledge or consent." (Compl. ¶ 102.) Plaintiff details a number of transactions in which the Mohrings violated their obligations without consequence and conveyed or offered as collateral properties that were worthless due to a sale to a third party or other encumbrances, including at least one property that was subject to foreclosure. (Compl. ¶¶ 104-08.) Additionally, approximately $1,700,000.00 loaned to the Mohrings, which was previously held in escrow, cannot be located. (Compl. ¶ 109.)

C.  Improper Management

     In the wake of the housing crisis, Plaintiff alleges
that none of the Defendants "focused on furthering Exeter's
business" and did not appear regularly at Exeter's offices.
(Compl. ¶ 112.)  Arnold Frank and Linda Haltman did not attempt to
collect on the loans to the Property Corporations and did nothing
to ensure that Exeter made a profit on its business deals.  (Compl.
¶ 112.)  Around the end of 2010, Arnold Frank became ill; however,
"despite his illness and inability to truly contribute to Exeter
or its business, [he] continued to draw a salary," and Exeter
continued to pay for his "medical insurance and expenses, credit
card bills, cell phone, car, and a driver."  (Compl. ¶ 114.)
Sondra Frank, the secretary of Exeter, never came to Exeter's
offices, yet Exeter paid for her car.  (Compl. ¶¶ 115-16.)

     Exeter's President, Linda Haltman, was "clearly derelict
in [her] duties," and "undertook [ ] daily duties . . . which
conflicted with the best interests of Exeter and its creditors" in
order to "keep the stream of cash flowing to support the Frank-
Haltman Clan."  (Compl. ¶ 118.)  While President, she also served
as Chief Financial Officer of Hallmark Abstract Service
("Hallmark"),[9] also headquartered at Exeter's offices.  (Compl.
¶ 119.)  During this time, Exeter paid Linda Haltman's personal

---

[9] Hallmark was a title company run by Linda and Michael Haltman.
(Compl. ¶ 77(i).)

expenses, including the cost of a luxury vehicle. (Compl. ¶ 120.)
Since the filing of the bankruptcy petition, Linda Haltman has
been permitted to continue serving as Exeter's President so long
as she provides status reports to the Committee. (Compl. ¶ 121.)
The Committee maintains that the information provided by Linda has
been "woefully incomplete," that she has failed to provide
information of which she should be aware, and that she has provided
contradictory information in order to delay the bankruptcy
proceeding and protect herself and her family. (Compl. ¶ 122.)

    D. <u>Transfers and Conveyances</u>

Plaintiff alleges that Exeter had been inadequately
capitalized since at least January 1, 2006, rendering it insolvent
from January 1, 2006 to the date of the bankruptcy petition,
November 9, 2011 (the "Petition Date"). (Compl. ¶¶ 137-138.)
During that time, Defendants "transferred value out of Exeter in
the form of loans, properties, and other payments funding their
personal lifestyle" and "use[d] Exeter as their personal piggy
bank." (Compl. ¶ 138.)

Using several techniques, Defendants transferred money
to themselves "for their private gain and for no corporate
benefit." (Compl. ¶ 139.) For example, Exeter paid consulting
fees to Larry Frank and Bruce Frank, despite Linda Haltman's
testimony during the bankruptcy proceedings that her brothers'
roles were limited to "'help[ing] her with making decisions and

giving advice.'"[10]   (Compl. ¶ 140.)   Exeter also paid: (1) medical

expenses for various members of the Frank and Haltman families,

(2) education expenses, including payments to universities and

private schools, and (3) transportation expenses, including for

vehicles used by Arnold Frank, Sondra Frank, Linda Haltman, and

Michael Haltman.[11]  (Compl. ¶¶ 141-43.)  Plaintiff alleges that the

vehicles were for personal use, and not used to carry out Exeter's

business.   (Compl. ¶ 144.)   Further, the Complaint alleges that

the family provided no consideration for these payments, and that

Exeter continued to pay even after it stopped paying the Non-Bank

Lenders and the carrying costs for the properties it owned.

(Compl. ¶¶ 146-47.)

Additionally, the Committee alleges that Defendants

fraudulently transferred at least $10,037,583.22 from Exeter

between January 1, 2006 and the Petition Date.   (Compl. ¶ 150.)

The Complaint states that transfers were made for the benefit of

Arnold Frank, Sondra Frank, Linda Haltman, Michael Haltman, Bruce

Frank, Kathleen Frank, Larry Frank, and Samantha Haltman without

adequate consideration to Exeter.   (Compl. ¶¶ 151-59.)   According

---

[10] Plaintiff alleges that when these consulting fees were paid,
Bruce Frank lived in Colorado and Larry Frank lived in
California.   (Compl. ¶¶ 124, 128.)

[11] Referred to the "Exeter Autos," the vehicles were leased for
three-year terms.   In addition to the lease payments, Exeter
paid for insurance, gas, tolls, and repairs for the vehicles.
(Compl. ¶ 143.)

to Plaintiff, Exeter also loaned approximately $377,300.00 to trusts benefitting Defendants during the same period for no consideration. (Compl. ¶¶ 160-65.) The Committee further alleges that Arnold Frank withdrew $600,000.00 from Exeter during 2010 or 2011 as repayment for loans he allegedly made to Exeter. (Compl. ¶ 174.) Moreover, during the one year prior to the Petition Date, Exeter allegedly executed approximately $633,219.59 in avoidable transfers to Arnold Frank, Linda Haltman, Michael Haltman, Bruce Frank, Larry Frank, and the Arnold & Sondra Trust. (Compl. ¶¶ 166-72.)

Plaintiff alleges that, since 2008, Exeter has written off approximately $10,000,000.00 of the $11,396,727.00 in outstanding construction loans to the Property Corporations for little or no consideration (the "Write-Off"). (Compl. ¶¶ 176-77.) The Complaint avers that the Write-Off constitutes a breach of Arnold Frank and Linda Haltman's duties and allowed the owners of the Property Corporations (members of the Frank-Haltman family) to benefit at the expense of Exeter. (Compl. ¶¶ 178-79.)

The Complaint also details a series of property transactions in which Exeter conveyed pieces of property to the Property Corporations without memorializing the agreements in writing or requiring the Property Corporations to pay interest or principal. (Compl. ¶¶ 181-82.) As discussed, Exeter did not record its interest in any collateral nor prohibit the Property

Corporations from further encumbering the properties. (Compl. ¶ 182.) Plaintiff claims that "Exeter gave these sweetheart deals to the Property Corporations' Owners because both Exeter and the Property Corporations were dominated by the same Insiders for the Insiders' personal gain." (Compl. ¶ 183.) Plaintiff alleges that transactions involving 207 Parrish Pond Court West, 2 Short Path, 3 Lewis Lane, 1670 Begonia Court, 171 Carica Road, and 11 Eden Roc Drive illustrate Defendants' mismanagement, fraud, and the extent to which Defendants benefitted at the expense of Exeter. (See Compl. ¶¶ 184-294.) Members of the Frank-Haltman family who owned Property Corporations also allegedly received approximately $12,205,180.26 in transfers from Exeter to the Property Corporations. (Compl. ¶ 295.)

   E. Fraudulent Financial Reporting

      Plaintiff alleges that Linda Haltman has "made a number of materially misleading statements in the materials provided to Exeter's Non-Bank Lenders," which breached her duties of loyalty and care to the Company. (Compl. ¶ 303.) It points to a November 4, 2010 letter (the "November 2010 Letter") in which Linda Haltman represented that Exeter's annual operating expenses of $420,000.00 "include[d] interest on bank debt, employee compensation, carrying costs on mortgage, legal, insurance and office expenses," but did not disclose the personal expenses paid by Exeter. (Compl. ¶ 304-05 (alteration in original).)

Additionally, in an audit report, Exeter disclosed that construction loans to twenty-four Property Corporations were secured by first mortgages, when, in fact, the loans were entirely unsecured. (Compl. ¶ 306.) Moreover, while Exeter "was reporting receivables for the Property Corporation[s]," it was "not entirely accounting for the same entities' liabilities." (Compl. ¶ 308.) The Committee maintains that these misrepresentations about "Exeter's true financial health" caused significant losses to Exeter and the Non-Bank Lenders, who did not take action earlier to salvage Exeter's value. (Compl. ¶ 309.)

F. Exeter's Alter Egos

The Committee avers that the Property Corporations and their owners were alter egos of Exeter. (Compl. ¶ 311.) Plaintiff alleges that they failed to observe corporate formalities, that Exeter and the Property Corporations shared owners, principals, directors, personnel, and a common office space, and that in its financial reporting, Exeter did not distinguish between property owned by Exeter and property owned by the Property Corporations. (Compl. ¶¶ 312-20.) This conduct, including "depressing Exeter's assets and collateral in order to fund the Insiders' lifestyle," allegedly caused "great harm to the Property Corporations, Exeter, and ultimately Exeter's creditors." (Compl. ¶¶ 314, 319.)

Plaintiff commenced this adversary proceeding in the Bankruptcy Court in the Eastern District of New York on October 23, 2012. (Bankr. Docket Sheet, Docket Entry 1-3.)  The Complaint asserts thirteen claims: (1) fraud against all Defendants; (2) actual fraudulent transfer under Section 548(a)(1)(A) of the Bankruptcy Code against all Defendants; (3) actual fraudulent conveyance under Sections 276 and 276-a of the New York Debtor and Creditor Law ("New York DCL") against all Defendants; (4) constructive fraudulent transfer under Section 548(a)(1)(B) of the Bankruptcy Code against all Defendants; (5) constructive fraudulent conveyance under Sections 273, 274, and 275 of the New York DCL against all Defendants; (6) to set aside avoidable preferences under Section 547 of the Bankruptcy Code against the Preferential Transfer Defendants;[12] (7) breach of fiduciary duty of care against Linda Haltman and Arnold Frank; (8) breach of fiduciary duty of loyalty against Linda Haltman and Arnold Frank; (9) aiding and abetting a breach of fiduciary duty against all Defendants; (10) for a violation of Section 720 of the New York Business Corporations Law against Linda Haltman and Arnold Frank; (11) for a declaratory judgment that "Exeter and the Alter Ego

---

[12] The Preferential Transfer Defendants appear to be Arnold Frank, Linda Haltman, Michael Haltman, Bruce Frank, Larry Frank, and the Arnold & Sondra Trust.  (Compl. ¶¶ 167-72.)

15

Insiders are or were the alter egos of the Property Corporations and Exeter, respectively, and are therefore liable for all of their debts"; (12) turnover and accounting under Section 542 of the Bankruptcy Code against all Defendants; and (13) unjust enrichment against the Fraudulent Transfer Recipient Defendants.[13]  (Compl. ¶¶ 323-401.)

On January 11, 2013, the Moving Defendants filed a motion to dismiss.  (See Bankr. Docket Sheet; Mot. to Dismiss, Docket Entry 9.)  Before the motion was resolved, Plaintiff filed a motion to withdraw the reference to the bankruptcy court.  (Mot. to Withdraw Reference, Docket Entry 1.)  As discussed, on September 18, 2013, this Court granted the motion.  (See Order Withdrawing Ref.)  In that Order, the Court directed the parties to file a joint letter attaching as exhibits the relevant filings from the Bankruptcy Court docket and directed the Clerk of the Court to docket the filings.  (Order Withdrawing Ref. at 3-4.) They were never separately docketed.  Further, the parties did not indicate in their correspondence to the Court that the motion was pending and inexplicably failed to bring the motion to the Court's attention until 2016.  After becoming aware of the motion, this Court directed the Clerk of the Court to docket the motion and underlying briefing for the Court's consideration.  (Mar. 2017

---

[13] Plaintiff identifies the Fraudulent Transfer Recipient Defendants in more detail in paragraph 302 of the Complaint.

16

Order, Docket Entry 239, at 8.) Accordingly, the Clerk of the Court docketed the Notice of Motion, the Moving Defendants' brief, Plaintiff's opposition brief, and the Affidavit of Brian Serotta in opposition to the motion ("Serotta Affidavit"), each of which have been reviewed by the Court. (See Mot. to Dismiss; Defs.' Br.; Pl.'s Opp., Docket Entry 243; Serotta Aff., Docket Entry 242.)

DISCUSSION

## I. Legal Standard

Under Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) provides that dismissal is appropriate if the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although the Court must accept all allegations in the Complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950.

Rule 9(b) requires that a party alleging fraud or mistake "state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This requirement ensures that defendants are given "fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp., No. 04-CV-4971, 2006 WL 2802092, *4 (E.D.N.Y. Sept. 28, 2006). To satisfy the particularity requirement, a complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Olympia, 2006 WL 2802092, at *4 (citing Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)). Further, "the pleader must allege facts that give rise to a strong inference of fraudulent intent" by pleading facts that show either that (1) "defendants had both motive and opportunity to commit fraud" or (2) "strong

circumstantial evidence of conscious misbehavior or recklessness."
Olympia, 2006 WL 2802092, at *4.

In deciding a motion to dismiss, the Court is generally confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, the Court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citation omitted); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect") (internal quotation marks and citation omitted).

## II.  Conversion to Summary Judgment

At the outset, the Court declines to convert the motion to dismiss to one for summary judgment.  In their brief, the Moving Defendants cite Exhibit B--a spreadsheet detailing the balances of the Grandchildrens' trust accounts--which, because it was not attached to or incorporated in the Complaint, may not be considered on a motion to dismiss. (See, e.g., Defs.' Br. at 9.)  In response, Plaintiff submitted the Serotta Affidavit to counter the facts in Exhibit B in the event that the Court decided to construe the

Moving Defendants' motion as one for summary judgment. (Pl.'s Opp. at 26-29.) Because the Court finds that conversion is inappropriate, it will not consider either Exhibit B or the Serotta Affidavit.

III.  The Proper Parties

The Moving Defendants argue that the Moving Trusts should be dismissed from this action because "the trustee of a trust [is] the real party in interest" and the trustees are also named as Defendants. (Defs.' Br. at 6.) Plaintiff opposes the dismissal of the Moving Trusts, arguing that the Moving Defendants have offered no controlling authority supporting dismissal and that the Committee named the Moving Trusts as Defendants to ensure that all necessary parties were joined. (Pls.' Opp. at 25.)

The authority cited by the Moving Defendants is inapposite. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 465-66, 100 S. Ct. 1779, 1784, 64 L. Ed. 2d 425 (1980) (holding that in light of the power and control given to the trustees under the declaration of trust, the trustees' citizenship was operative for purposes of diversity jurisdiction); Henning v. Rando Mach. Corp., 207 A.D.2d 106, 110, 620 N.Y.S.2d 867 (4th Dep't 1994) (affirming dismissal of claims against beneficiaries of trust); Gaigal v. Laub, 236 A.D.2d 362, 363, 653 N.Y.S.2d 637 (2d Dep't 1997) (holding that trust became irrevocable upon husband's death); In re Markos Gurnee P'ship, 182 B.R. 211, 228 (Bankr. N.D. Ill. 1995)

(holding that trustee was not personally liable for unpaid taxes).
Thus, the Court declines to dismiss the Moving Trusts on this
basis.

Additionally, the Moving Defendants argue that the
claims against the Minor Grandchildren should be dismissed because
their interests "are adequately represented by their parents, who
have been named as Defendants in this action in their capacities
as the guardians of the Minor Grandchildren." (Defs.' Br. at 6
(internal quotation marks omitted).) The Committee opposes the
dismissal of the Minor Grandchildren. (Pl.'s Opp. at 6-7.)

Aside from a general allegation that the Minor
Grandchildren are insiders of the Debtor, the allegations related
to the Minor Grandchildren, C.H., B.F., E.F., J.F., and K.F.,
concern the trusts of which they are beneficiaries. (See Compl.
¶¶ 60-62, 64-65.) However, the trustees, rather than the
beneficiaries, are the proper defendants. See Sullivan v. Kodsi,
373 F. Supp. 2d 302, 310 (S.D.N.Y. 2005) (rejecting plaintiff's
argument that beneficiaries were indispensable parties because
"the beneficiaries' interest [was] sufficiently protected by the
present trustee . . . who has been named as a defendant . . . and
[ ] who is not alleged to have any interest which conflicts with
those of the Trust's beneficiaries"); United States v. Sullivan,
No. 10-CR-821-1, 2016 WL 1626622, at *5 (N.D. Ill. Apr. 21, 2016)
("Courts have repeatedly held that in suits by third parties

brought against the trust property, where there is no conflict of interest between the trustee and the beneficiary, a suit against the trustee is proper and the beneficiary is not a necessary party.") (collecting cases). Generally, beneficiaries are only indispensable parties when there is a dispute between particular beneficiaries and the trustee, and the remaining beneficiaries are not parties. See Matthies v. Seymour Mfg. Co., 270 F.2d 365, 374 (2d Cir. 1959) ("The beneficiaries are indispensable to an action to surcharge the trustee and restore corpus."); Byrd v. Corestates Fin. Corp., No. CIV. A. 94-1359, 1994 WL 622103, at *2-3 (E.D. Pa. Nov. 9, 1994) (holding that non-diverse beneficiary was an indispensable party when two of the four beneficiaries brought suit against the trustees).

Here, the trustees' and beneficiaries' interests are aligned, and there is no conflict of interest between them. See Sullivan, 2016 WL 1626622, at *6 ("[A]bsent a conflict of interest between Ms. Sullivan as trustee and co-beneficiary and Joseph as co-beneficiary, Joseph is not a necessary party to this action under Rule 19(a)."); Kodsi, 373 F. Supp. 2d at 310 (dismissing claims against beneficiaries of trust when there were no allegations that beneficiaries participated in the fraudulent transfers). Thus, the claims against C.H., B.F., E.F., J.F., and K.F. and the claims against Linda and Michael Haltman as guardians of C.H., and Bruce and Kathleen Frank as guardians of B.F., E.F.,

J.F., and K.F. are DISMISSED.[14]  Additionally, the Complaint does not include any specific allegations regarding Ryann Haltman other than in his capacity as a beneficiary.  Therefore, for the same reasons, the claims against Ryann Haltman are also DISMISSED.

IV.  Fraud and Fraudulent Conveyance Claims

        The Moving Defendants argue that the fraud and fraudulent conveyance claims must be dismissed against the Moving Trusts because the Complaint fails to identify the Moving Trusts as the recipients of any fraudulent loans.  (Defs.' Br. at 7.)  As to the payment of certain expenses by Exeter, the Moving Defendants maintain that the Complaint fails to allege specific facts to support fraud and actual fraudulent conveyance claims.  (Defs.' Br. at 8.)  They contend that the allegations related to medical and education expenses are vague and fail to connect the expenses to a particular Defendant.  (Defs.' Br. at 8-9.)  The Moving Defendants also request that the Court dismiss the constructive fraudulent conveyance claim.  (Defs.' Br. at 9.)  According to the Moving Defendants, for example, the education expenses were paid using proceeds from "investments made by the Grandchildren in the

---

[14] It appears that Plaintiff may have anticipated this outcome. Plaintiff does not cite any authority indicating that the Minor Grandchildren, as beneficiaries of the trusts, should remain parties to this action.  (See Pl.'s Opp. at 25.)  Rather, the Committee states that the Minor Grandchildren were joined "in an abundance of caution . . . to avoid a FRCP 12(b)(7) motion to dismiss for an alleged failure to join an indispensable party." (Pl.'s Opp. at 25.)

Debtor with their own money long before January 1, 2006," and "the payments were charged against Samantha Haltman's and Ryann Haltman's respective Investment Accounts." (Defs.' Br. at 9.) They also argue that the Complaint fails to specify the amount of the payments to universities and medical providers, and that, according to Linda Haltman, Exeter had a policy of reimbursing medical expenses. (Defs.' Br. at 9-11.)

Plaintiff responds that the Complaint sufficiently alleges a claim for actual fraudulent conveyance based on Linda Haltman's misleading disclosures in the November 2010 Letter and the other fraud allegations in the Complaint. (Pl.'s Opp. at 15.) The Committee contends that these allegations, as well as the familial relationships between the Defendants and the timing of the transfers, "give rise to a strong inference of Mrs. Haltman's fraudulent intent." (Pl.'s Opp. at 15-16.) Additionally, Plaintiff contends that the allegations are sufficient to state a claim for constructive fraudulent conveyance, particularly in light of the fact that such claims are not subject to the heightened pleading standard of Rule 9(b). (Pl.'s Opp. at 16.) The Committee points out that the Complaint alleges that while Exeter was insolvent, the Moving Trusts, as part of the group of insider trusts, received transfers without any indication that adequate consideration was provided. (Pl.'s Opp. at 16-17.) Moreover, Plaintiff contends that it has adequately pled a claim

under Section 550 of the Bankruptcy Code for "strict liability on the Moving Defendants as either both initial transferees of an alleged fraudulent transfer and entities for whose benefit such transfer was made." (Pl.'s Opp. at 17 (internal quotation marks omitted).)

Because the Moving Defendants mention the fraud claim only in passing and focus exclusively on the fraudulent conveyance claims in their brief, the Court will limit its discussion to the conveyance claims. (See Defs.' Br. at 7-11.)

The Committee has asserted claims for actual fraudulent conveyance under Section 548(a)(1)(A) of the Bankruptcy Code and Sections 276 and 276-a of the New York DCL. (Compl. ¶¶ 330-41.) These claims must be pled with specificity pursuant to Rule 9(b). In re Sharp Int'l Corp., 403 F.3d 43, 56 (2d Cir. 2005). Under Section 548(a)(1)(A) of the Bankruptcy Code, a transfer made within two years of the bankruptcy petition may be avoided "if the debtor voluntarily or involuntarily . . . made such transfer . . . with actual intent to hinder, delay, or defraud." 11 U.S.C. § 548(a)(1)(A); see also In re Geltzer, 502 B.R. 760, 766 (Bankr. S.D.N.Y. 2013). Similarly, to state a claim for intentional fraudulent conveyance under New York DCL Section 276, "'a creditor must show intent to defraud on the part of the transferor.'" In re Sharp, 403 F.3d at 56 (quoting HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1059, n.5 (2d Cir. 1995)). General allegations that "a debtor

made an aggregate amount or series of cash or other transfers over a period of time, without further particularization, are insufficient to state an intentional fraudulent transfer claim." In re M. Fabrikant & Sons, Inc., 394 B.R. 721, 733 (Bankr. S.D.N.Y. 2008). The plaintiff must "'specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, [and] the consideration paid.'" Id. (quoting United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002)) (alteration in original). If the plaintiff can prove intent to defraud, the conveyance will be nullified regardless of whether there was adequate consideration. In re Sharp, 403 F.3d at 56.

"Actual intent need not be proven by direct evidence, but may inferred from the circumstances surrounding the allegedly fraudulent transfer." Olympia, 2006 WL 2802092, at *9. Specifically, "the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." In re Sharp, 403 F.3d at 56 (quoting Wall St. Assocs. v. Brodsky, 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 247 (1st Dep't 1999)). Badges of fraud include "lack or inadequacy of consideration, family, friendship, or close associate relationship between transferor and transferee, the debtor's retention of possession, benefit, or use of the property in question, the

existence of a pattern or series of transactions or course of conduct after the incurring of debt, [ ] the transferor's knowledge of the creditor's claim and the inability to pay it," Olympia, 2006 WL 2802092, at *9, "the general chronology of the event and transactions under inquiry," "a questionable transfer not in the usual course of business," and "the secrecy, haste, or unusualness of the transaction," In re Saba Enterprises, Inc., 421 B.R. 626, 643 (Bankr. S.D.N.Y. 2009). While it is generally the plaintiff's burden to prove that the transfer was fraudulent, when assets are transferred between family members and "where facts concerning the nature of the consideration are within the exclusive control of the transferee, the burden shifts to the transferee to prove the adequacy of the consideration." Olympia, 2006 WL 2802092, at *8 (citing United States v. McCombs, 30 F.3d 310, 324 (2d Cir. 1994)). If the consideration was inadequate, the transferee must show "continued solvency" after the transfer. Id.

The Committee has also asserted claims for constructive fraudulent conveyance under Section 548(a)(1)(B) of the Bankruptcy Code and Sections 273, 274, and 275 of the New York DCL. (Compl. ¶¶ 342-57.) Under Section 548(a)(1)(B), a transfer made within two years of the bankruptcy petition may be avoided

"if the debtor voluntarily or involuntarily . . .

> (i) received less than a reasonably equivalent
> value in exchange for such transfer or
> obligation" and
> (ii)(I) "was insolvent on the date that such
> transfer was made or such obligation was
> incurred, or became insolvent as a result of
> such transfer or obligation";
> (II) "was engaged in business or transaction,
> or was about to engage in business or a
> transaction, for which any property remaining
> with the debtor was an unreasonably small
> capital";
> (III) "intended to incur, or believed that the
> debtor would incur, debts that would be beyond
> the debtor's ability to pay as such debts
> matured"; or
> (IV) "made such transfer to or for the benefit
> of an insider, or incurred such obligation to
> or for the benefit of an insider, under an
> employment contract and not in the ordinary
> course of business."

11 U.S.C. § 548(a)(1)(B); see also Geltzer, 502 B.R. at 766. The

elements of a constructive fraudulent conveyance claim under New

York DCL are similar. Geltzer, 502 B.R. at 771 ("[T]he elements

of a constructive fraudulent conveyance under N.Y. DCL resemble

those in § 548 of the Bankruptcy Code."). Unlike actual fraudulent

conveyance claims, a plaintiff is not required to plead

constructive fraudulent conveyance claims with specificity.

Olympia, 2006 WL 2802092, at *8. Further, because constructive

fraud claims do not require proof of fraudulent intent, a plaintiff

pleading constructive fraud need not allege an intent to deceive.

See Kodsi, 373 F. Supp. 2d at 307.

     The Complaint details several categories of fraudulent

conveyances. The Committee alleges that the Debtor paid consulting

fees to Bruce and Larry Frank for unspecified services, medical and education expenses for various family members, and transportation expenses, including vehicles, insurance, gas, tolls, and repairs, for Arnold Frank, Sondra Frank, Linda Haltman, and Michael Haltman. (Compl. ¶¶ 140-43.) It avers that approximately $10,037,583.22 was transferred to Arnold Frank, Sondra Frank, Linda Haltman, Michael Haltman, Bruce Frank, Kathleen Frank, Larry Frank, and Samantha Haltman, and approximately $377,300.00 to the Arnold & Sondra Frank Trust, the Hank Frank Trust, and the Ruth Frank Trust without adequate consideration. (Compl. ¶¶ 150-63.) Additionally, the Complaint alleges that since 2008, Exeter wrote off approximately "$10,000,000.00 of $11,396,727.00 in construction loans made by the Debtor to its related Property Corporations, owned by various combinations of Arnold Frank, Linda Haltman, Bruce Frank and/or Larry Frank" and transferred property to the Property Corporations for little or no consideration. (Compl. ¶¶ 176, 181-294.) The Property Corporations also allegedly received approximately $12,205,180.26 in fraudulent disbursements. (Compl. ¶¶ 295-302.)

While the Court finds that the fraudulent conveyance allegations generally satisfy the requirements of Rule 8 and Rule 9(b), aside from general allegations referring to transfers to "trusts," none of the allegations address conveyances to the Moving Trusts. (See, e.g., Compl. ¶ 3 ("The Debtor would . . . transfer

funds and/or properties to the Defendants, trusts held for their benefit, or various related entities owned by them.").) In regard to the other Defendants, the Committee details the various schemes, (including the dates, amounts, and recipients of the transfers), and several badges of fraud are present which support a strong inference of fraudulent intent. However, the Complaint does not include any specific allegations regarding the Moving Trusts. The Court recognizes that for the constructive fraud claims, the Committee is not required to plead the allegations with specificity under Rule 9(b). However, under either Rule 8 or Rule 9(b), the allegations against the Moving Trusts are insufficient. See Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp., No. 12-CV-4849, 2013 WL 6795963, at *7 (E.D.N.Y. Dec. 23, 2013) ("[T]he plaintiff must still at the very least allege a minimum of facts that demonstrate the basis for the claim that a fraudulent transfer has occurred.").

Therefore, the actual and constructive fraudulent conveyance claims against the C.H. Trust, the Ryann Haltman Trust, the Samantha Haltman Trust, the B.F. Trust, the E.F. Trust, the J.F. Trust, the K.F. Trust, the Barbara Cohen – Linda Haltman Trust, the Murray Cohen – Linda Haltman Trust, the Barbara Cohen – Bruce Frank Trust, the Murray Cohen – Bruce Frank Trust, the Barbara Cohen – Larry Frank Trust, and the Murray Cohen – Larry Frank Trust are DISMISSED. Additionally, the actual and

constructive fraudulent conveyance claims against Linda Haltman and Michael Haltman as trustees for the C.H. Trust, the Ryann Haltman Trust, and the Samantha Haltman Trust; Bruce Frank and Kathleen Frank as trustees for the B.F. Trust, the E.F. Trust, the J.F. Trust, and the K.F. Trust; and Sondra Frank as trustee for the Barbara Cohen – Linda Haltman Trust, the Murray Cohen – Linda Haltman Trust, the Barbara Cohen – Bruce Frank Trust, the Murray Cohen – Bruce Frank Trust, the Barbara Cohen – Larry Frank Trust, and the Murray Cohen – Larry Frank Trust are also DISMISSED.

## V. Aiding and Abetting a Breach of Fiduciary Duty

The Moving Defendants argue that the Court should dismiss the aiding and abetting claim against the remaining Non-Minor Grandchild, Samantha Haltman.[15] (Defs.' Br. at 12-14.) They contend that regardless of whether Linda Haltman and Arnold Frank's conduct qualifies as a breach of fiduciary duty, the Committee has failed to sufficiently allege that Samantha knowingly participated in the breach. (Defs.' Br. at 13.)

Plaintiff responds that the Court should infer that Samantha, who grew "accustomed to the expenses that Exeter paid for [her] and lived with [her] parents while the Fiduciary Breaches occurred[,] . . . knowingly encouraged [her] parents to continue

---

[15] The Court need not consider a similar argument regarding the Minor Grandchildren or Ryann Haltman, who after the entry of this Order, will no longer be Defendants in this action.

to operate the business so [her] lifestyle would not be diminished even if doing so would harm Exeter's creditors." (Pl.'s Opp. at 22.) The Committee also maintains that Samantha was incentivized to encourage the breaches because funds from Exeter were used to pay her college expenses. (Pl.'s Opp. at 22, n.17.)

To state a claim under New York law for aiding and abetting a breach of fiduciary duty, a plaintiff must demonstrate: (1) "a breach by a fiduciary of obligations to another of which the aider and abettor had actual knowledge," (2) "the defendant knowingly induced or participated in the breach," and (3) the "plaintiff suffered damage as a result of the breach." In re Sharp, 403 F.3d at 49-50 (internal quotation marks and citation omitted). The second element, inducement or participation, is satisfied when the defendant "provides 'substantial assistance' to the primary violator," that is, "where the alleged aider and abettor 'affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.'" Id. at 50 (quoting Kaufman v. Cohen, 307 A.D.2d 113, 126, 760 N.Y.S.2d 157, 170 (1st Dep't 2003)). An aiding and abetting claim must be pled with the specificity required by Rule 9(b). Olympia, 2006 WL 2802092, at *4.

The aiding and abetting claims against Samantha must be dismissed. As an initial matter, the Committee's allegation that Samantha "knowingly encouraged" the fiduciary breaches is not

contained in the Complaint.  The Complaint alleges generally that

"Defendants were each aware of the fiduciary duties held by Linda

Haltman and Arnold Frank to the Debtor and/or its creditors and

. . . are liable to the Plaintiff for their knowing participation

in the breaches."  (Compl. ¶ 381.)  The Complaint alleges one

fraudulent transfer to Samantha in the amount of $635.00.  (Compl.

¶ 157.)  There are no allegations indicating that Samantha

participated in or helped to conceal the alleged schemes

perpetrated by her family members.  While the Complaint refers to

education expenses paid by Exeter to schools that the Grandchildren

attended, that allegation is not sufficient to support an aiding

and abetting claim against Samantha, particularly in light of the

heightened pleading burden for such claims.  In sum, the Complaint

fails to plead sufficient facts from which the Court can infer

that Samantha knowingly encouraged the alleged breaches of

fiduciary duty.  Moreover, the Complaint does not adequately allege

that Samantha provided "substantial assistance" to her mother or

grandfather as required by New York law.  See In re Sharp, 403

F.3d at 50 (discussing that New York law requires that the

defendant "affirmatively assists, helps conceal or fails to act

when required to do so" to establish substantial assistance).

Therefore, the aiding and abetting claim against Samantha Haltman

is DISMISSED.

## VI. Turnover and Accounting

The Moving Defendants argue that the turnover and accounting claim should be dismissed against the Moving Trusts and Samantha Haltman, because until assets are recovered, the Committee cannot assert a claim for turnover. (Defs.' Br. at 14.) Plaintiff responds that pairing the fraudulent transfer claims and the turnover claims promotes judicial economy. (Pl.'s Opp. at 24.)

The Committee's claim for turnover is based on Section 542 of the Bankruptcy Code. (Compl. ¶¶ 393-97.) Section 542 requires that, after the commencement of a bankruptcy proceeding, entities or individuals in possession of the debtor's property turn it over to the trustee. 11 U.S.C. § 542.

Because the Committee has not sufficiently pled fraudulent conveyance claims against the Moving Trusts and the Moving Trustees, the turnover and accounting claims against them are DISMISSED. However, the Court declines to dismiss the turnover and accounting claim against Samantha Haltman in light of the fact that Plaintiff has asserted a viable fraudulent conveyance claim against her. (See Compl. ¶ 157.)

## VII. Unjust Enrichment

The Moving Defendants contend that "consider[ing] the nominal sums involved, the fact that the Debtor's policy of reimbursing family Medical Expenses was in effect long before

February 1, 2006 and the additional fact that Education Expenses were charged against Investment Accounts funded by the Grandchildren," the Court should dismiss the unjust enrichment claim against the Moving Trusts and Samantha Haltman. (Defs.' Br. at 15.) Plaintiff responds that these facts are extraneous and that the allegations are adequate to state a claim for unjust enrichment.

Under New York law, unjust enrichment is quasi-contractual claim "imposed by law[ ] in the absence of a valid and enforceable contract[ ] because of the conduct of the parties or some special relationship between them, to prevent unjust enrichment." Olympia, 2006 WL 2802092, at *6. It occurs when "(1) the defendant benefitted; (2) at the plaintiff's expense; and (3) [ ] equity and good conscience require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks and citation omitted).

The Court declines to dismiss the unjust enrichment claim for any of the reasons stated by the Moving Defendants. However, dismissal of this claim is warranted against the Moving Trusts and the Moving Trustees because as set forth above, the Complaint fails to state a claim for fraudulent conveyance claims against them. In other words, the Complaint fails to allege that they benefitted at the expenses of Exeter's creditors. Therefore, the unjust enrichment claims against the Moving Trusts and the

Moving Trustees are DISMISSED. However, the unjust enrichment claim against Samantha Haltman will proceed.

<u>LEAVE TO AMEND</u>

Plaintiff has requested leave to amend the Complaint. The Second Circuit has held that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. Cty. of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999), <u>overruled on other grounds</u>, <u>Gonzaga v. Doe</u>, 536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002). <u>See also</u> FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." <u>Perri v. Bloomberg</u>, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012). Because the Court believes that the Committee should be given an opportunity to amend the allegations to remedy the deficiencies, leave to amend is GRANTED. Plaintiff may re-plead the fraudulent conveyance claims, the turnover and accounting claim, and the unjust enrichment claim against the Moving Trusts and the Moving Trustees, and the aiding and abetting claim against Samantha Haltman, if it chooses. Leave to amend is DENIED as to the claims against the Minor Grandchildren, the Guardians of the Minor Grandchildren, and Ryann

Haltman.  An Amended Complaint must be filed within sixty (60) days of the date of this Memorandum and Order.

CONCLUSION

For the foregoing reasons, the motion to dismiss (Docket Entry 240) is GRANTED IN PART AND DENIED IN PART.  The fraudulent conveyance claims, the turnover and accounting claim, and the unjust enrichment claim are DISMISSED WITHOUT PREJUDICE against the C.H. Trust, the Ryann Haltman Trust, the Samantha Haltman Trust, the B.F. Trust, the E.F. Trust, the J.F. Trust, the K.F. Trust, the Barbara Cohen – Linda Haltman Trust, the Murray Cohen – Linda Haltman Trust, the Barbara Cohen – Bruce Frank Trust, the Murray Cohen – Bruce Frank Trust, the Barbara Cohen – Larry Frank Trust, and the Murray Cohen – Larry Frank Trust, Linda Haltman and Michael Haltman as trustees for the C.H. Trust, the Ryann Haltman Trust, and the Samantha Haltman Trust, Bruce Frank and Kathleen Frank as trustees for the B.F. Trust, E.F. Trust, the J.F. Trust, and the K.F. Trust, and Sondra Frank as trustee for the Barbara Cohen – Linda Haltman Trust, the Murray Cohen – Linda Haltman Trust, the Barbara Cohen – Bruce Frank Trust, the Murray Cohen – Bruce Frank Trust, the Barbara Cohen – Larry Frank Trust, and the Murray Cohen – Larry Frank Trust.  The aiding and abetting claim is DISMISSED WITHOUT PREJUDICE against Samantha Haltman. The Court GRANTS the Committee leave to amend the Complaint to re-plead the

claims dismissed without prejudice within sixty (60) days of the date of this Memorandum and Order.

The Complaint is DISMISSED WITH PREJUDICE against C.H., B.F., E.F., J.F., K.F., Ryann Haltman, Linda and Michael Haltman as guardians of C.H., and Bruce and Kathleen Frank as guardians of B.F., E.F., J.F., and K.F.  The Clerk of the Court is directed to TERMINATE C.H., B.F., E.F., J.F., K.F., Ryann Haltman, Linda Haltman as guardian of C.H., Michael Haltman as guardian of C.H., Bruce Frank as guardian of B.F., Bruce Frank as guardian of E.F., Bruce Frank as guardian of J.F., Bruce Frank as guardian of K.F., Kathleen Frank as guardian of B.F., Kathleen Frank as guardian of E.F., Kathleen Frank as guardian of J.F., and Kathleen Frank as guardian of K.F. as defendants in this action.

Plaintiff is directed to serve a copy of this Memorandum and Order on the pro se Defendants via first class mail or e-mail and file proof of service on ECF promptly.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March   30  , 2018
          Central Islip, New York