Norma E. Ortiz
Ortiz & Ortiz, L.L.P.
32-72 Steinway Street, Ste. 402
Astoria, New York  11103
Tel. (718) 522-1117
Fax (718) 596-1302
email@ortizandortiz.com

-------------------------------------------------x
The Official Committee of Unsecured Creditors
of Exeter Holding, Ltd.                                                          13–cv–05475–JS–AKT

  against

Linda Haltman, et al.,

                              Defendants.
-------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LARRY FRANK'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF GARY HERBST AS THE PLAN ADMINISTRATOR FOR EXETER HOLDING LTD.**

Larry Frank ("Larry"), one of the Defendants in the instant action, hereby submits this Memorandum of Law in support of his opposition to the Motion for Summary Judgment (the "Motion") filed by Gary Herbst (the "Plaintiff") as the plan administrator for the confirmed plan of Exeter Holding Ltd. ("Exeter").  The Memorandum is supported by the Declaration of Larry Frank Dated July 12, 2009.

**PRELIMINARY STATEMENT**

Larry had very little participation in Exeter's operations or the operations of its subsidiary corporations.  He worked as a consultant for Exeter, and did no participate in any of its legal or financial decision-making.  The consideration Larry earned in the two years prior to Exeter's bankruptcy filing – the only period Exeter's insolvency was not in dispute – was for consulting

1

fees and interest payments. Larry did not receive any payments or consideration from any other entity, and did not receive any payment on the debt owed to him by Exeter. Larry was not consulted by Linda Haltman in connection with her operation of Exeter, and did not assist her in her breaching duties to Exeter's creditors at anytime. The Plaintiff has not provided the Court with sufficient evidence of any kind that demonstrates there are no genuine issues of material fact in connection with the Plaintiff's claims against Larry for fraudulent transfers, preferential payments on antecedent debt, and for aiding and abetting Linda Haltman in her alleged breach of fiduciary duties. The Motion should be denied.

## Facts

Larry is one of Arnold Frank's three children. Arnold Frank owned 50% of Exeter and controlled the company. There is no real dispute that Larry has always played a limited role in Exeter and was not a shareholder or officer of the company. Larry has lived in California since the 1980's and served as a consultant to Exeter. Complaint Paras. 127 and 128; Declaration of Larry Frank Para. 1, 2. ("LFD"). Larry is a Trustee of the Arnold and Sondra Frank Irrevocable Trust (the "ASF Trust") and a beneficiary of the trust.

There is no dispute that Exeter began developing real estate and created separate corporate entities (the "Property Corporations") for its projects. There is no dispute that Exeter exercised complete control over the Property Corporations. Complaint 311. ("The distinction between Exeter and the Property Corporations was in name only.") There is no dispute that Exeter is a closely-held family-run business that was run by Arnold Frank until his age and declining health caused him to retreat from management. His daughter Linda Haltman served as Exeter's president since 1990, and worked alongside Arnold Frank during the period of time

pertinent to this action: from 2006 through the date Exeter filed its bankruptcy petition on November 9, 2011 (the "Petition Date").

**A. Larry's Role in Exeter**

Larry holds a mechanical engineering degree from Duke University and a Masters Degree from Stanford University. He held various positions for different companies that included engineering, mechanical, and marketing positions before serving as a consultant to Exeter. LFD Para. 1. Larry worked directly with his father throughout the years he consulted for Exeter. He assisted his father with his computing needs, and consulted on issues related to engineering and security for homes that were built by his father and the corporations he established under Exeter. Larry worked between 10 to 15 hours a week providing these services, and received $5,000 a month as a consulting fee during the during the years in question, from approximately 2006 through 2011 (the "Disputed Period"). Larry did not have any other regular source of consulting or employment income during this period of time. LFD Para. 2.

**B. Larry's Investments in Exeter and His Personal Receipt of Funds**

According to Larry's books and records, he invested $566,000 of his personal funds in Exeter during the Disputed Period. See Exhibit A to LFD. The only funds he received from Exeter during the Disputed Period consisted of the following: (1) his monthly consulting fees; (2) interest paid on his investment account in Exeter; and (3) interest paid to him from family trust funds that had been invested in Exeter. The Plaintiff has not submitted any evidence to the Court that acknowledges Larry's investment in Exeter or disputes that Larry received consulting fees from Exeter.

During the Disputed Period, Exeter did not pay any of Larry's personal expenses. LFD

3

Para. 11. The Complaint contains allegations that cell phone, medical, automobile, and tuition expenses were paid by Exeter on behalf of other family members, but no such assertion is made against Larry specifically and no evidence of such payments is submitted by the Plaintiff. Larry received interest on the funds he invested in Exeter, but he did not receive any repayment of his investment funds. Larry holds a claim against Exeter and is a creditor of Exeter. He has filed a proof of claim in Exeter's bankruptcy case that remains pending.

**C. The Property Corporations**

Larry had no managerial or operational control of Exeter and did not serve as an officer or director of Exeter. He also had no role in the managerial or operational decisions made in connection with any Property Corporation. LFD Para. 3, 7. His father decided what role he should play in the Property Corporations, if any. If a project was profitable, and Arnold Frank decided that Larry would receive a distribution from a project he had an interest in, the profit was simply credited to Larry's investment account in Exeter. Larry did not receive a direct payment from any of the Property Corporations during the Disputed Period, and no evidence of such payments has been submitted by the Plaintiff. LFD Para. 7.

The Plaintiff asserts Larry had either all or one third of the shares of fourteen Property Corporations. Larry disputes having an interest in all but four of these entities, and the Plaintiff has not submitted any evidence demonstrating Larry was a shareholder in all of these entities. Since Arnold Frank and Exeter treated the Property Corporations as property of Exeter, Larry was a nominal interest holder in a small number of the Property Corporations. LFD Para. 4. In fact, the Plaintiff submitted as evidence a series of emails between Linda and Larry in which Larry enlists Linda's assistance in responding to the Plaintiff's discovery requests in connection

with the Property Corporations. See Exhibit 21 to the Motion, Page 25. In an email dated February 11, 2013, Larry states

> Linda,
>
> I was thinking, if there is no documentation, and many properties I did not sign, there must be somewhere that lists me as a shareholder of all of these properties, for me to be mentioned in the lawsuit. Do you have any documentation like this, or did the information come from the public records.
>
> Thanks. Larry

As set forth in Larry's Declaration, he disputes the Plaintiff's allegations of ownership as follows:

1. 124 New York Avenue: Larry had no knowledge of this entity until the action was commenced. He does not possess any shares of this entity or any documents in connection with this entity. He never received any funds from this entity or from Exeter in connection with this entity. No evidence of Larry's interest in this entity was submitted by the Plaintiff. LDF Page 8.

2. 22 Bridge Lane: Larry does not possess any shares of this entity and no documents in connection with this entity. He does not believe he ever had an interest in this entity, ever participated in its formation or decision-making, and received any funds from Exeter from this entity or the entity directly. No evidence of Larry's interest in this entity was submitted by the Plaintiff. LFD Page 8.

3. 22 West Hills: Larry does not possess any shares of this entity and no documents in connection with this entity. He does not believe he ever had an interest in this entity; he never participated in its formation or decision-making, and never received any funds from Exeter from this entity or the entity directly. No evidence of Larry's interest in this entity was submitted by

5

the Plaintiff.  LFD Page 8.

    4.  <u>29 Mill Lane</u>:  Larry does not possess any shares of this entity and no documents in connection with this entity.  He does not believe he ever had an interest in this entity, ever participated in its formation or decision-making, and he never received any funds from Exeter from this entity or the entity directly.  Larry believes that he may have signed an initial corporate formation document, but he had no further involvement with this entity.  LFD Page 8.  No evidence of Larry's interest in this entity was submitted by the Plaintiff.

    5.  <u>3 Lewis Lane</u>:  Larry admits that he participated in this project.  He guaranteed a mortgage for the construction of the project, at his father's direction.  He did not receive any money from this entity, despite the allegation contained in Paragraph 233 of the Complaint that he received funds to pay his personal expenses from this entity.  The Plaintiff did not submit any evidence to support its contention that Larry received any consideration or benefit from thie project or from his guarantee of the mortgage.

    6.  <u>Begonia</u>:  Larry does not possess any shares of this entity and no documents in connection with this entity.  During discovery, he received a copy of a corporate formation document that lists him as a 33% shareholder, but believes his name was forged on the document.   He did not participate in any decision-making in connection with this entity, and did not receive any funds from Exeter from this entity or the entity directly.  LFD Page 9.  No evidence of Larry's interest in this entity was submitted by the Plaintiff.

    7.  <u>Eden Rock</u>:  Larry does not recall signing any documents in connection with this entity other than serving as a guarantor of a mortgage.  He does not possess any shares of this entity and no documents in connection with this entity.  He does not recall participating in the formation of

this entity and did not participate in any decision-making in connection with this entity. He did not receive any funds from Exeter from this entity or the entity directly. No evidence of Larry's interest in this entity was submitted by the Plaintiff.

      8. <u>Maplewood</u>: Larry admits that he was assigned shares in this entity, but believes it has a distinct history, as applied to him, than the other Property Corporations. Larry admits that a lot was purchased, a house was built, and the home sold for a profit in or around 2004 or 2005. He was informed that all of Exeter's loans were repaid, including the 21% interest it charged for its loans. He admits that he received funds that were placed in his Exeter investment account after the sale, but he did not receive the funds directly. In other words, whatever profit was allocated to Larry was reinvested in Exeter. Arnold Frank determined the amount of profit credited to Larry. LFD Page 10.

      Larry learned after this action was commenced that Maplewood was used by Exeter to build a second home on another lot, which was an unusual practice for Exeter. Apparently that project failed, and resulted in a loss. Larry had no knowledge of this second project, and did not participate in it in anyway. He received no money or benefit from this second project, and had no hand in its creation. LFD Page 10.

      Exhibit 15 to the Motion contains a list of payments made to third parties that were purportedly made in connection with the Maplewood project. Larry is not a payee on the list of payments.

      9. <u>13 Mill</u>: Larry possesses no shares of this entity and no documents in connection with this entity and does not believe he ever had an interest in this entity. He did not participate in its formation or decision-making and never received any funds from Exeter from this entity or the

entity directly. The Plaintiff did not provide any evidence of his ownership in Motion. Larry believes that this project was profitable.

10. <u>Fox Lane</u>: Larry admits to holding an interest in this entity, but asserts the project was profitable and all creditors were paid in full in connection with this project. Larry believes that the the project yielded over a million dollars in profit for Exeter. Exeter was fully repaid, with interest, and Larry received $170,000 credited to his Exeter investment account. Arnold Frank determined the profit allocated to Larry that was reinvested in Exeter. Larry did not receive any money directly from Fox Lane or Exeter, other than the credit into the investment account. The evidence submitted by the Plaintiff in the Motion does not reference any funds received by Fox Lane from the sale of the property. LFD Page 11.

Exhibit 15 to the Motion contains a list of payments made to third parties that were purportedly made in connection with the Fox Lane project. Larry is not a payee on the list of payments.

11. <u>Carica Road</u>: Larry does not possess any shares of this entity and no documents in connection with this entity. He does not believe he ever had an interest in this entity, ever participated in its formation or decision-making, and he never received any funds from Exeter from this entity or the entity directly. No evidence of Larry's interest in this entity was submitted by the Plaintiff. LFD Page 11.

12. <u>Laurel Hill</u>: Larry does not possess any shares of this entity and no documents in connection with this entity. He does not believe he ever had an interest in this entity, ever participated in its formation or decision-making, and he never received any funds from Exeter from this entity or the entity directly. No evidence of Larry's interest in this entity was

submitted by the Plaintiff.  LFD Page 11-12.

13.  Osgood Place:  Larry does not possess any shares of this entity and no documents in connection with this entity.  He does not believe he ever had an interest in this entity, ever participated in its formation or decision-making, and he never received any funds from Exeter from this entity or the entity directly.   No evidence of Larry's interest in this entity was submitted by the Plaintiff.  LFD Page 12.

14.  Connecticut View Drive: Larry does not possess any shares of this entity and no documents in connection with this entity.  He does not believe he ever had an interest in this entity, ever participated in its formation or decision-making, and he never received any funds from Exeter from this entity or the entity directly.   No evidence of Larry's interest in this entity was submitted by the Plaintiff.  LFD Page 12.

Larry admits to receiving a credit to his investment account on two of the fourteen projects referred to by the Plaintiff during the Disputed Period: Fox Lane and the first Maplewood project.  However, he has not collected any sums from the investment account other than interest paid on that account during the Disputed Period.  He never received any funds directly from any of the entities and disputes an ownership interest in at least ten of the 14 entities.  He did not receive any repayment of his claim against Exeter during the Disputed Period, and did not receive any payments - either directly or indirectly through Exeter - in connection with his purported ownership of any of the Property Corporations.  The evidence submitted by the Plaintiff to support the contention that Larry benefitted from payments made to the Property Corporations by Exeter, Exhibits 15-17, consist of a list of payments to third parties or the entities directly: none of the payments were made to Larry.

9

**D. Relief Sought Against Larry**

Plaintiff seeks summary judgment against Larry for the following:

1. Judgment in the amount of $145,000 for constructive fraudulent transfer and/or conveyance on Counts IV and or V of the Complaint;

2. Judgment in the amount of $13,312.84 as a shareholder of 3 Lewis Lane for constructive fraudulent transfer and/or conveyance on Counts IV and or V of the Complaint;

3. Judgment in the amount of $95,000 for set-aside of avoidable preferences on Count VI of the Complaint;

4. Judgment in the amount of $200 for set-aside of an avoidable preference against Larry as a shareholder of 3 Lewis Lane Corp. on Count VI of the Complaint;

5. Judgment in the amount of $6,325,832.99 for aiding and abetting breach of fiduciary duties of care and/or loyalty on Count IX of the Complaint.

## ARGUMENT

Summary judgment may be granted "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'" Rivera v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685, 692 (2d Cir. 2012). A fact is "material" if it might affect the outcome of the suit under the governing law, and it is "genuine" if a reasonable jury could return a verdict for the nonmoving party based upon the evidence submitted by the movant. E.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 48, 106 S.Ct. 2505 (1986). The Plaintiff cannot satisfy that standard here, and establish

there is no genuine dispute as to the material facts of each of his claims.

I. Plaintiff Has Failed To Demonstrate It Is Entitled to Summary Judgment Awarding the Plaintiff a Judgment For Fraudulent Transfers Under State and Federal Law

The Plaintiff asserts that the consulting fees paid to Larry constituted constructive fraudulent conveyances under Section 548(a)(1)(B) of the Bankruptcy Code because they were made to Larry and Exeter received less than the reasonably equivalent value for the payments and they were made two years prior to the Petition Date. In other words, the Plaintiff asserts that Larry was paid too much for the services he provided in exchange for his monthly $5,000 consulting fees from Exeter in the one and two year period prior to the Petition Date.

In order to obtain summary judgment under Section 548, the Plaintiff would have to demonstrate that (1) Exeter had an interest in the property transferred to Larry; (2) the transfer of that interest occurred within one year of the filing of the bankruptcy petition; (3) Exeter was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) the debtor received less than a reasonably equivalent value in exchange for such transfer. E.g., BFP v. Resolution Trust Corp., 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). The only issue in dispute in connection with this claim is the assertion that Exeter did not receive sufficient value in exchange for Larry's services, since the payment to Larry of $5,000 a month could not possibly have rendered Exeter insolvent.

The "concept of reasonably equivalent value unfortunately has not been defined in the [Bankruptcy] Code.... 'Congress left to the courts the obligation of marking the scope and meaning of [reasonably equivalent value].' " In re Jacobs, 394 B.R. 646, 662 (Bankr. E.D.N.Y. 2008) (citations omitted); In re USA United Fleet, Inc., 559 B.R. 41, 58 (Bankr. E.D.N.Y. 2016)

11

"The questions implicated by a Section 548(a)(1)(B) claim are fact-specific, and perfect equivalence is not the standard." USA United at 58.

The Plaintiff asserts that according to Exeter's Quickbooks, Exeter received less than a reasonably equivalent value, or no value at all, for the transfer to Larry. In support of this contention, the Plaintiff submits as Exhibit 5 a Quickbooks list of payments to Larry that are clearly marked "consulting fees." No other evidence is provided to support the Plaintiff's contention, and it is respectfully submitted that such evidence is wholly inadequate to demonstrate that Larry either did not render consulting services to Exeter or he was overpaid for those services.

Although Larry does not have documentary evidence to support his contention that his fees were commensurate with the value of his services, neither does the Plaintiff. Exeter's books recorded Larry's payments as consulting fees, and Larry only worked for Exeter during the period in question. Although the Plaintiff may dispute the reasonableness of the amount paid to Larry, the Court should find that determining the value of Larry's services involves a material question of fact that should not be determined on summary judgment. E.g., Gen. Star Indem. Co. v. Custom Editions Upholstery Corp., 940 F. Supp. 645, 653 (S.D.N.Y. 1996) (court would not determine value of legal fees and other professional fees when parties disputed the value); Longo v. Shore & Reich, Ltd., 25 F.3d 94, 98 (2d Cir. 1994) (a factfinder should determine the reasonable value of her services).

The Plaintiff proffers the same theory and evidence to seek summary judgment against Larry under NY DCL Sections 273-275 for the payment of consulting fees in the two years prior to the Petition Date. DCL 273 provides in relevant part that every conveyance made or

obligation incurred by an insolvent person, or that renders a person insolvent, without fair consideration, is fraudulent as to creditors. DCL 274 provides in relevant part that a transfer without fair consideration that leaves transferor with unreasonably small capital is fraudulent as to creditors. DCL 275 provides in relevant part that that any transfer or obligation incurred without fair consideration when the person making the conveyance or entering into the obligation believes he will incur debts beyond his ability to pay is fraudulent. A finding that any transfers made by Exeter to Larry that meet these factors would warrant judgment for the Plaintiff.

But for the reasons stated above, the Plaintiff has not established entitlement to summary judgment on these counts. First, the Plaintiff acknowledges that the date of insolvency may be subject to dispute. Second, for the reasons stated above, there is a genuine issue of fact regarding the value of the services rendered by Larry to Exeter. E.g., Perrone v. Amato, 2017 WL 2881136 * 32 (E.D.N.Y. July 5, 2017) (citations omitted). Third, if the Plaintiff asserts that no services were rendered to Exeter by Larry, the evidence submitted does not establish that fact. Finally, since Larry's consulting fees could not possibly have rendered Exeter insolvent, the Plaintiff has not proven entitlement to summary judgment for the avoidance of fraudulent transfers or conveyances by Larry Frank in the two year period preceding the Petition Date.

    II.    Plaintiff Has Failed To Demonstrate It is Entitled to Summary Judgment Awarding the Plaintiff a Judgment For Preferential Transfers

The Plaintiff seeks summary judgment in the amount of $95,000 on the theory that the consulting fees paid to Larry Frank in the one year preceding the Petition Date constitute avoidable preferential payments since they were payments on account of a debt owed by Exeter to Larry, and were not consulting fees. In order to prevail on this theory, the Plaintiff must prove

that Larry is a creditor of Exeter, the payments were made to Larry to satisfy Exeter's debt to Larry, the payments were made while Exeter was insolvent, and Larry received more repayment on the debt than he would have received in a Chapter 7 liquidation. 11 U.S.C. § 547.

The Plaintiff has similarly failed to meet it burden under this theory. First, the only evidence submitted by the Plaintiff characterizes the payments as consulting fees, not payment of a debt. Second, whether the payments were made to pay an antecedent debt is a material fact, and it is wholly disputed by Larry. LFD Para. 2. Courts have found that when a significant question lies as to the nature of a payment in a preference action, summary judgment should not be granted. E.g., In re G. Survivor Corp., 217 B.R. 433, 440 (Bankr. S.D.N.Y. 1998) (court refused to grant summary judgment when the parties dispute whether the payments were for wages or on account of an antecedent debt); In re Save Home Energy, Inc., 567 B.R. 1 (Bankr. D. Conn. 2017) (genuine issue of material fact existed as to whether property insurance payments made on behalf of corporate debtor were in the nature of repayment of antecedent debt or compensation). Larry also submits that since he received the consulting fees for years, they payments to him were in the ordinary course of Exeter's business. However, the Court need not reach this argument unless the Plaintiff establishes that these payments were repayment of debt, and it has failed to do so.

III.     Plaintiff Has Failed To Demonstrate It is Entitled to Summary Judgment For Aiding and Abetting Linda's Breach of Her Fiduciary Duties

The Plaintiff has asserted that Larry aided and abetted Linda in her breach of fiduciary duties to Exeter and the Property Corporations. The Plaintiff argues that Larry consciously participated in an estate planning advice to distribute Arnold Frank's wealth and looted Exeter's

14

funds for his personal gain. The Plaintiff further argues that the Property Corporations were used to benefit family members over Exeter, and Larry had actual knowledge of Linda's breach of her fiduciary duties. Based upon printouts of Quickbook records from Exeter, the Plaintiff seeks judgment against Larry in the amount of $6,325,832.99.

In order to establish that Larry aided and abetted Linda in her purported breach of her fiduciary duties, the Plaintiff would have to establish that (1) Linda breached her duties, (2) Larry knowingly induced her to do so or participated in the breach, and (3) the Plaintiff suffered damages. E.g., In re Signature Apparel Grp. LLC, 577 B.R. 54, 108 (Bankr. S.D.N.Y. 2017). "As to the second element, the standards that courts use vary from constructive knowledge to actual knowledge; however, actual knowledge is the prevailing standard under New York law." Id. (citations omitted). An allegation that the defendant knew or should have known about the breach does not constitute actual knowledge: the defendant must provide substantial assistance to the primary actor. Id.

In In re Allou Distributors, Inc., 446 B.R. 32, 58 (Bankr. E.D.N.Y. 2011), the court found that substantial assistance to the primary violator is a key component to finding a party liable for aiding and abetting, citing the Second Circuit in Lerner v. Fleet Bank, N.a., 459 F. 3d 273 (2d Cir. 2006). "Substantial assistance may only be found where the alleged aider and abettor 'affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.' But " '[t]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.' " Id. (quoting In re Sharp Int'l Corp., 403 F.3d 43, 50 (2d Cir. 2005).

There is no real question that granting the Plaintiff a six million dollar summary judgment

15

on the evidence submitted by the Plaintiff is wholly inappropriate in this case. Larry was not an officer or director of Exeter. He did not work in the office and worked with his father, not Linda. Larry had very limited involvement with the Property Corporations, as evidenced by the email referred to above submitted by the Plaintiff as Exhibit 21. Larry alleges that the Property Corporations he participated in, such as Fox Lane and the first Maplewood project, resulted in a profit to Exeter and its creditors, and not a loss.

Larry asserts that he justifiably believed that is father's requests that he assist with the Property Corporation projects were done pursuant to the advice of lawyers and accountants. LFD Page 4. There is simply no uncontroverted evidence submitted by the Plaintiff that demonstrates Larry intentionally assisted Linda in a scheme to breach her fiduciary duties to Exeter. For these reasons, the Court should deny the Plaintiff's request for summary judgment on this count.

Dated: July 15, 2019
New York, New York

*S/Norma E. Ortiz*
Ortiz & Ortiz LLP
32-72 Steinway Street, Ste. 402
Astoria, New York 11103
Tel. 718.522.1117
Counsel to Larry Frank