**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF EXETER HOLDINGS, LTD.,

                        Plaintiff,

            -against-

LINDA HALTMAN, INDIVIDUALLY, AS A
TRUSTEE FOR THE ARNOLD AND SONDRA
FRANK IRREVOCABLE TRUST, C. H. TRUST,
RYANN HALTMAN TRUST, AND
SAMANTHA HALTMAN TRUST; MICHAEL
HALTMAN, INDIVIDUALLY, AS A TRUSTEE
FOR THE C. H. TRUST, RYANN HALTMAN
TRUST, AND SAMANTHA HALTMAN TRUST;
BRUCE FRANK, INDIVIDUALLY, AS A
TRUSTEE FOR THE ARNOLD AND SONDRA
FRANK IRREVOCABLE TRUST, B. F. TRUST,
E. F. TRUST, J. F. TRUST, AND K. F. TRUST;
KATHLEEN FRANK, INDIVIDUALLY, AS A
TRUSTEE FOR THE B. F. TRUST, E. F. TRUST,
J. F. TRUST, AND K. F. TRUST; KATHLEEN
FRANK, INDIVIDUALLY, AS A TRUSTEE FOR
THE B. F. TRUST, E. F. TRUST, J. F. TRUST,
AND K. F. TRUST; LARRY FRANK
INDIVIDUALLY, AND AS A TRUSTEE FOR
THE ARNOLD AND SONDRA FRANK
IRREVOCABLE TRUST; ARNOLD FRANK;
SONDRA FRANK, INDIVIDUALLY, AND AS A
TRUSTEE FOR THE BARBARA COHEN-
LINDA HALTMAN TRUST, MURRAY COHEN-
LINDA HALTMAN TRUST, BARBARA
COHEN-BRUCE ASFIT, MURRAY COHEN-
BRUCE ASFIT, BARBARA COHEN-LARRY
ASFIT, MURRAY COHEN-LARRY ASFIT,
RYANN HALTMAN; SAMANTHA HALTMAN;
RUTH FRANK; ARNOLD AND SONDRA
FRANK IRREVOCABLE TRUST; BARBARA
COHEN-LINDA HALTMAN TRUST; MURRAY
COHEN-LINDA HALTMAN TRUST;
BARBARA COHEN-BRUCE ASFIT; MURRAY
COHEN-BRUCE ASFIT; BARBARA COHEN-
LARRY ASFIT; MURRAY COHEN-LARRY

**REPORT AND**
**RECOMMENDATION**

CV 13-5475 (JS) (AKT)

ASFIT; B.F. TRUST; C.H. TRUST; E. F. TRUST; J. F. TRUST; K. F. TRUST; HANK ASFIT; RUTH ASFIT; TODD FRANK AND LESTER FRANK AS TRUSTEES FOR RUTH ASFIT AND HANK ASFIT; RYANN HALTMAN TRUST; SAMANTHA HALTMAN TRUST; 124 NEW YORK AVENUE CORP.; 140 MAGGIE DRIVE CORP.; 22 BRIDGE LANE CORP.; 22 WEST HILLS COURT CORP.; 29 MILL FARM LANE CORP.; 207 PARRISH POND COURT WEST CORP.; 3 LEWIS LANE CORP.; BEGONIA COURT CORP.; BITTERSWEET PARTNERS INC.; EDEN ROCK CORP.; MAPLEWOOD ASSOCIATES, INC.; SHORT PATH HOUSE CORP.; SOUND SIDE VENTURES, LTD.; VIA TRENTA CORP.; JOHN DOE(S) 1–100; AND ABC CORPORATION(S) 1– 100,

Defendants.

-------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff, the Official Committee of Unsecured Creditors of Exeter Holding, Ltd. ("Plaintiff"), commenced this adversary proceeding against officers, directors, and insiders of Exeter Holdings, Ltd. ("Exeter"), a closely held family-run S corporation, following Exeter's commencement of bankruptcy proceedings. *See* Complaint ("Compl.") [DE 3-9] ¶¶ 1-2. The Defendants include Arnold Frank[1] and Sondra Frank, their three children Linda Haltman, Bruce Frank, and Larry Frank, their grandchildren, including Samantha Haltman, and various trusts and other entities (collectively "Defendants"). *See* Compl. ¶¶ 16-70. Plaintiff alleges that Defendants defrauded Exeter by transferring funds to themselves, to trusts, and to other entities in Defendants' control for Defendants' personal use. *See generally* Compl.

---

[1]    During the pendency of this action Defendant Arnold Frank passed away. Plaintiff elected not to further pursue Arnold Frank's estate.

Two motions for summary judgment are now pending before this Court:  (1) Defendant Samantha Haltman's motion seeking to dismiss Count XII (Turnover) and Count XIII (Unjust Enrichment) as against her, *see* Defendant Samantha Haltman's Notice of Motion for Summary Judgment [DE 334]; and (2) Plaintiff's motion for summary judgment against Defendants Linda Haltman, Michael Haltman, Bruce Frank, Kathleen Frank, Larry Frank, and the Arnold and Sondra Frank Irrevocable Trust on Count IV (Constructive Fraudulent Transfer under Bankruptcy Code §548(a)(1)(B)), Count V (Constructive Fraudulent Conveyance under DCL §§ 273, 274, 275), Count VI (Set-Aside of Avoidable Preferences under § 547 of the Bankruptcy Code), Count VII (Breach of Fiduciary Duty of Care), Count VIII (Breach of Fiduciary Duty of Loyalty), and Count IX (Aiding and Abetting Breach of Fiduciary Duty), *see* Plaintiff's Notice of Motion for Summary Judgment [DE 342].  Both motions have been referred to this Court by Judge Seybert for a Report and Recommendation as to whether the motions should be granted. *See* October 8, 2019 Electronic Order.

For the reasons set forth below, the Court respectfully recommends to Judge Seybert that (1) Plaintiff's motion for summary judgment be DENIED and (2) Defendant Samantha Haltman's motion for summary judgment be GRANTED.

II.    **BACKGROUND**

A.    **Procedural History**

The Court assumes the parties' familiarity with the procedural history of this case and will not recite the same here except where necessary for context.  The Court directs the parties' attention to Judge Seybert's Memorandum and Order concerning Defendants' Motion to Dismiss [DE 278], along with this Court's previous Reports and Recommendations [DE 151, 152, 179, 252, 253, 301] for a full recitation of the procedural history of this matter.

After the reference to bankruptcy proceedings instituted by Exeter was withdrawn, Plaintiff commenced this adversary proceeding against Defendants on September 18, 2013.  *See* Order Granting Motion to Withdraw Reference [DE 2]; Compl.  The Complaint originally asserted thirteen causes of action relating to fraud, breach of fiduciary duty and unjust enrichment.  *See generally* Compl.  Thereafter, Defendants moved to dismiss the Complaint on March 31, 2017.  *See* DE 240.  On March 30, 2018, Judge Seybert granted, in part, and denied, in part, Defendants' motion to dismiss.  *See* March 30, 2018 Memorandum of Decision and Order [DE 278].  As it relates to Defendant Samantha Haltman, Judge Seybert dismissed Plaintiff's claim for aiding and abetting breach of fiduciary duty.  DE 278 at 31-33.  Thereafter, at a conference before Judge Seybert on February 5, 2019, Plaintiff confirmed that it withdrew its claims for fraud and actual and/or constructive fraudulent conveyance against Defendant Samantha Haltman.[2]  *See* DE 329.  Consequently, with the exception of Plaintiff's claim for turnover and unjust enrichment, all claims against Defendant Samantha Haltman have either been dismissed or withdrawn.  As to the remaining Defendants, Plaintiff's motion for summary judgment addresses six specific claims against them.

On October 31, 2018, Plaintiff filed a pre-motion conference request to Judge Seybert in anticipation of moving for summary judgment.  *See* DE 318.  Along with his request, Plaintiff's counsel submitted his Rule 56.1 Statement, along with the Rule 56.1 individual Counterstatements of Linda and Michael Haltman and the Arnold and Sondra Frank Irrevocable Family Trust (collectively, "the Haltman Defendants") [DE 315-2], Larry Frank [DE 315-3], Sondra Frank [315-4], Bruce Frank [315-5] and Kathleen Frank [315-5].  Judge Seybert granted

---

[2]    Although the transcript of this conference was not provided to the Court, Plaintiff does not dispute the withdrawal of these claims against Defendant Samantha Haltman in its opposition papers.

4

Plaintiff's request and conducted a pre-motion conference on February 5, 2019.  DE 327.  At that

time, Judge Seybert set a briefing schedule for all anticipated summary judgment motions.  *See*

DE 329.  The schedule was extended several times, ultimately until April 19, 2019 for the

moving papers, May 20, 2019 for opposition and June 17, 2019 for replies.  *See* April 5, 2019

and April 11, 2019 Electronic Orders.

The Court preliminarily notes that Defendant Samantha Haltman had not submitted a

separate request for a pre-motion conference to Judge Seybert at the time Plaintiff did so.

Pursuant to Judge Seybert's Individual Rules, a movant is required to submit a copy of its Rule

56.1 Statement of Undisputed Facts as well as a copy of the non-movant's Counterstatement

with the pre-motion conference request.  When Plaintiff's counsel submitted his pre-motion

conference request, he included Plaintiff's Rule 56.1 Statement, along with separate Rule 56.1

Counterstatements from the Haltman Defendants, Defendant Larry Frank, Defendant Sondra

Frank, Defendant Bruce Frank and defendant Kathleen Frank.  *See* DE 315, Exhibits A - F.

Presumably, Samantha Haltman's counsel assumed that it was not necessary to submit a pre-

motion conference request because Plaintiff's request was already pending before Judge Seybert.

As a result, at the time of the pre-motion conference, it appears that counsel made clear that

Samantha Haltman intended to move for summary judgment as well.  However, the docket

reflects that Samantha Haltman at that time had not filed a Rule 56.1 Statement of Undisputed

Facts, and, consequently, no Rule 56.1 Counterstatement was filed by the Plaintiff.  Apparently,

the scheduling of all anticipated summary judgment motions was handled by Judge Seybert at

the February 5, 2019 pre-motion conference and the parties were permitted to proceed with the

briefing schedule notwithstanding the fact that no Rule 56.1 Statements had been submitted with

respect to Samantha Haltman's intended motion.

On April 19, 2019, Samantha Haltman filed her motion for summary judgment against the Plaintiff seeking to dismiss the claims for turnover (Count XII) and unjust enrichment (Count XIII).  *See* Defendant Samantha Haltman's Memorandum of Law in Support of Mot. for Summ. J. ("Samantha Mem.") [DE 335]; Defendant Samantha Haltman's Reply Memorandum of Law in Support of Mot. for Summ. J. ("Samantha Reply") [DE 355].  In support of her motion, Samantha Haltman also included a Rule 56.1 Statement of Material Facts [DE 336], along with affidavits from herself, her mother Linda Haltman who was also Exeter's President, and Attorney Marc J. Weingard, Esq., including exhibits.  *See* Affidavit of Samantha Haltman in Support of Def. Samantha Haltman's Mot. for Summ. J. ("Samantha Aff.") [DE 334-1]; Affidavit of Linda Haltman in Support of Def. Samantha Haltman's Mot. for Summ. J. ("Linda Aff.") [DE 334-2]; Affidavit of Marc J. Weingard, Esq. in Support of Def. Samantha Haltman's Mot. for Summ. J. ("Weingard Aff."), [DE 334-4]; Supplemental Affidavit of Linda Haltman in Support of Def. Samantha Haltman's Mot. for Summ. J. ("Linda Supp. Aff.") [DE 334-3]; Reply Affidavit of Linda Haltman in Support of Def. Samantha Haltman's Mot. for Summ. J. ("Linda Reply Aff.") [DE 355].

In opposing Samantha Haltman's motion, Plaintiff submitted a memorandum of law but failed to submit a Counterstatement to Samantha Haltman's Rule 56.1 Statement.[3]  *See* Pl.'s

---

[3]    On January 31, 2020, this Court ordered Plaintiff to provide courtesy copies of its submissions related to the motions by February 5, 2020.  *See* January 31, 2020 Electronic Order.  Despite having this additional opportunity to provide the Court with its Rule 56.1 Counterstatement, Plaintiff did not do so.  This omission made it quite difficult for the Court to review the record.  Generally, "plaintiff ['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed."  *Angulo v. Nassau Cty.,* 89 F. Supp. 3d 541, 546 n.1 (E.D.N.Y. 2015) (citing *Jessamy v. City of New Rochelle,* 292 F.Supp.2d 498, 504 (S.D.N.Y. 2003)).  However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  *Id.* (quoting *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir. 2001)).  Accordingly, in the exercise of its discretion, and in light

Memorandum of Law in Opposition to Def. Samantha Haltman's Mot. for Summ. J. ("Pl.'s Opp'n") [DE 349].

After several extensions, Plaintiff filed its own motion for summary judgment on May 31, 2019 on its claims for constructive fraudulent transfer and conveyance (Count IV and Count V), set-aside of avoidable preferences (*i.e.,* preferential transfers) (Count VI), breach of fiduciary duty (Count VII and Count VIII), and aiding and abetting breach of fiduciary duty (Count IX) against Defendants Linda Haltman, Michael Haltman, Bruce Frank, Larry Frank, and the Arnold and Sondra Frank Irrevocable Trust.[4] *See* Plaintiff's Memorandum of Law in Support of Mot. for Summ. J. ("Pl.'s Mem.") [DE 343]; Plaintiff's Reply Memorandum of Law in Support of Mot. for Summ. J. ("Pl.s' Reply") [DE 343].  In support of its motion, Plaintiff submitted an affidavit from Attorney John. D. Roesser, Esq.  *See* Affidavit of John. D. Roesser, Esq., in Support of Pl.'s Mot. for Summ. J. ("Roesser Aff.") [DE 345].  Plaintiff's Rule 56.1 Statement of Material Facts was previously submitted with its pre-motion conference letter and

---

of the posture of this case and these motions, the Court will overlook this defect and will deem admitted only those facts in Defendant's Rule 56.1 Statement which are supported by admissible evidence and not controverted by other admissible evidence in the record. *See, e.g., Jessamy,* 292 F. Supp. 2d at 504; *Roth v. Farmingdale Pub. Sch. Dist.,* No. 14-CV-6668, 2017 WL 395211, at *2 n. 4 (E.D.N.Y. Jan. 30, 2017); *Capellupo v. Nassau Health Care Corp.,* No. 06-CV-4922, 2009 WL 1705749, at *1 n.3 (E.D.N.Y. June 16, 2009).

[4]     Plaintiff does not expressly clarify whether it moves for summary judgment against *pro se* Bruce Frank **and** *pro se* Kathleen Frank or solely against *pro se* Bruce Frank.  Plaintiff simply refers to them as "Bruce Frank and/or Kathleen Frank" in its moving papers.  However, Kathleen Frank did file a Rule 56.1 Counterstatement on behalf of herself.  *See* DE 315-5.  In addition, Bruce Frank and Kathleen Frank opposed Plaintiff's request for a pre-motion conference in a letter to Judge Seybert dated November 19, 2018.  *See* DE 318.  However, Bruce Frank filed a memorandum of law as well as an affidavit in opposition to Plaintiff's motion for summary judgment, but on behalf of himself only.  *See* DE 353, 354.  Kathleen Frank did not submit any affidavit or memorandum of law.  Because of the lack of clarity and the fact that only Bruce Frank filed all the necessary components of an opposition, the Court will only consider the relief sought against Bruce Frank.

that portion of Plaintiff's memorandum of law which contains Plaintiff's "Statement of Facts" tracks that Rule 56.1 Statement.  *See generally* Pl.'s Mem.

Defendants Linda Haltman, Michael Haltman, Bruce Frank,[5] Larry Frank, and the Arnold and Sondra Frank Irrevocable Trust opposed Plaintiff's motion by filing Rule 56.1 Counterstatements as well as memoranda of law. *See* Defendants Linda Haltman, Michael Haltman, and Arnold and Sondra Frank Irrevocable Trust Memorandum of Law in Opposition to Pl.'s Mot. for Summ. J. ("Haltman Defs.' Opp'n") [DE 351]; Defendant Larry Frank Memorandum of Law in Opposition to Pl.'s Mot. for Summ. J. ("Def. Larry Opp'n") [DE 352]; Defendant Bruce Frank Memorandum of Law in Opposition to Pl.'s Mot. for Summ. J. ("Def. Bruce Opp'n") [DE 353].  The Defendants argue chiefly that genuine issues of material fact exist based on the record before the Court, thereby precluding summary judgment.

On October 8, 2019, Judge Seybert referred both motions to this Court by for a Report and Recommendation as to whether the motions should be granted.  *See* October 8, 2019 Electronic Order.

### B.    The Undisputed Material Facts

The following material facts are taken from the underlying record as it appears in the docket, including the Complaint, the parties' Rule 56.1 Statements, affidavits/declarations and exhibits submitted in connection with the instant motions.  Unless otherwise noted, the facts are either undisputed or uncontroverted by admissible evidence.  Upon consideration of the motion

---

[5]    The Court notes that Bruce Frank is proceeding *pro se*.  When a *pro se* litigant is involved, the same standards for summary judgment apply, but "the *pro se* litigant should be given special latitude in responding to a summary judgment motion."  *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (*Knowles v. N.Y. City Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)); *see also Graham v. Lewinski,* 848 F. 2d 342, 344 (2d Cir.1988) ("[S]pecial solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment.").

for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving parties and will resolve all factual ambiguities in their favor. *See Capobianco v. New York*, 422 F. 3d 47, 50 n.1 (2d Cir. 2001).

### 1. *Exeter's Business and Bankruptcy*

Exeter is a closely held, family-run S corporation founded in 1986 by Arnold Frank. Compl. ¶¶ 75-76. Defendant Arnold Frank owned 50 percent of the company and his wife Defendant Sondra Frank owned 10 percent of the company, making them the majority owners. *See* Plaintiff's Rule 56.1(a) Statement of Undisputed Material Facts ("Pl.'s SOMF") ¶ 3; Rule 56.1(b) Response of Linda Haltman, Michael Haltman, and Arnold and Sondra Frank Irrevocable Trust to Plaintiff's Statement of Material Fact ("Haltman Defs.' 56.1(b) Response") [DE 315-2] ¶ 3; Compl. ¶ 75; Haltmans' Answer ("Haltmans' Ans.") [DE 3-4] ¶ 75. Defendant Linda Haltman, the daughter of Arnold and Sondra Frank, was the President of Exeter at the time this action was commenced. Pl.'s SOMF ¶ 5; Haltman Defs.' 56.1(b) Response ¶ 5. Defendant Michael Haltman is married to Linda Haltman. Pl.'s SOMF ¶ 7; Haltman Defs.' 56.1(b) Response ¶ 7. Defendants Bruce Frank and Larry Frank are Linda Haltman's brothers. Pl.'s SOMF ¶¶ 9, 11; Defendant Bruce Frank Rule 56.1(b) Response to Plaintiff's Statement of Material Fact ("Def. Bruce 56.1(b) Response") [DE 315-5] ¶ 9; Defendant Larry Frank Rule 56.1(b) Response to Pl.'s Statement of Material Fact ("Def. Larry 56.1(b) Response") [DE 315-3] ¶ 11. Defendant Samantha Haltman is the daughter of Linda and Michael Haltman. Compl. ¶ 24; Haltmans' Ans. ¶ 24. Linda Haltman is also the trustee of the Arnold and Sondra Frank Irrevocable Trust (the "ASFIT") and the Samantha Haltman Trust. Compl. ¶ 8; Haltmans' Ans. ¶ 18.

Generally, Exeter was in the business of making construction loans to builders and homeowners using a combination of bank loans, funds from family members, and funds loaned to the company by various individuals and entities. Compl. ¶ 80. In exchange, Exeter would create an "investment account" for the lender -- representing the debt owed to the lender -- and provide the lender with a promissory note in which Exeter agreed to repay the loan at a specified interest rate. Compl. ¶¶ 81-82; Affidavit of Defendant Linda Haltman in Opposition to Pl.'s Mot. for Summ. J. ("Linda Aff. IV") [DE 348] ¶ 8. Exeter issued two types of promissory notes to its investors. Linda Aff IV ¶¶ 9-10. First, Exeter annually issued a two-year demand note in the full amount of the investor's investment, with interest payable on a monthly basis at +1-1/2 percent per annum. Linda Aff. IV, Ex. B. The monthly payable interest from the loan was added to the investor's investment account through book entries. Linda Aff. IV ¶ 10. Second, on a monthly basis, Exeter issued a two-year demand note in the amount of the interest which had accrued from the investor's investment, with interest at a rate of +1-1/2 percent per annum. Linda Aff. IV, Ex. C. The promissory notes provided that "[t]wo years after the demand, for value received, [Exeter] promise[s] to pay" the sum stated in the note. Linda Aff. IV, Exs. B-C.

Although the exact date is disputed,[6] the parties agree that, at the very latest, Exeter became insolvent on December 31, 2010. Pl.'s SOMF ¶ 23; Haltman Defs.' Opp'n at 24.

---

[6]     The dispute arises over the issue whether various property corporations, as discussed *infra* at Section II.A.2, should have been listed as assets on Exeter's 2006 through 2011 balance sheets. Pl.'s SOMF ¶¶ 24-26; Haltman Defs.' 56.1 Response ¶¶ 24-26; Def. Bruce 56.1 Response ¶¶ 24-26. Plaintiff submitted the Expert Report of Brian Serotta, a CPA with Paritz & Company, P.C., who concluded that Exeter was insolvent as of January 1, 2006. *See* December 1, 2014 Expert Report of Brian A. Serotta CPA ("Serotta Report"), annexed as Exhibit 12 to the Roesser Aff. [DE 345-16] at 6,7. The Serotta Report opines that "since Exeter did not receive equity in the [property corporations] in exchange for the money it expended and no evidence exists in Exeter's books and records that Exeter would share in the income earned by the [property corporations], the [property corporations] should be removed [as assets] from Exeter's books." *Id*. at 5,6. Defendants dispute that the property corporations did not share the

Thereafter, Exeter filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code on November 9, 2011 (the "Petition Date"). Pl.'s SOMF ¶ 1; DE 1. As of the Petition Date, Linda Haltman, Michael Haltman, Bruce Frank, Larry Frank, the ASFIT, the Samantha Haltman Trust, and Samantha Haltman were all creditors of Exeter. Pl.'s SOMF ¶¶ 4, 6, 8, 10, 12, 14; *see also* Linda Aff. IV, Ex. A. Defendants each had investment accounts with Exeter for which promissory notes were executed with two-year demands. *Id.*; Linda Aff. IV, Ex. A. Relevant to her motion for summary judgment, Defendant Samantha Haltman's personal investment account was valued at approximately $30,000 as of the Petition Date. *See* Linda Aff., ¶ 7; Weingard Aff., Exs. 1-3. Defendant Samantha Haltman's investment account represents the principal balance of the loan she made to Exeter in 2003 in the approximate amount of $17,000 from money she received from her Bat Mitzah. *See* Linda Aff. ¶ 7.

### 2. *Exeter's Pre-Petition Transfers*

#### a. **Transfers to Linda Haltman, Michael Haltman, Bruce Frank, Larry Frank, and the ASFIT**

December 10, 2010 is one year prior to the November 9, 2011 Petition Date. During that year, Exeter transferred funds to Linda Haltman, Michael Haltman, Bruce Frank, Larry Frank and the ASFIT ("2010-2011 Transfers"). Pl.'s SOMF ¶¶ 16-21; Haltman Defs.' 56.1(b) Response ¶¶ 16-18; Def. Bruce 56.1(b) Response ¶ 19; Def. Larry 56.1(b) Response ¶ 20; Roesser Aff., Exs. 1-5. Likewise, during the two-year period between November 10, 2009 and the Petition Date, Exeter transferred funds to Linda Haltman, Michael Haltman, Bruce Frank,

---

income they earned with Exeter and therefore should be removed from Exeter's balance sheet. Haltman Defs.' 56.1 Response ¶¶ 24-26. Defendants claim that there was a long-standing practice of income sharing and cite Exeter's QuickBooks between 2006 and 2008 as reflecting that certain property corporations at issue did, at least between 2006 and 2008, share income with Exeter. *Id.*

Larry Frank, and the ASFIT ("2009-2011 Transfers").  Pl.'s SOMF ¶ 33-39; Haltman Defs.'
56.1(b) Response ¶ 33; Def. Bruce 56.1(b) Response ¶ 33; Def. Larry 56.1(b) Response ¶ 33;
Roesser Aff., Ex. 1-5.

Although the parties do not dispute that transfers were made, there is a dispute as to the
total amount of the 2010-2011 and 2009-2011 Transfers made to each of the Defendants, with
the exception of the ASFIT.  Pl.'s SOMF ¶¶ 16-21, 34-38; Haltman Defs.' 56.1(b) Response
¶¶ 16-18, 34-36; Def. Bruce 56.1(b) Response ¶¶ 19, 37; Def. Larry 56.1(b) Response ¶¶ 20, 38.
The 2010-2011 and 2009-2011 Transfers to the ASFIT amount to $154,000.  Pl.'s SOMF ¶ 21,
39; Haltman Defs.' 56.1 Response ¶¶ 21, 39.  The Court notes that the parties rely on the same
QuickBooks ledgers in calculating the 2009-2011 and 2010-2011 Transfers but ultimately arrive
at differing amounts.  Pl.'s SOMF ¶¶ 16-21; Haltman Defs.' 56.1(b) Response ¶¶ 16-18; Def.
Bruce 56.1(b) Response ¶ 19; Def. Larry 56.1(b) Response ¶ 20.

The parties do not dispute that a portion of the 2009-2011 and 2010-2011 Transfers
constituted transfers of Exeter property for or on account of an antecedent debt owed by Exeter
to Linda Haltman, Michael Haltman, Bruce Frank, Larry Frank, and the ASFIT.  Pl.'s SOMF
¶ 22; Haltman Defs.' 56.1(b) Response ¶ 22; Def. Bruce 56.1(b) Response ¶ 22; Def. Larry
56.1(b) Response ¶ 22.  However, the parties dispute whether Exeter received "reasonable
equivalent value" or "contemporaneous exchanges for new value" for a portion of the 2009-2011
and 2010-2011 Transfers.  Pl.'s SOMF ¶ 40; Haltman Defs.' 56.1(b) Response ¶ 40; Def. Bruce
56.1(b) Response ¶ 40; Def. Larry 56.1(b) Response ¶ 40.

### b.  Transfers on Behalf of Samantha Haltman

Between April 19, 2006 and April 13, 2009, Exeter made a total of 24 transfers on behalf
of Samantha Haltman in the sum of $59,358.67.  *See* Weingard Aff., Ex. 1.  The total amount of

the transfers made within three years of the Petition Date was $2,062.20.  Def.'s Mem. at 15; Weingard Aff., Ex. 1.  Exeter made 23 transfers in the total amount of $58,723.67 to various third parties on behalf of Samantha Haltman, including to credit card companies, the Internal Revenue Service ("IRS"), a college sorority (Alpha Chi Omega), and Samantha's high school (collectively, "Third Party Transfers").  *Id*.; Linda Aff. ¶¶ 4, 6.  As to the last remaining transfer in the amount of $635, Exeter's QuickBooks ledger identifies Defendant Samantha Haltman as the direct recipient.  *See* Roesser Aff., Ex. 1.

In her Affidavit, Samantha Haltman states that she had no knowledge or awareness that Exeter was making these transfers on her behalf and that her "recollection was limited to knowing the purpose of the Transfers."  Samantha Aff. ¶ 16.  She assumed that her parents, Linda Haltman and Michael Haltman, had been paying these expenses for her.  *Id*.  Moreover, Linda Haltman, who apparently maintained Exeter's QuickBooks, attests that the $635 transfer was one of three payments made to Samantha Haltman's sorority, Alpha Chi Omega, for Samantha's Fall 2008 sorority dues.  *See* Linda Reply Aff. ¶¶9-10; Linda Aff. ¶ 4.  Linda Haltman states that the first payment of $1,165 was made on October 17, 2008, the second payment for $635 was made on December 1, 2008, and the third payment of $940 was made on January 29, 2009 -- each reflected in Exeter's QuickBooks.  Linda Reply Aff. ¶¶ 9-10; Linda Aff. ¶ 4.; Weingard Aff., Ex. 1.  Unlike the $1,165 and $940 transfers where she made a contemporaneous note in QuickBooks identifying Alpha Chi Omega as the recipient, Linda Haltman explains that she inadvertently failed to make a similar note for the $635 transfer.  *Id*. Plaintiff does not controvert this testimony with any evidence but simply disputes the reliability of Linda Haltman's recollection by pointing to a purported discrepancy in Linda Haltman's accounting of funds transferred on Samantha Haltman's behalf to pay the IRS.  *See* Pl.'s Opp'n

at 3-4.  In response, Linda Haltman provided a more complete accounting of the payments made to the IRS on behalf of her daughter, accompanied by supporting documentation which resolved the noted discrepancy.  *See* Linda Reply Aff. ¶¶ 14-50 and Exs. 16-32.

### 3.  The Property Corporations

Relevant to the instant motion, the parties have stated that the following 13 corporations "were formed to build homes or to buy property to flip:" 124 New York Avenue Corp.; 22 Bridge Lane Corp., 22 West Hills Corp.; 29 Mill Farm Lane Corp.; 207 Parrish Pond Court West Corp.; 3 Lewis Lane Corp.; Begonia Court Corp.; Maplewood Associates, Inc.; Short Path House Corp., Ltd.; 13 Mill Farm Lane Corp.; 17 Fox Lane Corp.; 585 Lexington Ave.; and Osgood Place Corp. (the "Property Corporations").  Pl.'s SOMF ¶ 57; Haltman Defs.' 56.1 Response ¶ 57; Def. Larry 56.1 Response ¶ 57; Def. Bruce 56.1 Response ¶ 57; Compl. ¶¶ 39-50; Roesser Aff., Ex. 11, Linda Haltman Dep. Tr. 511:25-512:10.

Although Plaintiff does not cite anything in the record to support this fact,[7] the parties do not dispute that Linda Haltman, Bruce Frank and Larry Frank were shareholders of a number of these Property Corporations.[8]  Pl.'s SOMF ¶¶ 59-61; Haltman Defs.' 56.1 Response ¶ 61; Def. Bruce 56.1 Response ¶ 60; Def. Larry 56.1 Response ¶ 60.  Further, the parties do not dispute that Exeter was not a shareholder of these Property Corporations and did not have any ownership

---

[7]      Plaintiff cites Exeter's QuickBooks as reflecting transfers made to the Property Corporations and email correspondences between Linda Haltman and Larry Frank.  Roesser Aff., Exs. 16-17, 20-21.  However, having reviewed these documents, the Court notes that they do not indicate who the shareholders of the Property Corporations are.

[8]      Larry Frank contends that he has no knowledge of being a shareholder of several corporations mentioned but does not provide any citation to the record to dispute the contention. Def. Larry 56.1 Response ¶ 59.  Because the record lacks support for the contention that Larry Frank was a shareholder of the Property Corporations mentioned, this fact remains in dispute.

interest in the Property Corporations, although Plaintiff once again does not cite anything in the record to support this fact.[9]  Pl.'s SOMF ¶¶ 63-64; Haltman Defs.' 56.1 Response ¶¶ 63-641; Def. Bruce 56.1 Response ¶¶ 63-64; Def. Larry 56.1 Response ¶¶ 63-64.

Linda Haltman, Larry Frank and Bruce Frank collectively owned or own the following four Property Corporations: 13 Mill Corp; 22 Bridge Lane Corp; 29 Mill Farm Lane Corp; and Lewis Lane Corp. (the "Frank-Haltman Sibling Entities").  Pl.'s SOMF ¶ 69; Haltman Defs.' 56.1 Response ¶ 69; Def. Larry 56.1 Response ¶ 69; Def. Bruce 56.1 Response ¶ 69.  Linda Haltman individually owned or owns the following four Property Corporations:  207 Parrish Pond Corp; Short Path Corp; 585 Lex. Corp; and 22 West Hills Corp (the "Linda Haltman Entities").  Pl.'s SOMF ¶ 71; Haltman Defs.' 56.1 Response ¶ 71.  Larry Frank individually owned or owns the following two Property Corporations: Fox Lane Corp. and Maplewood Associates (the "Larry Frank Entities").  Pl.'s SOMF ¶ 72; Haltman Defs.' 56.1 Response ¶ 72.[10]

Exeter transferred funds to the Property Corporations in various amounts between 2006 and 2011.  Pl.'s SOMF ¶ 65; Haltman Defs.' 56.1 Response ¶ 65; Def. Bruce 56.1 Response ¶ 65; Def. Larry 56.1 Response ¶ 65; *see also* Roesser Aff., Exs. 15-19.  Specifically, the Frank-Haltman Sibling Entities collectively received at least $5,063,332.99 in disbursements from Exeter.  Pl.'s SOMF ¶ 69; Haltman Defs.' 56.1 Response ¶ 69; Def. Bruce 56.1 Response ¶ 69. The Linda Haltman Entities received at least $4,243,327.99 in disbursements from Exeter.  Pl.'s

---

[9]     Plaintiff cites the Serotta Report in support of this contention.  Roesser Aff., Ex. 12 at 5-6.  However, having reviewed the report, the Court finds that it does not expressly provide support for this fact.  Accountant Serotta's review was largely limited to the deeds for the properties owned by the Property Corporations and did not include corporate records.  *See id.*

[10]    Larry Frank's 56.1 Responses "denies knowledge or information concerning paragraph 70."  Haltman Defs.' 56.1 Response ¶ 71.  The Court considers this fact undisputed for purposes of this motion because Larry Frank's response does not comply with Rule 56.1.

15

SOMF ¶ 71; Haltman Defs.' 56.1 Response ¶ 71.  The Larry Frank Entities collectively received at least $1,262,500.00 in disbursements from Exeter.  Pl.'s SOMF ¶ 72; Haltman Defs.' 56.1 Response ¶ 72.  These transfers to the Frank-Haltman Sibling Entities, the Linda Haltman Entities, and the Larry Frank Entities were not secured by mortgages or evidenced by loan agreements.  Pl.'s SOMF ¶¶ 73-74.  The officers and/or directors of Exeter transferred or directed these transfers to the Property Corporations.  However, the officers and/or directors who did so are not identified.  Pl.'s SOMF ¶¶ 65-66; Haltman Defs.' 56.1 Response ¶¶ 65-66; Def. Bruce 56.1 Response ¶¶ 65-66; Def. Larry 56.1 Response ¶¶ 65-66.  Plaintiff maintains that the Exeter funds which were transferred to the Property Corporations were not secured by first mortgages.  Pl.'s Mem. at 11.; Pl.'s SOMF ¶ 73.  The Haltman Defendants take the position that "[a]t a minimum, Plaintiff should have advised this Court that despite not being secured by recorded first mortgages, Exeter's loans to the Property Corporations were, in nearly all cases, repaid in full."  Haltman Defs.' Opp'n at 15.

### 4.    *Linda Haltman Statements to the NY State Banking Department, IndyMac and Larry Frank*

In a January 6, 2005 letter from Exeter to the State of New York Banking Department (the "2005 Letter"), Linda Haltman wrote that "[a]ll investments in related corporations are construction loans secured by first mortgage liens and, therefore, did not need to be adjusted."  Pl.'s SOMF ¶ 81; Haltman Defs.' 56.1 Response ¶ 81.  Exeter's audited 2008 financial statement to the New York State Banking Department ("2008 Financial Statement") similarly stated that "the company maintains various construction loans receivable secured by first mortgages to

twenty-four related companies in the amount of $11,396,727." [11]  Pl.'s SOMF ¶ 84; Haltman

Defs.' 56.1 Response ¶ 84.

In an email correspondence dated July 29, 2011, Linda Haltman directed Larry Frank to

"start by writing off the following accounts to zero."   Pl.'s SOMF ¶ 90; Haltman Defs.' 56.1

Response ¶ 90.  On August 10, 2011, Larry Frank responded that he had "closed all the accounts

that you gave me into the bad debts account.  Millfarm was given a negative amount, so it was

closed out as a credit to bad debt.  Print and review the bad debt account with all the posting

dated 8/10/2011."  Pl.'s SOMF ¶ 91; Haltman Defs.' 56.1 Response ¶ 91.  Linda Haltman

responded: "You were supposed to do it as of 9/30/2010."  Pl.'s SOMF ¶ 92; Haltman Defs.'

56.1 Response ¶ 92.

Linda and Michael Haltman filed a loan application with IndyMac for the property

owned by the Property Corporation referred to as 207 Parrish Pond.  They represented in that

application that the property would be their second home and that they had no intention of selling

---

[11]     The Court notes that Plaintiff did not submit the actual 2005 Letter, 2008
Financial Statement, or IndyMac mortgage application which contain the misrepresentations at
issue.  Instead, Plaintiff's counsel cites the testimony in the deposition transcripts of Linda
Haltman and Michael Haltman which counsel has incorporated into the record here.  Pl.'s SOMF
¶¶ 81, 84, 87.  Significantly, the Haltman Defendants responded to these paragraphs of Pl.'s
SOMF with the statement "not disputed."  Haltman Defs.' 56.1 Response ¶¶ 81, 84, 87.
Although a district court may only consider admissible evidence at the summary judgment stage,
"a plaintiff need not introduce evidence in a form that would be admissible at trial in order to
survive a motion for summary judgment."  *Murphy v. Metropolitan Transp. Auth.*, 548
F.Supp.2d 29, 42 (S.D.N.Y. 2008) (*citing Celotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548,
91 L.Ed.2d 265 (1986)); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384,
1389 (2d Cir. 1992) ("[W]hen the evidence offered in opposition to a motion ...
for summary judgment is defective in form but is sufficient to apprise the court that there is
important and relevant information that could be proffered to defeat the
motion,  summary judgment ought not to be entered."); *I.M. v. United States,* 362 F. Supp. 3d
161, 188 (S.D.N.Y. 2019) (considering undisputed evidence cited in expert report on motion for
summary judgment although the evidence itself was not also submitted in connection with the
motion).

it.  Pl.'s SOMF ¶ 87; Haltman Defs.' 56.1 Response ¶ 87.  Michael Haltman testified that they never intended to live in that property or occupy the home being built.  Pl.'s SOMF ¶ 87; Haltman Defs.' 56.1 Response ¶ 87 (citing Michael Haltman Dep. Tr. (3.24.14) at 72:17-73:21).

All other facts surrounding these statements are disputed, as discussed further below.

## III.   STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 108 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in the light most favorable to the non-moving party.  *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005).  In dispatching this task, a court need only consider admissible evidence.  *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *Hilaire*, 54 F. Supp. 3d at 251.

Where the movant shows a *prima facie* entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact."  *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006); *Miller v. Nassau Health Care Corp.*, No. 09-CV-5128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012).  "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its

burden on summary judgment." *Salahuddin*, 467 F.3d at 273; *see McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor."). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Dobbs v. Dobbs*, No. 06-CV-6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims.") (internal quotation marks omitted).

## IV.  DISCUSSION

### A.  Turnover Claim

As framed in the Complaint, Plaintiff's turnover claim against Samantha Haltman is based on a single transfer of funds purportedly made to Samantha Haltman on December 1, 2008 in the amount of $635. *See* Compl. ¶ 157.  Apparently, during discovery and in its Rule 56.1 Counterstatement, Plaintiff attempted to expand its turnover claim to encompass the 23 Third-Party Transfers made by Exeter on behalf of Samantha Haltman in the amount of $58,723.67. *See* Samantha Mem. at 2, 4, 8.  As such, Samantha Haltman's moving papers addressed both the $635 transfer purportedly to Samantha Haltman and the Third-Party Transfers. *See generally* Samantha Mem.  Plaintiff's opposition, however, only addresses the $635 transfer made to Samantha Haltman. *See* Pl.'s Opp'n at 3-6.  The Court interprets this as an implicit waiver of

Plaintiff's attempt to expand its turnover claim beyond that which is alleged in the Complaint and therefore will only address the turnover claim as pled.

Bankruptcy Code Section 542(a) requires a non-custodian third-party to turn over property if it can be used by the trustee under Bankruptcy Code Section 363 or exempted by the debtor under Bankruptcy Code Section 522.  *See* 11 U.S.C. § 542(a); *Kramer v. Mahia (In re Khan),* No. 10-46901, 2014 WL 10474969, at *26 (E.D.N.Y. Dec. 24, 2014).  To prevail on a turnover claim under § 542, a Trustee must establish that:  "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provision of section 363; and (3) the property has more than inconsequential value to the debtor's estate."  *Geltzer v. Brizinova*, 588 B.R. 311, 327 (Bankr. E.D.N.Y. 2018); *In re Khan,* 2014 WL 10474969, at *26 (quoting *Zazzali v. Minert (In re DBSI, Inc.*), 468 B.R. 663, 669 (Bankr. D. Del. 2011)).  In an action under Section 542(a), "it is the Trustee's burden to establish every element of the cause of action."  *In re Khan*, 2014 WL 10474969, at *26 (citing *In re Steel Wheels Transp., LLC,* No. 06-15377, 2011 WL 5900958, at *5 (Bankr. D.N.J. Oct. 28, 2011)).

Samantha Haltman argues, among other things, that summary judgment is warranted on Plaintiff's turnover claim because the $635 at issue was never in her "possession, custody or control."  Samantha Mem. at 12.  Rather, the funds were used to pay Alphi Chi Omega for Samanth's sorority dues.  *Id*.  Samantha Haltman submitted an Affidavit from her mother, Linda Haltman, whose sworn statement asserts that Alphi Chi Omega was the direct recipient of the $635 transfer, not Samantha Haltman.  *See* Linda Reply Aff. ¶¶ 9-10; Linda Aff. ¶ 4.  Linda Haltman further testified that, unlike the other transfers to Alphi Chi Omega where she made a contemporaneous note in QuickBooks identifying Alpha Chi Omega as the recipient, she

20

inadvertently failed to make a similar note for the December 1, 2008 transfer of $635.  *Id*.  In opposition, Plaintiff does not controvert this testimony with any evidence but rather attacks the reliability of Linda Haltman's recollection by pointing to a discrepancy between what Linda Haltman says she paid the IRS from the 23 transfers and what is reflected on Samantha's tax returns.  *See* Pl.'s Opp'n at 3-4.  Plaintiff acknowledged that there could have been additional taxes paid which would resolve the discrepancy but Defendants did not provide evidence supporting that contention in conjunction with the affidavit.  *Id*. at 6.  In response, Samantha Haltman submitted a Reply Affidavit from Linda Haltman, who provided a substantive accounting of the payments made to the IRS on behalf of Samantha, along with supporting documentation.  *See* Linda Reply Aff. ¶¶14-50.

Although witness credibility is usually a question of fact for the jury, "[b]road, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact" for trial.  *Desia v. GE Life & Annuity Assur. Co.,* 350 Fed. App'x 542, 544 (2d Cir. 2009).  When opposing a motion for summary judgment, "the [non-moving party] may not respond simply with general attacks upon the ... [declarant's] credibility, but rather must identify affirmative evidence from which a jury could find" that the non-moving party has carried its burden of proof.  *Moritz v. Town of Warwick,* No. 15-CV-5424, 2017 WL 4785462, at *8 (S.D.N.Y. Oct. 19, 2017); *see also Crawford–El v. Britton,* 523 U.S. 574, 600, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998); *McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 280 (2d Cir. 1999) (observing that party "cannot defeat summary judgment ... merely by impugning [a witness's] honesty").  Having reviewed the Reply Affidavit of Linda Haltman, the Court is satisfied that the discrepancy relied upon by Plaintiff in attacking Linda Haltman's credibility was sufficiently resolved.  Aside from the purported discrepancy, Plaintiff provides no other

evidence which would put Linda Haltman's testimony as to the direct recipient of the $635 transfer into dispute.  As such, the Court finds that there is no genuine dispute as to the material fact that Samantha Haltman never had "possession, custody, or control" of the $635 at issue.  *See Patterson v. City of New York,* No. 14-CV-5330, 2015 WL 8362702, at *4 (S.D.N.Y. Dec. 8, 2015) ("The non-movant 'had not challenged the credibility of this testimony, apart from conclusory allegations in its legal briefing, nor come forward with independent facts ... to put this [testimony] into dispute. This will not suffice to create a genuine issue of material fact on summary judgment.'") (quoting *U.S. Bancorp Oliver-Allen Tech. Leasing v. Hall, Dickler, Kent, Goldstein & Wood, LLP*, 2005 WL 1875459, at *4 (S.D.N.Y. Aug. 8, 2005)); *In re Duggan,* 169 B.R. 318, 322 (Bankr. E.D.N.Y. 1994) ("To defeat summary judgment by attacking the credibility of an affiant who testifies in support of the moving party, a genuine issue as to credibility must be established.").  The Court need not address the remaining elements of the turnover claim, or arguments of counsel, since the undisputed material facts demonstrate that Plaintiff cannot satisfy the first element of a viable turnover claim.

Accordingly, the Court respectfully recommends to Judge Seybert that Defendant Samantha Haltman's summary judgment motion seeking to dismiss Plaintiff's turnover claim be GRANTED.

## B.    Unjust Enrichment Claim

### 1.  *Statute of Limitations*

Plaintiff's second claim alleges that Samantha Haltman was unjustly enriched in the amount of $59,358.67 which represents the sum of the transfers from Exeter to various third parties on behalf of Samantha Haltman between April 19, 2006 and April 13, 2009.  Compl.

¶¶ 142, 398-401; Pl.'s Mem. at 8.   Plaintiff commenced its bankruptcy proceeding on November 9, 2011.  PSOMF ¶ 1; Haltman Defs.' 56.1 Response ¶ 1.

Under New York law, "unjust enrichment claims are governed by either a three-year statute of limitations when monetary relief is sought or a six-year statute of limitations when equitable relief is sought." *McCaffery v. McCaffery,* No. CV-11-703, 2018 WL 1598617, at *4 (E.D.N.Y. Mar. 16, 2018), *report and recommendation adopted*, No. 11-CV-00703, 2018 WL 1597392 (E.D.N.Y. Apr. 2, 2018); *see also 839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co.,* No. 15-CV-4516, 2016 WL 5372804, at *7 (E.D.N.Y. Sept. 26, 2016) (" Pursuant to New York law, unjust enrichment claims seeking equitable relief are governed by a six (6)-year statute of limitations" while "in contrast, unjust enrichment claims seeking monetary damages are governed by the three year statute of limitations under Section 214(3) of the New York Civil Practice Law and Rules.").  The statute of limitations for unjust enrichment begins to run when a defendant accepts the benefits bestowed upon him, or upon occurrence of the wrongful act giving rise to the duty of restitution.  *See, e.g., L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.,* 558 F. Supp. 2d 378, 409 (E.D.N.Y. 2008), *aff'd,* 710 F.3d 57 (2d Cir. 2013) (internal quotations and citations omitted); *City of Almaty, Kazakhstan v. Ablyazov,* No. 15-CV-5345, 2018 WL 1583293, at *4 (S.D.N.Y. Mar. 27, 2018).

Samantha Haltman argues that Plaintiff's unjust enrichment claim is governed by the three-year statute of limitations because Plaintiff exclusively seeks monetary damages. Samantha Mem. at 14-15.  Plaintiff's counsel does not dispute that Plaintiff exclusively seeks monetary damages in connection with this claim.  *See* Pl.'s Opp'n at 6-7.  Instead, Plaintiff argues that because its unjust enrichment claim is pled as an alternative to a tort, it is governed by the statute of limitations for that underlying tort.  *See id.* (citing *Vandashield Ltd v. Isaccson,*

23

No. 652183/2014, 2015 WL 5545382, at *15 (Sup. Ct., N.Y. Cnty. Sept. 18, 2015)[12] ("The statute of limitations for unjust enrichment pleaded as an alternative to a tort is the same as the statute of limitations for the underlying tort.")).

According to the Plaintiff, its fraud and actual fraudulent conveyance claims, both of which have a six-year statute of limitations, serve as the underlying tort claims. *See* Pl.'s Opp'n at 7. However, Plaintiff does not reconcile this conclusion with the undisputed fact that Plaintiff withdrew its claims for fraud and actual fraudulent conveyance against Defendant Samantha Haltman. *See* Samantha's Mem. at 6; *see generally* Pl.'s Opp'n. Plaintiff provides no legal authority to support the proposition that an unjust enrichment claim may retain the statute of limitations of a dismissed or withdrawn tort claim. Therefore, neither the fraud nor actual fraudulent conveyance claim initially pled against Samantha Haltman may serve as the underlying tort for which Plaintiff's unjust enrichment claim is alternatively pled.

In a footnote, Plaintiff further argues that the underlying tort is the wrongful retention, acceptance, and use of Exeter's funds for personal use. *Id.* at 7 n. 10 (citing Compl. ¶ 399). The Court notes that, as characterized by Plaintiff, there is no underlying tort pled against Samantha Haltman on this basis. Because Plaintiff's unjust enrichment claim is not pled as an alternative to any tort, "the applicable statute of limitations depends on the nature of the substantive remedy which the plaintiff seeks." *Burton v. Iyogi, Inc.,* No. 13-CV-6926, 2015 WL 4385665, at *6 (S.D.N.Y. Mar. 16, 2015). Here, Plaintiff's unjust enrichment claim seeks monetary damages and is therefore governed by the three-year statute of limitations.

---

[12]    Plaintiff inadvertently cited the First Department's decision in *Vandashield Ltd. v. Isaacson*, 146 A.D.3d 552, 555, 46 N.Y.S.3d 18, 23 (1st Dep't 2017). However, the quotation provided was from the lower court.

24

Relying on *Palmeri v. Willkie Farr & Gallagher LLP*, 156 A.D.3d 564, 568, 69 N.Y.S.3d 267, 271 (1st Dep't 2017), Plaintiff alternatively argues that "even if the statute of limitations were three-years, the statute should be tolled until the date of the last wrongful act" under the "New York's continuous wrong doctrine." Pl.'s Opp'n at 6. "The continuous wrong doctrine is an exception to the general rule that the statute of limitations 'runs from the time of the breach though no damage occurs until later.'" *Miller v. Metro. Life Ins. Co.,* No. 17-CV-07284, 2018 WL 6625096, at *10 (S.D.N.Y. Sept. 25, 2018), *report and recommendation adopted,* No. 17-CV-7284, 2018 WL 5993477 (S.D.N.Y. Nov. 15, 2018) (citing *Henry v. Bank of Am.,* 147 A.D.3d 599, 601 (1st Dep't 2017)). Plaintiff does not cite -- and this Court is unaware of -- any legal authority applying such an exception to a claim for unjust enrichment. In *Palmeri*, the only case cited by Plaintiff, the New York Appellate Division applied the continuous wrong doctrine to a breach of fiduciary duty claim against a law firm but did not address whether the doctrine was applicable to other claims. *Palmeri*, 156 A.D.3d at 568. For these reasons, the Court declines to apply the continuous wrong doctrine to Plaintiff's claim for unjust enrichment.

Accordingly, the Court respectfully recommends to 7Judge Seybert that Plaintiff's unjust enrichment claim based on transfers made earlier than three-years prior to Exeter's bankruptcy petition (*i.e.,* November 2008) be precluded.

### 2. Merits

Having found that Plaintiff's unjust enrichment claim is governed by a three-year statute of limitations, the Court will limit its analysis to the transfers made by Exeter on behalf of Defendant Samantha Haltman in the three years prior to the Petition Date. That period runs from November 10, 2008 to November 9, 2011. There is no dispute that the total amount of the transfers made within this time was $2,062.20. *See* Samantha Mem. at 15; Pl.'s Opp'n;

Weingard Aff., Ex. 1.  Under New York law, "[t]o prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *Melnick v. Press*, 809 F. Supp. 2d 43, 70 (E.D.N.Y. 2011) (quoting *Marini v. Lombardo*, 79 A.D.3d 932, 934, 912 N.Y.S.2d 693 (2d Dep't 2010)); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) ("To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."); *Bank of Am., N.A. v. NMR Realty Abstract Servs., Ltd.*, No. 12-CV-797, 2014 WL 3585716, at *5 (E.D.N.Y. Jan. 2, 2014) ("The essence of an unjust enrichment claim is that one party has received money or a benefit at the expense of another.") (internal quotation omitted).

As an initial matter, Samantha Haltman argues that she was not enriched at Plaintiff's expense because the transfers made on her behalf constituted payments under the promissory notes issued to her which corresponds to the principal balance of the Samantha Trust investment account.  Samantha Mem. at 16-17.  Plaintiff disputes this contention and further asserts that Defendant has not demonstrated that the Samantha Trust had a legitimate claim to the funds in the investment account for which the promissory notes were issued.  Pl.'s Opp'n at 7-8.  Having reviewed the record and arguments of both parties, the Court finds that there are material facts in dispute regarding the legitimacy of the inter-account transfers between Arnold Frank's investment account and the Samantha Trust Account -- and the appropriateness of the transfers absent a two-year demand in compliance with the terms of the promissory note.  However, the

Court finds that there are no genuine disputed material facts regarding the "equity and good conscience" which would permit Plaintiff to retain the $2,062.20 at issue.

"Courts have paid heed to many considerations in determining whether grounds exist for this relief, including considerations that go beyond the question of whether one party gained at another party's expense." *In re Khan*, No. 10-CV-46901, 2014 WL 4956676, at *43 (Bankr. E.D.N.Y. Sept. 30, 2014). This may call for consideration of the particular facts and circumstances, including the context of the transactions at issue and the relationships among the parties. *Id*. "[B]road considerations of equity and justice" permit the court to consider these facts and circumstances in light of "the human setting involved." *Id*.

Here, it is undisputed that Samantha Haltman was not involved in, nor aware of, the transfers made from Exeter on her behalf. Samantha Aff. ¶ 16. The Court credits her statements that she assumed, as do most children in their early to late teens, that her parents were personally paying these expenses for her and was completely ignorant of the fact that funds from Exeter were purportedly being used to pay those expenses. *Id*. Significantly, there is no evidence that Samantha Haltman committed any alleged tort or fraud in connection with the transfers. *St. John's Univ., New York v. Bolton,* 757 F. Supp. 2d 144, 182 (E.D.N.Y. 2010) ("In assessing the legal sufficiency of an unjust enrichment claim, courts will also look to see if defendant's conduct was tortious or fraudulent.") (internal quotation and citation omitted). Moreover, while the parties may dispute the legitimacy of the funds contained in the Samantha Trust Account, they do not dispute that Samantha Haltman invested approximately $17,000 of her "Bat Mitzvah funds" into Exeter in 2003. *See* Linda Aff. IV, Ex. A; Linda Supp. Aff. ¶ 7; Weingard Decl. ¶ 3 and Exs. 2, 10. Samantha Haltman is independently a creditor of Plaintiff and has effectively

27

lost the principal balance accrued from her initial investment which was approximately $30,000 as of the Petition Date.  *Id*.

Considering the undisputed material facts regarding Samantha Haltman's lack of knowledge, lack of involvement, age at the time of the transfers, and resulting loss from Exeter's insolvency, the Court does not find that it is "against equity and good conscience" in light of the "the human setting involved" to permit Samantha Haltman to retain the $2,062.20 to which Plaintiff is allegedly entitled.  *See In re Operations NY LLC.,* 490 B.R. 84, 99 (Bankr. S.D.N.Y. 2013) ("The determination that one has been unjustly enriched is a 'a legal inference drawn from the circumstances surrounding the transfer of property and the relationships of the parties.'") (citation omitted).

Accordingly, the Court respectfully recommends to Judge Seybert that Defendant Samantha Haltman's motion for summary judgment on Plaintiff's unjust enrichment claim be GRANTED.

### C.    Constructive Fraudulent Transfer Claim (Count IV) and Constructive Fraudulent Conveyance Claim (Count V)

Turning to Plaintiff's motion for summary judgment, Count IV and Count V of the Complaint seek avoidance and recovery of the 2009-2011 Transfers[13] made to Defendants as constructively fraudulent transfers under Bankruptcy Code Section 548(a)(1)(B) and constructively fraudulent conveyances under the New York Debtor and Creditor Law (the "DCL") Sections 273-275.  Plaintiff moves for summary judgment on its constructive fraudulent transfer and conveyance claims in the following categories:  (1) $145,428.57 against Linda

---

[13]    Because this designation encompasses the 2010-2011 Transfers, the Court will generally refer to the 2009-2011 Transfers only.

Haltman; (2) $147,949.52 against Michael Haltman; (3) $50,345.10 against Bruce Frank; (4) $145,000.00 against Larry Frank; and (5) $154,000.00 against the ASFIT.[14]  Pl.'s Mem. at 30-31.

      Pursuant to Bankruptcy Code Section 548(a)(1)(B), a trustee may avoid and recover a constructively fraudulent transfer made up to two years prior to date of the debtor's filing of the bankruptcy petition.  *See* 11 U.S.C. § 548(a)(1)(B).   For a transfer to be avoided under Section 548(a)(1)(B), a debtor must have (i) "received less than a reasonably equivalent value in exchange for such transfer or obligation" and must have been (ii)(1) "insolvent on the date that such transfer was made or such obligation was incurred."  *Id.*

      Under New York Constructive Fraudulent Conveyance Laws §§ 273 to 275, a conveyance by a debtor is deemed constructively fraudulent "if it is made without 'fair consideration,' and if one of the following conditions is met:   (i) the transferor is insolvent or will be rendered insolvent by the transfer in question ... (iii) the transferor is engaged or is about to engage in a business or transaction for which its remaining property constitutes unreasonably small capital; or (iv) the transferor believes that it will incur debts beyond its ability to pay."  *In re Ruffini*, No. 11-CV-78841, 2014 WL 714732, at *7 (Bankr. E.D.N.Y. Feb. 25, 2014) (citing *Sharp Int'l Corp. v. State St. Bank and Trust Co. (In re Sharp Int'l Corp.),* 403 F.3d 43, 53 (2d Cir.2005)); *Kramer v. Sooklall (In re Singh),* 434 B.R. 298, 309 (Bankr. E.D.N.Y. 2010).  The reach-back period for fraudulent transfers under New York law is six years.  *In re Ruffini*, 2014 WL 714732, at *7 (citation omitted).

---

[14]    Plaintiff also seeks $13,312.84 against Defendant 3 Lewis Lane Corp. and its owners.  Pl.'s Mem. at 31.  Because, Plaintiff's Rule 56.1 Statement is devoid of any factual allegations regarding specific transfers made to Defendant 3 Lewis Lane Corp., the Court will not consider this argument on the instant motion.  *See generally* Pl.'s SOMF.

Looking to the meaning of "reasonably equivalent value" under Section 548, the term "value" is defined in the Bankruptcy Code as "property, or satisfaction or securing of a present or antecedent debt of the debtor."  11 U.S.C. § 548(d)(2)(A). While the Bankruptcy Code does not define "reasonably equivalent value," this term has substantially the same meaning as the interpretation of "fair consideration" under the DCL, which can be shown by a "fair equivalent" value for the property received.  *See* N.Y. Debt. & Cred. L. § 272; *Garcia v. Garcia (In re Garcia),* 494 B.R. 799, 808 (Bankr. E.D.N.Y. 2013).   Under the DCL, fair consideration also requires good faith on the part of the transferee.  *See* N.Y. Debt. & Cred. L. § 272; *In re Jacobs,* 394 B.R. at 660.  This requirement may be satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent schemes.  *Singh,* 434 B.R. at 309.  Aside from the good faith element incorporated into New York law, courts use the term "reasonably equivalent value" interchangeably with the DCL's "fair consideration" for purposes of analyzing constructive fraud claims under both statutes.  *Id.*

To determine whether a debtor received "reasonably equivalent value," a court must compare what was given with what was received.  *Pergament v. Reisner (In re Reisner),* 357 B.R. 206, 211 (Bankr. E.D.N.Y. 2006) (citation omitted).  The consideration given in exchange for the transfer need not be mathematically equal, or a penny for penny.  *In re USA United Fleet, Inc.*, 559 B.R. 41, 58 (Bankr. E.D.N.Y. 2016) (citing *In re Reisner,* 357 B.R. at 211).   "Whether a transfer is for reasonably equivalent value is largely a question of fact, the determination of which perforce depends on all the circumstances surrounding the transaction."  *In re Actrade Fin. Techs. Ltd.,* 337 B.R. 791, 803 (Bankr. S.D.N.Y. 2005) (citing *American Tissue Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 351 F.Supp.2d 79, 105 (S.D.N.Y. 2004); *Durand v. Ackerman*, No. 09-CV-3372, 2010 WL 3834587, at *6 (E.D.N.Y. Sept. 27, 2010) ("The

determination of whether fair consideration is received in exchange for a transfer is a question of fact.").

At the outset, the Court notes that there are disputes as to the amounts of the 2009-2011 Transfers for which Plaintiff seeks summary judgment. Defendants argue that a review of the QuickBooks ledgers relied upon by Plaintiff demonstrates that there is no support in the record for the claimed amounts of the 2009-2011 Transfers made by Exeter to Linda Haltman, Michael Haltman, Bruce Frank, Larry Frank and the ASFIT. Pl.'s SOMF ¶¶ 16-21, 34-38; Haltman Defs.' 56.1(b) Response ¶¶ 16-18, 34-36; Def. Bruce 56.1(b) Response ¶¶ 19, 37; Def. Larry 56.1(b) Response ¶¶ 20, 38. Each of the Defendants disagrees with the amounts of the Transfers made to that respective Defendant as asserted by Plaintiff in its SOMF. The Court takes Defendant Michael Haltman as an example here. Exeter's QuickBooks indicates that a total of $116,981.59 was transferred to Michael Haltman between November 10, 2009 and the Petition Date. Pl.'s SOMF ¶ 36. Yet Plaintiff contends in its Rule 56.1 Statement of purportedly undisputed facts that a total of $147,949.52 was transferred to Michael Haltman and Plaintiff seeks judgment in that amount. *Compare* Pl.'s SOMF ¶ 36 *with* Roesser Aff., Ex. 3; *compare* Pl.'s SOMF ¶ 35 ($145,428.57 to Linda Haltman) *with* Roesser Aff., Ex. 2 ($48,626.42 to Linda Haltman); *compare* Pl.'s SOMF ¶ 37 ($50,345.10 to Bruce Frank) *with* Roesser Aff., Ex. 4 ($36,646.15 to Bruce Frank); *compare* Pl.'s SOMF ¶ 38 ($145,000 to Larry Frank) *with* Roesser Aff., Ex. 5 ($100,00 to Larry Frank). Plaintiff does not address the denials in the respective Defendants' responses to Plaintiff's SOMF and fails to explain the several inconsistencies in the record and its moving papers.[15] Pl.'s Reply at 12 ("With respect to the fraudulent transfer

---

[15]     In its Rule 56.1 Statement, Plaintiff cites both Exeter's QuickBooks ledgers attached to the Affidavit of Attorney Roesser and the transfer summaries attached to Plaintiff's Complaint. *See generally* Pl.'s SOMF. However, Plaintiff has provided no information

claims, other than the insolvency issue ineffectively raised by all Defendants … only Larry Frank has raised an issue requiring a response.").  Having compared the amount of the 2009-2011 Transfers which Plaintiff claims were made with that which is actually supported by Exeter's QuickBooks, the Court finds that there are issues of fact regarding the amounts of the 2009-2011 Transfers made to the Defendants.

Even assuming that the amounts of the 2009-2011 Transfers were undisputed, there are disagreements as to whether Exeter received "reasonably equivalent value" in exchange for the transfers.  Pl.'s SOMF ¶ 40; Haltman Defs.' 56.1(b) Response ¶ 40; Def. Bruce 56.1(b) Response ¶ 40; Def. Larry 56.1(b) Response ¶ 40.  Relying on either Exeter's QuickBooks, or deposition testimony, and/or affidavits submitted in support of their respective opposition papers, each Defendant argues that all or most of the 2009-2011 Transfers constituted at least one of the following:  (1) salaries or services rendered (*i.e.,* consulting fees); (2) funds which were returned to Exeter the same day through exchange accounts; (3) reimbursement of business expenses; or (4) payments of antecedent debts.  *See* Haltman Defs.' Opp'n. at 12-15, 24-26; Def. Bruce Opp'n at 9-10, 18; Def. Larry Opp'n at 3-4.  As Defendants correctly point out, a substantial portion of the transfers at issue, with the exception of those to the ASFIT, are characterized as "paychecks," "business reimbursements," or "consulting fees" in Exeter's QuickBooks.  *See* Roesser Aff., Exs. 1-5.

There is case law in this Circuit holding that payments of salary are "presumed to be made for fair consideration," unless the plaintiff establishes that they were made "in bad faith or

---

regarding these transfer summaries and it remains unclear how they were utilized in calculating the 2009-2011 Transfers and why they differ from Exeter's QuickBooks.  The Court also notes that these transfer summaries were not attached to any affidavit attesting to their authenticity and accuracy.

the payments were excessive in light of the Defendants' employment responsibilities."

*Staudinger+Franke GMBH v. Casey,* No. 13-CV-6124, 2015 WL 3561409, at *11 (S.D.N.Y.

June 8, 2015) (citing *In re TC Liquidations LLC,* 463 B.R. 257, 268 (Bankr. E.D.N.Y. 2011)).

Services rendered by third parties for a debtor have also been found to constitute fair

consideration.  *See In re Dewey & LeBoeuf LLP,* 518 B.R. 766, 786 (Bankr. S.D.N.Y. 2014);

*Balaber–Strauss v. Sixty–Five Brokers (In re Churchill Mortg. Inv. Corp.),* 256 B.R. 664, 679–

80 (Bankr. S.D.N.Y. 2000) (dismissing Section 548 claims because third party investment

brokers were entitled to payments made for the services they provided the debtor where there

was no evidence of wrongdoing on the part of the brokers).

Moreover, a transfer which satisfies an antecedent debt made while the debtor is

insolvent may also constitute fair consideration.  11 U.S.C. § 548(d)(2)(A);  *Am. Federated Title

Corp. v. GFI Mgmt. Servs., Inc.,* 126 F. Supp. 3d 388, 401 (S.D.N.Y. 2015), *aff'd,* 716 Fed.

App'x 23 (2d Cir. 2017), *aff'd,* 716 Fed. App'x 23 (2d Cir. 2017) ("[I]n most cases, the repayment

of an antecedent debt is made for fair consideration.).  Under New York law, however, there is a

"significant exception to that rule: the repayment of an antecedent debt is never made for fair

consideration where the transferee is a 'corporate insider,' including 'an officer, director, or

major shareholder of the transferor.'"  *Am. Federated Title Corp.,* 126 F. Supp. 3d at 401

(citation omitted).  At least as it relates to the ASFIT, Plaintiff does not contend the Trust is an

"insider."

Plaintiff does not respond to any of these arguments, with the exception of Larry Frank's

contention that the services he rendered were not excessive.  The Court also notes that Plaintiff

does not attempt to itemize and/or distinguish which specific transfers may be undisputed even in

light of these arguments.  It is Plaintiff's burden to show that "no genuine issue of material fact

exists with regard to the claim that the debtor was insolvent at the time the transfers were made and the claim that the debtor did not receive reasonably equivalent value in exchange for the transfers." *In re People's Power & Gas, LLC,* 608 B.R. 333, 339 (Bankr. D. Conn. 2019). However, Plaintiff essentially seeks judgment on its constructive fraudulent transfer and conveyance claims merely by virtue of the fact that transfers were *made* -- without addressing the multiple issues of material fact raised as to whether each of the 2009-2011 Transfers were for "reasonably equivalent value." *In re Dewey & LeBoeuf LLP*, 518 B.R. at, 786 ("[M]ost cases in which the 'value' defenses are fact specific and clearly not appropriate for summary judgment.") The Court need not reach the purported dispute regarding the second element required for Plaintiff's constructive fraudulent transfer and conveyance claims (*i.e.,* Exeter's insolvency and the exact date of the insolvency) because Plaintiff has not demonstrated that there are no genuine issues of material fact as to the "reasonable equivalent value" element.[16]

Accordingly, the Court respectfully recommends to Judge Seybert that Plaintiff's motion for summary judgment as to it Constructive Fraudulent Transfers claim (Count IV) and its Constructive Fraudulent Conveyances claim (Count V) be DENIED.

---

[16]    Having reviewed the record, the Court finds that a reasonable inference may be drawn in Defendants' favor supporting a genuine dispute as to whether Exeter was insolvent as of January 1, 2006. *Staudinger+Franke GMBH v. Casey,* No. 13-CV-6124, 2015 WL 3561409, at *2 (S.D.N.Y. June 8, 2015) ("Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party.").  However, because various other genuine issues of material fact exist under the claims for which Exeter's date of insolvency is relevant, the Court will simply refer to the undisputed date of insolvency -- December 31, 2010 -- for ease of reference.

### D.    Preference Claim (Count VI)

Count VI of the Complaint seeks to avoid and set-aside the 2010-2011 Transfers made to Defendants as avoidable preferences under Bankruptcy Code Section 547(B).   Plaintiff moves for summary judgment on its preference claim in the following amounts:  (1) $91,195,07 against Linda Holtman; (2) $65,827.84 against Michael Haltman; (3) $25,345.10 against Bruce Frank; (4) $95,000.00 against Larry Frank; and (5) $154,000.00 against the ASFIT.[17]  Pl.'s Mem. at 31.

11 U.S.C. § 547(b) provides that a trustee may avoid any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

> (A) on or within 90 days before the date of the filing of the petition; or

> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

> (A) the case were a case under chapter 7 of this title;

> (B) the transfer had not been made; and

> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

[17]    Plaintiff also seeks $200.00 against Defendant 3 Lewis Lane Corp. and its owners.  Pl.'s Mem. at 31.  Because Plaintiff's Rule 56.1 Statement is devoid of any specific factual allegations regarding preferential transfers made to Defendant 3 Lewis Lane Corp., the Court will not consider this allegation on the instant motion.

Section 547(b) "authorizes the Trustee to avoid a transfer which prefers one creditor over similarly situated creditors, and allows the transferee to receive more than it would have received in a Chapter 7 case had the transfer not been made." *In re Waring*, 491 B.R. 324, 328–29 (Bankr. E.D.N.Y. 2013). As the movant, "[t]he Trustee bears the burden of proof on all elements of a preference claim under Section 547." *Id.*; *see also* 11 U.S.C. § 547(g). Defendants bear the burden of proof with respect to any affirmative defenses under § 547(c). *See* 11 U.S.C. § 547(g).

A creditor may defeat a trustee's attempt to avoid a preference by proving certain affirmative defenses. *In re New York Light Energy, LLC,* No. 15-11121, 2018 WL 4719007, at *4 (Bankr. N.D.N.Y. Sept. 28, 2018). A transfer that otherwise meets the criteria set forth in § 547(b) is not subject to avoidance under § 547(c), to the extent that the transfers were: (1) made in the regular course of business; (2) intended by the transferor and transferee to be a contemporaneous exchange for new value given to the debtor; or (3) on account of which, after the transfer, new value is given to the debtor. *See* 11 U.S.C. § 547(b); *In re ContinuityX, Inc., * 569 B.R. 29, 37 (Bankr. S.D.N.Y. 2017) (citing *Official Committee of Unsecured Creditors of 360Networks (USA) Inc. v. U.S. Relocation Services, Inc. (In re 360Networks (USA) Inc.)*, 338 B.R. 194, 204 (Bankr. S.D.N.Y. 2005)). The term "new value," for purposes of § 547, "means money or money's worth in goods, services or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2).

Applying § 547(c)(1), "courts have held that timely payments of salary to an employee in exchange for the employee's continued services to the debtor may be excepted from recovery as contemporaneous exchanges for new value." *In re ContinuityX, Inc.*, 569 B.R. at 37–38; *Jacobs*

36

*v. D'Allessandro*, No. 14-CV-1919, 2014 WL 4746209, at *9 (Bankr. S.D.N.Y. Sept. 23, 2014) ("Courts have interpreted [new value] to include the continued services of employees and payments to those employees may be construed as 'contemporaneous' so long as the employer-debtor keeps current by paying the employees' salaries and benefits when due."); *Official Comm. of Former Partners v. Brennan (In re Labrum & Doak, LLP)*, 227 B.R. 383, 387 (Bankr. E.D. Pa. 1998) ("We know of no case holding that salaries paid to employees as work is performed ... are transfers subject to avoidance as preferences.").

As explained above, there are disputes, evidenced by Exeter's QuickBooks, as to the amount of the 2010-2011 Transfers for which Plaintiff seeks judgment. Pl.'s SOMF ¶¶ 16-21; Haltman Defs.' 56.1(b) Response ¶¶ 16-18; Def. Bruce 56.1(b) Response ¶ 19; Def. Larry 56.1(b) Response ¶ 20. Plaintiff does not reconcile the inconsistencies in the record in its reply papers and, consequently, there are issues of fact regarding the amounts of the 2009-2011 Transfers made to the Defendants. Notwithstanding the dispute as to the precise amount of the 2010-2011 Transfers, there are also disputes as to whether any of the 2010-2011 Transfers made to Linda Haltman, Michael Haltman, Larry Frank, and Bruce Frank constituted contemporaneous exchanges for new value in the form of salaries or payments for services rendered. *See Schlant v. Schueler*, 187 B.R. 451, 453 (Bankr. W.D.N.Y. 1995) ("Regular payroll typically enjoys immunity from preference attack.").

As it relates to the ASFIT, the Haltmans provided bank statements from the ASFIT reflecting deposits made on September 7, 2010 which correspond to matching loan entries on Exeter's QuickBooks that same day on the ASFIT investment account. *See* Linda Aff. IV, Exs. G-H. In other words, the Haltmans contend that monies were loaned to Exeter by the

ASFIT between 2010 and 2011 thereby giving new value to Exeter.[18]  *See Irrevocable Tr. (In re Van Dyck)*, 263 B.R. 167, 177 (Bankr. D. Conn. 2001) (upholding new value defense where, subsequent to loan sought to be avoided, creditor "advanced an unsecured loan to [debtor] in the amount of $ 15,000.00, which remained unpaid as of the Petition Date.").  This, too, raises a genuine dispute as to whether any of the 2010-2011 Transfers to the ASFIT constituted contemporaneous exchanges for new value.  The Court notes that Plaintiff does not address these arguments in its reply papers and does not attempt to itemize and/or distinguish which specific transfers may be undisputed even in light of these arguments.

Accordingly, the Court respectfully recommends to Judge Seybert that Plaintiff's motion for summary judgment on its preference claim (Count VI) be DENIED.

### E.    Breach of Fiduciary Duty Claims (Count VII and Count VIII)

Count VII and Count VIII of the Complaint allege that Linda Haltman and Arnold Frank[19] breached their fiduciary duty and duty of loyalty to Exeter.   Plaintiff moves for summary judgment in the amount of $12,205,180.26 against Linda Haltman on these claims.  Pl.'s Mem. at 31.  To prove a defendant breached his or her fiduciary duty, a plaintiff must demonstrate:  (1) the existence of a fiduciary duty; (2) a knowing breach of that duty; and (3) damages resulting therefrom.  *Johnson v. Nextel Commc'ns*, *Inc.*, 660 F. 3d 131, 138 (2d Cir. 2011) (citing *Barrett v. Freifeld*, 64 A.D.3d 736, 883 N.Y.S.2d 305, 308 (2d Dep't 2009)).

---

[18]      Although the Haltmans contend that this new value exceeds $154,000, the record relied upon -- the creditor spreadsheet -- does not appear to support that contention.  The Court was unable to identify which entry on the creditor spreadsheet provided by the Haltmans represented the ASFIT.  *See* Linda Aff. IV, Ex A.

[19]      *See supra* n. 1.

### 1.    Merits

Here, the parties do not dispute that Linda Haltman, as President of Exeter, owed a fiduciary duty to Exeter.  *See* Pl.'s Mem. at 25; Haltman Defs.' Opp'n at 6, 23-24.  Rather, the parties disagree on whether the record demonstrates that Linda Haltman's purported conduct constituted a breach of her fiduciary duties, and whether these breaches caused Exeter harm. Plaintiff argues that Linda Haltman violated the duty of care by:  (1) submitting inaccurate financial statements to New York State regulators in the 2005 Letter; (2) submitting inaccurate audited Financial Statements to New York State regulators in 2008; (3) making false representations on the mortgage applications for 207 Parish Pond; (4) directing Larry Frank to "backdate" QuickBooks entries related to 29 Mill Farm Lane in 2011; and (5) designing and executing the "scheme" involving the Property Corporations.[20]  Pl.'s Mem. at 24-26.  The Court will address each allegation in turn.

### a.    Linda Haltman's 2005, 2008, and 2011 Statements

It is undisputed that that the 2005 Letter to the New York State Banking Department states that:  "All investments in related corporations are construction loans secured by first mortgage liens and, therefore, did not need to be adjusted."  Pl.'s SOMF ¶ 81; Haltman Defs.'

---

[20]    Plaintiff also alleges, without any factual support or citation to its Rule 56.1 Statement, that Linda Haltman's "transfer of Exeter assets for the benefit of insiders" was a breach of her fiduciary duty.  Pl.'s Mem. at 26.  Plaintiff's moving papers and Rule 56.1 Statement are devoid of any factual or legal explanation as to:  (1) what precise transfers Plaintiff is referring to in connection with this claim; and (2) what Linda Haltman's involvement was with the subject transfers as distinguished from that of her father Arnold Frank's role as the purported architect of Exeter's business model.  The Court cannot infer that Plaintiff is referring to the Property Corporation transfers because Plaintiff's Rule 56.1 Statement did not identify the officers and/or directors who transferred or directed the transfers to the Property Corporations. Pl.'s SOMF ¶¶ 65-66; Haltman Defs.' 56.1 Response ¶¶ 65-66; Def. Bruce 56.1 Response ¶¶ 65-66; Def. Larry 56.1 Response ¶¶ 65-66.  Accordingly, the Court will not address this argument because it is not adequately or properly presented.

56.1 Response ¶ 81.  It is undisputed that the 2008 Financial Statement stated that "the company maintains various construction loans receivable secured by first mortgages to twenty-four related companies in the amount of $11,396,727."  Pl.'s SOMF ¶ 84; Haltman Defs.' 56.1 Response ¶ 84.  It is also undisputed that the transfers Exeter made to the Frank-Haltman Sibling Entities, the Linda Haltman Entities, and the Larry Frank Entities were not secured by mortgages.  Pl.'s SOMF ¶¶ 73-74; Haltman Defs.' 56.1 Response ¶¶ 73-74.[21]  However, the record Plaintiff cites to does not clarify whether the "related corporations" referred to in the 2005 Letter and 2008 Financial Statements involve the same Property Corporations forming the basis of Plaintiff's requested damages.  As it relates to the 2005 Letter, Plaintiff refers exclusively to the deposition transcript of Linda Haltman, see Pl.'s SOMF ¶ 81 (citing Roesser Aff., Ex. 11, Part III, Linda Haltman Dep. Tr. 654:24 to 657:7), which provides, in pertinent part, as follows:

> Q:      … The letter states – that in number 1, it states, "All investments in related corporations are construction loans secured by first mortgage liens and, therefore, did not need to be adjusted. This would mean the remaining net worth is in excess of $4,900,000." Do you see that?
>
> A:      Yes.
>
> Q:      Was that a true statement, that all your related corporations had first mortgage liens?
>
> A:      Back in 2004 – I'd have to look at the things but it's very possible.

---

[21]      In her 56.1 Response, Linda Haltman attempts to dispute the fact that there were no mortgages in connection with the subject transfers by referencing ten pages of her deposition testimony.  See Haltman Defs.' 56.1 Response ¶¶ 73-74 (citing Roesser Aff. Ex. 11, Linda Haltman Dep. Tr. 644:20 to 655:22).  Having reviewed the citation, the Court finds that the testimony provides no support for Linda Haltman's contention.  To the contrary, her deposition testimony supports the contention that no mortgages existed for the transfers made to the Property Corporations.  See Linda Haltman Dep. Tr. 656:13 to 657:7 ("Well, maybe there were no – I should say there were no mortgages on them.").

\*\*\*

Q:      Okay.

A:      I just looked at it, and they're all first mortgages.

Q:      And what were they?

A.      They were all first mortgages.

Q:      Which property corporations?

A:      I don't believe any of the ones that were on the books that we've spoken about yet. They're all different.

Q:      No, I know. I'm just asking you, the mortgages that you're referring to here all being first, which companies are they.

\*\*\*

A:      Tulip Avenue. Hideway Beach. Lot 7 Whispering Pines. Maplewood. Lot 12 Whispering Pines. New York Avenue, Smithtown. Osgood Avenue, Smithtown. Deposit of Mill River Road. Emerson Road. Willoughboy Acres. Titus Avenue. Silas Carter Road. 585 Lexington Avenue. Southside Ventures. And Idlewood.

Q:      So there would have been recorded first mortgages on all these properties?

A:      No. Those were corporations owned by Exeter.

Q:      Right. But you said you had first mortgages on all of them.

A:      Well, maybe there were no – I should say there were no mortgages on them.

\*\*\*

Q:      Was there a lien on the property?

A:      It's, you know, a long time ago. I don't remember how that was done.

Roesser Aff. Ex. 11, Part III, Linda Haltman Dep. Tr. 654:15 to 657:18.

This colloquy reveals that the 2005 Letter reference to "related companies" refers to three out of the twelve Property Corporations at issue, including Maplewood, Osgood Avenue, and

585 Lexington Avenue.  Plaintiff also exclusively relies on the deposition transcript of Linda Haltman, *see* Pl.'s SOMF ¶ 84 (citing Roesser Aff. Ex. 7, Linda Haltman Dep. Tr. 324:5-10), as it relates to the 2008 Financial Statement which provides, in pertinent part:

> Q:    The second to the last paragraph of that section, "the company maintains various construction loans receivable secured by first mortgages to twenty-four related companies in the amount of $11,396,727." To what is that referring?
>
> A:    It's referring to this other assets, mortgages receivable related corporations.
>
> Q:    And what does that refer to? Related corporations construction loans, what does that refer to?
>
> A:    Related corporations construction loans.
>
> Q:    And so what is that, is that the property corporations we've been talking about?
>
> A:    I assume so.
>
> Q:    So that would be Parrish Pond, Eden Roc, Lewis Lane et cetera?
>
> A:    Whatever was at the time – I don't believe the same ones but whatever in 2008.

Roesser Aff. Ex. 7, Part III, Linda Haltman Dep. Tr. 324:5 to 325:4.

This colloquy also does not resolve whether misrepresentations in the 2008 Financial Statements refer to the same Property Corporations forming the basis of Plaintiff's requested damages.  Since Plaintiff has not demonstrated that the misrepresentations in the 2005 Letter and 2008 Financial Statements relate to the Property Corporations which provide the foundation for Plaintiff's damages, the Court cannot conclude based on the facts presented that any damages resulted from the purported breach of fiduciary duty.  *Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 550 n. 5 (E.D.N.Y. 2015) (noting that a breach of fiduciary duty does not require 'but for' causation but it nonetheless must be 'substantial factor' in causing the loss"); *see*

*also In re Soundview Elite Ltd.*, 594 B.R. 108, 131 (Bankr. S.D.N.Y. 2018) ("In order to recover, plaintiffs must, at a minimum, establish that the breach was a "substantial factor" in causing an identifiable loss.").  Plaintiff also fails to explain, let alone demonstrate, if and how the misrepresentations on the mortgage application for 207 Parish Pond were a factor in causing the damages sought.  Indeed, the Exeter's QuickBooks indicate that no more than $1,480.64 of funds were transferred to the 207 Parish Pond Property Corporation.  *See* Roesser Aff., Ex. 17 at 1.

As it relates to her instruction to Larry Frank to "backdate" QuickBooks entries related to 29 Mill Farm Lane in 2011, Linda Haltman has submitted a current and previously filed affidavit explaining that (1) her reference to 2010 in the email was a typographical error and (2) she never used or meant the terminology "backdate" and writing off non-performing loans, which is what her instructions allegedly were, and (3) her actions were not improper.  *See* Linda. Aff. IV ¶¶ 55-56.  The Court finds that this affidavit is sufficient to raise issues of material fact related to this claim.  *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) ("In reviewing the evidence and the inferences that may reasonably be drawn, the court "may not make credibility determinations or weigh the evidence. ... 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'").

### b.   Property Corporation Transfers

Plaintiff contends that "there is no question that the Property Corporation scheme designed and executed by the Insider Defendants violated [Linda] Haltman's duties of both care and loyalty."  Pl.'s Mem. at 26.  According to Plaintiff, that "scheme" involved the following:

> [A] property would be purchased by a Property Company (owned by one or more of the Insider Defendants) using Exeter funds, and then Exeter funds or the funds of a third-party lending institution would be used to renovate/develop the property for sale.  Once the property was sold, Exeter's investment would be repaid (in

theory), but the underlying property sales almost never generated enough income to fully repay Exeter.  Instead, the Insiders used Exeter to borrow funds from commercial lenders (based on the appearance of secured equity in the properties) and then used those funds for their own purposes.  So, when a property was eventually sold, the expenses far exceeded the purchase price, and Exeter was left holding the bag. … In effect, Exeter took on the financial risk but never had any of its profit protected under reasonable business practices such as recording debt or providing equity.  And in many instances, the properties sold for substantial losses and Exeter's funds were never recovered.  Despite no benefit flowing back to Exeter from its investments, the Property Corporation Owners have collectively received at least $12,205,180.26 in the form of transfers from Exeter to Property Corporations.

Pl.'s Mem. at 27.

It is undisputed that Linda Haltman, Larry Frank and Bruce Frank were shareholders of the Property Corporations and that Exeter transferred funds to those Property Corporations.  Pl.'s SOMF ¶ 65; Haltman Defs.' 56.1 Response ¶ 65; Def. Bruce 56.1 Response ¶ 65; Def. Larry 56.1 Response ¶ 65; *see also* Roesser Aff., Exs. 15-19.  It is also undisputed that there is no evidence that the transfers made to the Property Corporations were secured by any mortgages.  However, Plaintiff's Rule 56.1 Statement fails to adequately address several critical facts regarding the remaining aspects of this purported "scheme."  First, Plaintiff omits any specific factual statements regarding Linda Haltman's actual involvement in the "design and execution" or knowledge of the "scheme."  As noted, Plaintiff vaguely states that the "officers and/or directors of Exeter transferred Exeter funds to the Property Corporations" and "directed the transfer of Exeter funds to the Property Corporations."  Pl.'s SOMF ¶ 65 (citing Roesser Aff., Ex. 12 at 6); Pl.'s SOMF ¶ 66 (citing Roesser Decl., Exh. 7, Linda Haltman Dep. Tr. 25:18-26:3-7).  Plaintiff cites the Serotta Expert Report and deposition testimony of Linda Haltman in support of these statements.  However, neither identify the officers and/or directors referenced.  Although Defendants are not absolved of liability by virtue of the fact that their father, Arnold Frank, may have been the architect of this "scheme" while they "did what they were told," if

44

Plaintiff seeks to hold Linda Haltman liable for a breach of fiduciary duty, Plaintiff must demonstrate through undisputed facts supported by the record that she engaged in the underlying conduct forming the breach, not that she merely aided and abetted such conduct.

Second, Plaintiff omits any factual statements with citations to the record that:  (1) "the underlying property sales almost never generated enough income to fully repay Exeter;"  (2) "the Insiders used Exeter to borrow funds from commercial lenders (based on the appearance of secured equity in the properties) and then used those funds for their own purposes;"  (3) "when a property was eventually sold, the expenses far exceeded the purchase price, and Exeter was left holding the bag;" and (4) "in many instances, the properties sold for substantial losses and Exeter's funds were never recovered."  Aside from the fact that the transfers were not secured by mortgages, Plaintiff has not demonstrated any other aspect of the "scheme" as characterized which lead to the alleged resulting damages.

Defendant, on the other hand, provided Exeter QuickBooks showing funds which were returned to Exeter between 2006 and 2009 from the Property Corporations in the total amount of $18,035,128.85 in support of the argument that Exeter did in fact benefit from the transfers to the Property Corporations and was paid the principal balance of a portion of the transfers with interest.  *See* Linda Aff. IV ¶¶ 40-42 and Exs. O-X.  In response, Plaintiff, without any citation to the record, argues that the funds represented in the Exeter QuickBooks referenced by Defendants were for transfers made to the Property Corporation in 2003.  Pl.'s Reply at 8.  Viewing the evidence and all factual inferences arising from that evidence in the light most favorable to the Defendants, the Court finds that Plaintiff has not met its burden to demonstrate there are no genuine issues of material regarding Linda Haltman's purported breach of fiduciary duty and the asserted damages caused by that breach.

45

Accordingly, the Court respectively recommends to Judge Seybert that Plaintiff's motion for summary judgment on the breach of fiduciary duty claims (Count VII and Count VIII) be DENIED.

### 2. *Statute of Limitations*

Defendants seek to bar Plaintiff's breach of fiduciary duty claim based on conduct occurring prior to November 9, 2008, arguing that "[b]reach of fiduciary duty claims that seek money damages only are subject to a three-year statute of limitations" and accrue "as soon as the claim becomes enforceable, *i.e.,* when all elements of the tort can be truthfully alleged in a complaint." Haltman Defs.' Opp'n at 7-8 (citing *Murphy v. Morlitz*, 751 Fed. App'x. 28, 30 (2d Cir. 2018)). As explained previously, the continuing wrong doctrine provides that, in certain cases involving continuous or repeated wrongs, the statute of limitations accrues upon the date of the last wrongful act. *Banker v. Cty. of Livingston,* 782 F. Supp. 2d 39, 50 (W.D.N.Y. 2011). Under New York law, courts have expressly adopted the continuous wrong doctrine to breach of fiduciary duty claims. *Palmeri v. Willkie Farr & Gallagher LLP*, 156 A.D.3d 564, 568, 69 N.Y.S.3d 267, 271 (1st Dep't 2017) ( finding that while some of the conduct may have been time barred, "the continuing wrong doctrine toll[ed] the limitation period until the date of the commission of the last wrongful act.").

Accordingly, to the extent that Plaintiff's breach of fiduciary duty claim is based on conduct that occurred prior to November 9, 2008 which continued until after that date, the Court respectfully recommends applying the continuous wrong doctrine to toll the statute of limitations.

### F.    Aiding and Abetting Breach of Fiduciary Duty Claim (Count IX)

Count IX of the Complaint alleges that Larry Frank and Bruce Frank, among others, aided and abetted Linda Haltman's breaches of her fiduciary duties to Exeter.  Plaintiff moves for summary judgment in the amount of $5,063,332.99 against Bruce Frank and $6,325,832.99 against Larry Frank.  Pl.'s Mem. at 32.  Under New York law, aiding and abetting a breach of fiduciary duty has three elements: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damages as a result of the breach."  *See Lerner v. Fleet Bank*, 459 F.3d 273, 294 (2d Cir. 2006) (quoting *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003)).  As explained above, there are genuine issues of material fact regarding Linda Haltman's alleged breaches of her fiduciary duties.  Accordingly, because Plaintiff's claim for aiding and abetting is contingent on the underlying breach of fiduciary duty claim, the Court respectfully recommends to Judge Seybert that Plaintiff's motion for summary judgment on its aiding and abetting claim (Count IX) be DENIED.

## IV.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that (1) Defendant Samantha Haltman's motion for summary judgment be GRANTED, dismissing Plaintiff's turnover claim (Count XII) and unjust enrichment claim (Count XIII) as to her, and (2) Plaintiff's motion for summary judgment on Counts IV, V, VI, VII, VIII and IX against Defendants Linda Haltman, Michael Haltman, Bruce Frank, Larry Frank, and the Arnold and Sondra Frank Irrevocable Trust be DENIED.

47

## V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  Any objections by a *pro se* party shall be filed with the Clerk of the Court by overnight mail or regular mail.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert.  Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Plaintiff's counsel is directed to serve a copy of this Report and Recommendation forthwith upon the pro se defendants by overnight mail and first-class mail and to file proof of such service on ECF promptly**.

**SO ORDERED.**

Dated: Central Islip, New York
       April 21, 2020

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge